No. __-_____

# United States Court of Appeals for the Fifth Circuit

IN RE YOUTUBE LLC, GOOGLE LLC, AND ALPHABET, INC.

*Petitioners.*

On Petition for Writ of Mandamus from the United States District Court
for the Western District of Texas (No. 1:25-cv-01095-ADA)

## PETITION FOR WRIT OF MANDAMUS

Steven J. Wingard
Robyn Hargrove
Eli Barrish
SCOTT DOUGLASS & McCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
(512) 495-6300

Jonathan Patchen
Michael A. Rome
Anika Holland
Madeleine R. Ahlers
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2000
jpatchen@cooley.com

Connie L. Wang
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

*Counsel for Petitioners*
*YouTube LLC, Google LLC, and Alphabet, Inc.*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record in *In re YouTube LLC, Google LLC, and Alphabet, Inc.*, on petition for writ of mandamus from the United States District Court for the Western District of Texas (No. 1:25-cv-01095-ADA), certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Respondent is Defense Distributed. To Petitioners' knowledge, Defense Distributed has no parent company and is not a publicly traded company.

2. Respondent is represented in the Fifth Circuit by Chad Flores of Flores Law PLLC.

3. Petitioners are YouTube LLC, Google LLC, and Alphabet, Inc. YouTube LLC is a subsidiary of Google LLC. Google LLC is a subsidiary of XXVI Holdings, Inc., which is a subsidiary of Alphabet, Inc. Alphabet, Inc. is a publicly traded company, but no publicly traded company owns 10% or more of its stock.

4. Petitioners are represented in the Fifth Circuit by Jonathan Patchen, Michael A. Rome, Anika Holland, Madeleine R. Ahlers, and Connie L. Wang of Cooley LLP and Steven J. Wingard, Robyn Hargrove, and Eli Barrish of Scott Douglass & McConnico LLP.

*/s/ Jonathan Patchen*

Jonathan Patchen
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2000
jpatchen@cooley.com

*Counsel for Petitioners YouTube LLC,*
*Google LLC, and Alphabet, Inc.*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION AND STATEMENT OF RELIEF SOUGHT...........................1

ISSUE PRESENTED...................................................................................4

STATEMENT OF RELEVANT FACTS ...................................................4

    I.     Factual Background..........................................................................4

          A.    YouTube, Google Ads, and the Relevant Terms of
              Service................................................................................4

          B.    Plaintiff Agrees to YouTube's and Google Ads's Terms
              of Service, Including Their Forum-Selection Clauses...............6

    II.    Procedural Background ....................................................................7

          A.    District Court Proceedings.....................................................7

          B.    Prior Fifth Circuit Proceedings .............................................11

REASONS WHY THE WRIT SHOULD ISSUE ................................14

    I.     The District Court Clearly Abused Its Discretion by Denying
        Defendants' Motion to Transfer.......................................................15

          A.    Forum-Selection Clauses Enjoy a Strong Presumption of
              Enforceability........................................................................15

          B.    The District Court Committed Clear Legal Error in
              Holding That the Forum-Selection Clauses Are
              Unenforceable. ......................................................................17

               1.    State public policy may not be considered in the
                    enforceability analysis. .................................................19

               2.    Even if considering state public policy were
                    permissible, that policy cannot be one of hostility
                    to forum-selection clauses. ...........................................21

               3.    At the very least, the district court was required to
                    weigh federal and state public policy, and federal
                    public policy prevails here............................................25

          C.    This is Not the Exceptional Case In Which the Public-
              Interest Factors Can Overcome an Otherwise Enforceable
              Forum-Selection Clause........................................................28

II.    Petitioners Have No Other Adequate Means of Obtaining Relief
       and the Writ Is Appropriate Under the Circumstances. .....................32

CONCLUSION .......................................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alaniz v. Liberty Life Assurance Co. of Boston*,
   No. 1:18-cv-297, 2018 WL 11428242 (E.D. Tex. Oct. 4, 2018) .......................31

*Ameri-Fab, LLC v. Vanguard Energy Partners, LLC*,
   646 F. Supp. 3d 795 (W.D. Tex. 2022) ............................................................23

*Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct.*,
   571 U.S. 49 (2013)....................................................................................*passim*

*Barnett v. DynCorp Int'l, LLC*,
   831 F.3d 296 (5th Cir. 2016) .............................................................................29

*Barton v. Young*,
   144 F. Supp. 2d 685 (E.D. Tex. 2001)...............................................................31

*Carnival Cruise Lines, Inc. v. Shute*,
   499 U.S. 585 (1991)........................................................................16, 18, 20

*In re Chamber of Com. of U.S.*,
   105 F.4th 297 (5th Cir. 2024) ...........................................................................32

*Davis v. Meta Platforms, Inc.*,
   No. 4:22-cv-01001, 2023 WL 4670491 (E.D. Tex. July 20, 2023) ...................31

*Defense Distributed v. Bruck*,
   30 F.4th 414 (5th Cir. 2022) ......................................................12-14, 30, 32-33

*In re Foster*,
   644 F. App'x 328 (5th Cir. 2016) (per curiam) .................................................13

*Great Lakes Ins. SE v. Raiders Retreat Realty Co.*,
   601 U.S. 65 (2024)......................................................................2, 16, 19-21, 33

*Haynsworth v. The Corporation*,
   121 F.3d 956 (5th Cir. 1997) .........................................................15, 18-19, 26

*Hoffman v. Blaski*,
   363 U.S. 335 (1960).....................................................................................16-17

*Lim v. Offshore Specialty Fabricators, Inc.*,
404 F.3d 898 (5th Cir. 2005) ....................................................... 3, 25, 27-28, 33

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972)........................................................................*passim*

*Matthews v. Tidewater, Inc.*,
108 F.4th 361 (5th Cir. 2024) ....................................................*passim*

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024)........................................................................31

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988)........................................................................*passim*

*In re TikTok, Inc.*,
85 F.4th 352 (5th Cir. 2023) ........................................... 14, 30, 32-33

*In re Volkswagen of America, Inc.*,
545 F.3d 304 (5th Cir. 2008) (en banc) ........................... 14, 30, 32-33

*United States v. Williams*,
400 F.3d 277 (5th Cir. 2005) ..............................................................13

*Weber v. PACT XPP Techs., AG*,
811 F.3d 758 (5th Cir. 2016) ....................... 11, 15, 18-19, 26, 23, 32

**Statutes**

28 U.S.C.
§ 1332...........................................................................................8
§ 1404(a) ................................................................................*passim*

Act of June 25, 1948, ch. 646, 62 Stat. 937 ...............................................16

Federal Courts Jurisdiction and Venue Clarification Act of 2011,
Pub. L. No. 112-63, § 202, 125 Stat. 764 ...........................................17

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Texas Civil Practice and Remedies Code
    Chapter 143A ................................................................................*passim*
    § 143A.002................................................................................8
    § 143A.003................................................................................10
    § 143A.0035..............................................................................10

## Other Authorities

15 Wright & Miller's Federal Practice and Procedure §§ 3841, 3845
    (4th ed. Sept. 2025 update) ....................................................17

Defense Distributed, https://perma.cc/NG5S-QV9A ................................................6

Judges, United States District Court Northern District of California,
    https://perma.cc/2AME-8XEX .........................................................31

## INTRODUCTION AND STATEMENT OF RELIEF SOUGHT

Plaintiff Defense Distributed uses YouTube and Google Ads to post videos and ads about its products. In doing so, Plaintiff has repeatedly agreed to abide by YouTube's and Google Ads's Terms of Service, which contain forum-selection clauses requiring that any disputes arising from use of those platforms be litigated exclusively in the courts of Santa Clara County, California. Nonetheless, Plaintiff sued YouTube, Google, and their parent company, Alphabet (collectively, "Defendants") in Texas. Plaintiff alleged that Defendants "censored" its content by removing videos and ads that violate YouTube's and Google Ads's policies. Defendants moved to transfer the case to the Northern District of California, which is located within Santa Clara County, pursuant to the forum-selection clauses.

Plaintiff did not contest that the forum-selection clauses at issue are mandatory or that its lawsuit falls squarely within their scope. Nor could it credibly contest that federal law governs whether a forum-selection clause is enforceable, and that the Supreme Court has long held that, pursuant to a federal presumption of enforceability, such clauses should be given effect in all but the most exceptional circumstances. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) ("*The Bremen*"); *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct.*, 571 U.S. 49, 59-60 (2013). That presumption is well-justified: Enforcing freely-agreed-to forum-selection clauses promotes predictability as to where litigation will occur and

vindicates the contracting parties' expectations. As the Supreme Court explained in *The Bremen*, giving effect to forum-selection clauses "accords with ancient concepts of freedom of contract" and is critical to the "expansion of American business and industry." 407 U.S. at 9, 11.

Despite finding that the YouTube and Google Ads forum-selection clauses are mandatory and govern the dispute at issue, and despite the substantial body of precedent making clear that forum-selection clauses are to be enforced in nearly every case, the district court denied Defendants' motion to transfer. The court held that the forum-selection clauses are unenforceable because Texas has announced that it has a strong public policy against enforcement of such clauses. The district court's decision was clearly erroneous for three reasons, each of which independently warrants mandamus.

*First*, in determining under federal law whether a forum-selection clause is unenforceable on grounds of public policy, the district court was not permitted to consider *state* public policy to begin with. *Great Lakes Ins. SE v. Raiders Retreat Realty Co.*, 601 U.S. 65, 78 (2024). Only federal public policy or that of a foreign nation may be considered. *Id.* The Supreme Court has explained that "[a] federal presumption of enforceability would not be much of a presumption if it could be routinely swept aside based on 50 States' public policy determinations." *Id.* at 77. The district court's ruling produces exactly such an outcome by sweeping away the

long-settled federal public policy in favor of forum-selection clauses based on Texas's state-specific public policy.

*Second*, even if the district court could consider state public policy in the enforceability analysis, it contravened Supreme Court precedent by allowing a state public policy *against forum-selection clauses* to override the federal presumption in favor of such clauses. *See The Bremen*, 407 U.S. at 9-15; *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30, 31 n.10 (1988) (holding that a district court erred by disregarding a forum-selection clause based on state law declaring such clauses to be void). After all, the federal presumption of enforceability would be even less of a presumption if a State could effectively nullify it simply by declaring that it has a strong public policy against forum-selection clauses.

*Third*, even assuming that the district court was permitted to consider Texas's public policy of hostility toward forum-selection clauses, it was required to weigh that public policy against the strong *federal* public policy favoring forum-selection clauses. Under Fifth Circuit precedent, federal public policy would have easily prevailed. *See Matthews v. Tidewater, Inc.*, 108 F.4th 361, 369-70 (5th Cir. 2024); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 905-06 (5th Cir. 2005).

Absent these legal errors, the forum-selection clauses at issue are plainly enforceable. And because the case implicates speech on national platforms and First Amendment issues of national importance that the Northern District of California is

just as well-equipped to adjudicate as the Western District of Texas, there is no overwhelming public interest against transfer that could overcome the otherwise enforceable forum-selection clauses.

In short, the district court committed clear legal error thrice over. Moreover, Defendants have no adequate means of obtaining relief other than mandamus, and issuance of the writ will provide much-needed guidance to district courts considering transfer motions under similar circumstances. Accordingly, Defendants respectfully request that this Court issue a writ of mandamus ordering the district court to transfer the case to the Northern District of California.

## ISSUE PRESENTED

Whether the district court clearly abused its discretion by denying Defendants' motion to transfer despite Plaintiff's agreement to mandatory, applicable, and enforceable forum-selection clauses.

## STATEMENT OF RELEVANT FACTS

### I. Factual Background

#### A. YouTube, Google Ads, and the Relevant Terms of Service

Defendant YouTube LLC makes YouTube—an online video service—available to the public. App.41 ¶¶ 27, 29; App.115 ¶ 2. Defendant Google LLC provides the YouTube service. App.123. Google LLC also provides Google Ads, a service that allows businesses and individuals to display ads on YouTube and other

Google websites.  App.41 ¶¶ 28-29.  Defendant Alphabet, Inc. is the parent company

of both YouTube and Google.  App.41-42 ¶ 33.

In order to view and upload videos on YouTube, users must agree to abide by

YouTube's Terms of Service, which expressly incorporate YouTube's Community

Guidelines.  App.115-16 ¶ 3; App.118 ¶ 9.  The Guidelines in turn incorporate

YouTube's firearms policy, which states that "[c]ontent intended to sell firearms [or]

instruct viewers on how to make firearms . . . is not allowed on YouTube."  App.44-

45 ¶¶ 39-40.  YouTube's Terms specify that users "must not submit to the Service,"

*i.e.*, upload to YouTube, "any Content that does not comply with this Agreement

(including the YouTube Community Guidelines)."  App.118 ¶ 9.  And the Terms

state that YouTube reserves the "right to remove or take down some or all of such

Content in [its] discretion."  *Id.*

YouTube's Terms also contain a forum-selection clause, which requires that

disputes between YouTube and its users be litigated exclusively in Santa Clara

County, California.  App.116 ¶ 5.  The current version states:

> All claims arising out of or relating to these terms or the Service will
> be governed by California law, except California's conflict of laws
> rules, and *will be litigated exclusively in the federal or state courts of
> Santa Clara County, California, USA*.  You and YouTube consent to
> personal jurisdiction in those courts.

*Id.* (emphasis added).  Previous versions of the Terms in effect since January 2012

included similar language.  App.117 ¶ 6.

Use of the YouTube platform constitutes agreement to the Terms of Service. App.115-16 ¶ 3. In addition, a user necessarily agrees to YouTube's Terms by uploading a video to the platform. App.117 ¶ 7. When a user attempts to upload a video, YouTube presents the user with a notice stating: "By submitting your videos to YouTube, you acknowledge that you agree to YouTube's Terms of Service and Community Guidelines." *Id.* A user cannot upload a video without viewing this screen and affirmatively choosing to proceed. *Id.*

Google Ads also requires users to agree to Terms of Service before they can post ads. App.140 ¶ 2. The Google Ads Terms prohibit ads for firearms and, like the YouTube Terms, contain a forum-selection clause stating: "ALL CLAIMS ARISING OUT OF OR RELATING TO THESE TERMS OR THE PROGRAMS WILL BE LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA COUNTY, CALIFORNIA." App.141 ¶ 5; App.61 ¶ 59.

## B. Plaintiff Agrees to YouTube's and Google Ads's Terms of Service, Including Their Forum-Selection Clauses

Plaintiff is a manufacturer and advocate of "ghost guns," which are untraceable firearms that individuals can create at home using 3-D printers. *See* Defense Distributed, https://perma.cc/NG5S-QV9A (Plaintiff's homepage, with prominent links for "GHOST GUNNER" and "GHOST GUNS"); App.39 ¶¶ 21-22. Plaintiff alleges that it "regularly publishes videos th[r]ough YouTube and utilizes

the Google Ads platform" and "has posted, uploaded, transmitted, shared, and otherwise published expression . . . through YouTube and the Google Ads platform from at least 2013 to present." App.39 ¶ 22; App.40 ¶ 25.

YouTube's records show that Plaintiff created a channel entitled "DXLiberty" in January 2012, and Plaintiff has "continually uploaded videos" to DXLiberty "between February 13, 2012 and June 9, 2025." App.116 ¶¶ 4-5. Plaintiff does not dispute that each time it uploaded a video, it necessarily agreed to YouTube's Terms of Service, including the forum-selection clause and incorporated Community Guidelines. App.17-18; App.117-18 ¶ 8. Plaintiff alleges that YouTube took down at least two of its videos featuring firearms for violating the Community Guidelines. App.57 ¶¶ 48-49; App.60 ¶ 56.

Plaintiff created a Google Ads account on October 25, 2022 and accepted the Google Ads Terms of Service, including the firearms policy and forum-selection clause, on November 14, 2022. App.141 ¶ 4. Plaintiff alleges that it has repeatedly sought to publish ads for firearms through Google Ads but has been prevented from doing so. App.61 ¶ 59.

## II. Procedural Background

### A. District Court Proceedings

In June 2025, Plaintiff "flout[ed] its contractual obligation" to resolve all disputes concerning its use of YouTube and Google Ads in Santa Clara County by

suing Defendants in Texas state court. *Atl. Marine*, 571 U.S. at 64; App.32. Plaintiff alleged that Defendants had "censored" its content in violation of Texas Civil Practice and Remedies Code Chapter 143A. App.36 ¶ 8; App.37 ¶¶ 10, 12. Chapter 143A prohibits "social media platform[s]" from "censor[ing] . . . a user's expression" based on the "viewpoint of the user." Tex. Civ. Prac. & Rem. Code § 143A.002. Plaintiff sought an injunction requiring Defendants to stop removing its content, a declaration that Defendants had violated Chapter 143A, and costs and attorney's fees. App.69-71 ¶¶ 89-91.

As a matter between diverse parties with an amount in controversy in excess of $75,000, Plaintiff's case is subject to federal jurisdiction. 28 U.S.C. § 1332; App.38 ¶ 14 (alleging that the "amount in controversy exceeds $5 million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs"); App.39 ¶ 21, App.41 ¶¶ 30-32 (alleging that Plaintiff is a citizen of Texas and Defendants are citizens of Delaware and California). Therefore, Defendants timely removed the case to federal court. App.24-29.

Shortly thereafter, Defendants filed a motion to transfer the case from the Western District of Texas to the Northern District of California under 28 U.S.C. § 1404(a). App.89-113; *Atl. Marine*, 571 U.S. at 52 ("[A] forum-selection clause may be enforced by a motion to transfer under § 1404(a)."). Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district

court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Defendants' motion was premised on the forum-selection clauses through which Plaintiff consented to litigating any claims "arising out of or relating to" its use of YouTube or Google Ads "exclusively in the federal or state courts of Santa Clara County, California." App.135, 149.

The district court denied Defendants' motion to transfer. The court acknowledged that "forum-selection clauses should be given 'controlling weight in all but the most exceptional cases.'" App.17 (quoting *Atl. Marine*, 571 U.S. at 63). The court also noted that Plaintiff "does not dispute that its claims fall within the scope of the forum-selection clauses or that the clauses are mandatory." App.17-18 (citing App.156). And it recognized that "[f]ederal law applies to determine the enforceability of forum selection clauses in diversity cases," and that "[u]nder federal law, there is a 'strong presumption' in favor of enforcing mandatory forum-selection clauses." App.18 (citations omitted).

Nevertheless, the district court declined to enforce the forum-selection clauses. The court concluded that Plaintiff had overcome the strong presumption in favor of enforceability by showing that enforcing the clauses "would contravene the strong public policy of Texas." App.22. The Court relied on two provisions of Chapter 143A. The first, an anti-forum-selection clause provision, states:

Notwithstanding any other law, any contract, or any venue, forum selection, or choice-of-law provision in a contract, an action brought under this chapter against a social media platform shall be brought and maintained in a court in this state, and the law of this state applies to the action.

Tex. Civ. Prac. & Rem. Code § 143A.0035. The second, an anti-waiver provision that purports to void forum-selection clauses, states:

(a) A waiver or purported waiver of the protections provided by this chapter is void as unlawful and against public policy, and a court or arbitrator may not enforce or give effect to the waiver, including in an action brought under Section 143A.007, notwithstanding any contract or choice-of-law provision in a contract.

(b) The waiver prohibition described by Subsection (a) is a public-policy limitation on contractual and other waivers of the highest importance and interest to this state, and this state is exercising and enforcing this limitation to the full extent permitted by the United States Constitution and Texas Constitution.

Id. § 143A.003.

Based on those two provisions, the district court determined that if it "transferred this case to California pursuant to the forum-selection clauses, it would contravene Texas's policy that actions under Chapter 143A are to be 'maintained' in this state notwithstanding any 'forum selection' provision," as well as "Texas's policy that waivers of Chapter 143A's protections—including the protection provided by the venue provision—are void and unenforceable." App.19-20 (citations omitted).

The district court rejected Defendants' argument that "state laws purporting to invalidate forum-selection clauses [are] irrelevant" to the analysis because Supreme Court precedent directs courts to apply federal law and the federal presumption in favor of enforcing forum-selection clauses. App.20 (citing App.173). The court reasoned that Texas's anti-forum-selection clause law is "relevant to the threshold enforceability determination," because forum-selection clauses that "would contravene a strong public policy of the forum state" are unenforceable, interpreting "the forum state" to refer to Texas. App.20-21 (quoting *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 773 (5th Cir. 2016)). And the court claimed that it was applying federal law, but that federal law permits it to consider state public policy. App.21-22.

Having concluded that the forum-selection clauses are unenforceable, the district court did not reach the question of whether the traditional public-interest factors relevant to transfer could overcome the forum-selection clauses. App.22 n.5.

## B.    Prior Fifth Circuit Proceedings

The district court issued its order denying Defendants' motion to transfer on November 13, 2025. App.15. Defendants filed a timely notice of appeal on December 1. App.11-13. On December 12, Plaintiff filed a motion to dismiss the appeal for lack of jurisdiction. App.217-27.

On December 22, Defendants filed a response explaining that (1) this Court has previously held that transfer orders are appealable under the collateral-order doctrine, (2) this Court has in other cases reviewed transfer orders through mandamus, and (3) given the uncertainty regarding the proper vehicle for seeking review of an adverse transfer order, Defendants planned to file an opening appeal brief requesting mandamus relief in the alternative as soon as the Record on Appeal became available. App.229-59. Indeed, that is the precise procedure that Plaintiff itself followed when it sought this Court's review of an adverse transfer order just a handful of years ago. *See* Brief of Appellants at 16-17, *Defense Distributed v. Bruck*, No. 21-50327 (5th Cir. June 17, 2021), Dkt. No. 37. In that case, this Court explicitly acknowledged an "intra-circuit split" on whether the collateral-order doctrine applies to transfer orders, but the Court ultimately had no occasion to decide whether appeal was available because it granted mandamus relief instead. *Defense Distributed v. Bruck*, 30 F.4th 414, 421, 423 n.8 (5th Cir. 2022).

The Record on Appeal became available on January 15, 2026, and Defendants filed their opening brief requesting mandamus relief in the alternative the next day.[1] On January 20, a motions panel of this Court granted Plaintiff's motion to dismiss the appeal. App.339. The order states that "Appellant claims that a motion for

---

[1] The docket states that the Record on Appeal was filed on January 14, but it did not become accessible until January 15.

mandamus would be proper but the document before this court states only 'Notice of Appeal,' so we need not address the mandamus issue," *id.* at n.1—even though Defendants' brief with alternative request for mandamus was already before the Court, *see* App.275-337. This Court has established that filing an opening brief with an alternative request for mandamus is a proper means of seeking mandamus relief. *See In re Delta Servs. Indus., Etc.*, 782 F.2d 1267, 1272 (5th Cir. 1986) (Appellants seeking mandamus relief in the alternative can either "appl[y] for a writ of mandamus under Fed. R. App. P. 21" or "request[] that [the Court] treat their appeal as a petition for a writ."). And it has repeatedly entertained such alternative requests, as it did in *Bruck*. *See, e.g.*, 30 F.4th at 423; *United States v. Williams*, 400 F.3d 277, 280 (5th Cir. 2005); *In re Foster*, 644 F. App'x 328, 330 n.1 (5th Cir. 2016) (per curiam). Nonetheless, in light of the motions panel's order dismissing the appeal, Defendants file this separate mandamus petition.

It is beyond dispute that Defendants have moved with great urgency. Defendants appealed and alternatively sought mandamus relief within one day of the appellate record being made available. And they filed this mandamus petition within two days of dismissal of their appeal. Given Defendants' "active litigation posture," there is no plausible argument that Defendants have "slept upon [their] rights." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 379 (2004) (citation omitted).

## REASONS WHY THE WRIT SHOULD ISSUE

In this Circuit, "[t]here can be no doubt . . . that mandamus is an appropriate means of testing a district court's § 1404(a) ruling." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (en banc); *see In re TikTok, Inc.*, 85 F.4th 352, 356 (5th Cir. 2023) (granting mandamus petition seeking transfer from Western District of Texas to Northern District of California); *Bruck*, 30 F.4th at 421, 423 & n.8 (5th Cir. 2022) (granting mandamus relief after Defense Distributed appealed from an adverse transfer order and asked this Court to construe its opening brief as an alternative mandamus petition).

Mandamus relief is warranted when (1) there has been a "clear abuse of discretion," (2) "the party seeking issuance of the writ [has] no other adequate means to attain the relief he desires," and (3) "the issuing court . . . [is] satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 380-81 (citations omitted). "A district court by definition abuses its discretion when it makes an error of law." *Bruck*, 30 F.4th at 427 (citation omitted); *Volkswagen*, 545 F.3d at 310-11 (a district court commits a "clear abuse of discretion" when it "relies on erroneous conclusions of law"). Here, the district court committed clear legal error in its analysis of the forum-selection clauses' enforceability and so by definition clearly abused its discretion. In addition, the motions panel's order dismissing Defendants' appeal removes any doubt as to whether Defendants have other adequate means to

obtain relief or whether a writ is appropriate under these circumstances: They do not, and it is.

## I.  The District Court Clearly Abused Its Discretion by Denying Defendants' Motion to Transfer.

### A.  Forum-Selection Clauses Enjoy a Strong Presumption of Enforceability.

It is well-established in this Circuit that, in diversity cases like this one, federal law governs the enforceability of a forum-selection clause. *Haynsworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 1997). And under federal law, forum-selection clauses enjoy a strong presumption of enforceability. *The Bremen*, 407 U.S. at 9-15; *Weber*, 811 F.3d at 773.

In *The Bremen*, the Supreme Court observed that forum-selection clauses "have historically not been favored by American courts" and that "[m]any courts" had "declined to enforce such clauses on the ground that they were 'contrary to public policy.'" 407 U.S. at 9. The Court repudiated that "parochial" view, holding that forum-selection clauses are "prima facie valid and should be enforced" so as to "give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement." *Id.* at 9-10, 12.

The Court explained that permitting contracting parties to reduce uncertainty by agreeing on a dispute-resolution forum in advance is critical to "[t]he expansion of American business and industry." 407 U.S. at 9. Forum-selection clauses "have

'the salutary effect of dispelling any confusion' on the manner for resolving future

disputes, thereby slashing the 'time and expense of pretrial motions.'" *Great Lakes*,

601 U.S. at 72 (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94

(1991)); *Atl. Marine*, 571 U.S. at 66 ("When parties have contracted in advance to

litigate disputes in a particular forum, courts should not unnecessarily disrupt the

parties' settled expectations."). Given all the benefits of forum-selection clauses,

and "in the light of present-day commercial realities," *The Bremen* Court concluded

that a forum-selection clause "should control absent a strong showing that it should

be set aside." 407 U.S. at 15. The Supreme Court's view on the importance of

forum-selection clauses has not wavered since *The Bremen*—if anything, it has

grown even stronger. *See Atl. Marine*, 571 U.S. at 59-60 (Section "1404(a) requires

that a forum-selection clause be 'given controlling weight in all but the most

exceptional circumstances.'" (citation omitted)).

Indeed, the presumption in favor of enforcing forum-selection clauses is

particularly strong in cases involving section 1404(a), because the statute itself

reflects a favorable policy toward such clauses. As originally enacted,

section 1404(a) read: "For the convenience of parties and witnesses, in the interest

of justice, a district court may transfer any civil action to any other district or division

where it might have been brought." Act of June 25, 1948, ch. 646, 62 Stat. 937. In

*Hoffman v. Blaski*, 363 U.S. 335 (1960), the Supreme Court interpreted the phrase

"where [the action] might have been brought" restrictively. 15 Wright & Miller's Federal Practice and Procedure § 3841 (4th ed. Sept. 2025 update). It held that section 1404(a) only permitted transfer to a court that "(1) would have been a proper venue and (2) would have had personal jurisdiction over the defendant had the case been filed there initially." *Id.* But in 2011, Congress amended the statute to add that a district court may also transfer "*to any district or division to which all parties have consented.*" Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, § 202, 125 Stat. 764 (emphasis added). That new language is a powerful indication of Congress's favorable attitude toward forum-selection clauses, because it permits transfer to a district agreed to by the parties, *even if* it is not a district where the action might otherwise "have been brought." 28 U.S.C. § 1404(a); Wright & Miller, *supra*, § 3845.

Therefore, under governing federal law, the forum-selection clauses at issue here are presumptively enforceable. That should have been the start and end of the district court's analysis of whether to grant Defendants' motion to transfer.

**B.     The District Court Committed Clear Legal Error in Holding That the Forum-Selection Clauses Are Unenforceable.**

In *The Bremen* and subsequent cases, the Supreme Court identified a narrow set of circumstances under which a forum-selection clause may be deemed "unreasonable," and therefore unenforceable, despite the strong presumption of

enforceability. In particular, enforcement of a forum-selection clause may be unreasonable under the circumstances if:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Haynsworth*, 121 F.3d at 963 (quoting *The Bremen*, 407 U.S. at 18) (citing *The Bremen*, 407 U.S. at 12-13, 15; *Carnival Cruise Lines*, 499 U.S. at 595). The party resisting enforcement on any of these grounds "bears a 'heavy burden of proof.'" *Haynsworth*, 121 F.3d at 963 (quoting *The Bremen*, 407 U.S. at 17).

Plaintiff has never argued that any of the first three potential sources of unreasonableness are applicable here. It has invoked only the public-policy exception. *See* App.156-61. Relying on that exception as articulated in *Weber* and *Haynsworth*, which in turn relied on *The Bremen*, the district court concluded that enforcement of the forum-selection clauses would be unreasonable because it would contravene Texas's public policy against such clauses. App.18 (quoting *Haynsworth*, 121 F.3d at 963, which quotes and cites *The Bremen*, 407 U.S. at 12-13, 15, 18); App.20-21 (quoting *Weber*, 811 F.3d 773, which quotes *Haynsworth*, 121 F.3d at 963). That conclusion was clearly erroneous because Texas's public policy of antipathy toward forum-selection clauses may not be considered in the

enforceability analysis—and even if it could be, it would be outweighed by the powerful federal presumption in favor of enforceability.

**1. State public policy may not be considered in the enforceability analysis.**

Federal law governs the enforceability analysis. And relying on state public policy is merely an indirect way of allowing state law, rather than federal law, to govern the enforceability analysis. *See* App.173 (explaining that Plaintiff's erroneous claim that "Texas state law determines the enforceability of forum-selection clauses" "pervades" all of its arguments premised on Texas public policy); *see also* App.106-08. In recognition of that basic proposition, the Supreme Court made clear in *Great Lakes* that *The Bremen*'s reference to unreasonableness based on "a strong public policy of the forum state" refers only to federal public policy or that of a foreign state and *not* the public policy of a State like Texas. 601 U.S. at 78. The district court, however, interpreted *Haynsworth*'s and *Weber*'s references to the "strong public policy of the forum state," which derive from *The Bremen*, as authorization for it to consider Texas public policy. In doing so, the district court contravened Supreme Court precedent.

In *Great Lakes*, the Supreme Court held that the enforceability of choice-of-law provisions in maritime contracts should be determined by federal law, not state law, and that, like forum-selection clauses, choice-of-law clauses enjoy a federal presumption of enforceability. 601 U.S. at 71. The respondent argued that the

presumption should be overcome when enforcing a choice-of-law provision "would contravene the fundamental public policy" of a State.  *Id.* at 77.  The Court squarely rejected that argument, explaining that state public policy is irrelevant to enforceability and reasoning that it has not "looked to state law in the analogous forum-selection context."  *Id.* at 77-78.  In support of reliance on state public policy, the respondent "point[ed] to [the] sentence in *The Bremen* stating that a 'contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought.'"  *Id.* (citation omitted).  The Court repudiated that reading of *The Bremen*'s public-policy exception in no uncertain terms:

> [T]hat sentence, read in context, was referring to the possibility of a conflict between federal maritime law and a foreign country's law— there, England's.  State law was not relevant to the case.  *The Bremen* said nothing about the law or public policy of Florida.  *Carnival Cruise* likewise said nothing about the law or public policy of Washington.

*Great Lakes*, 601 U.S. at 78 (citations omitted).

The Supreme Court's conclusion that the presumptive enforceability of forum-selection and choice-of-law clauses cannot be overcome on the basis of state public policy makes good sense.  After all, as the Court put it, "[a] federal presumption of enforceability would not be much of a presumption if it could be routinely swept aside based on 50 States' public policy determinations."  *Great Lakes*, 601 U.S. at 77.

The Court also explained that the respondent's argument for an exception to the presumption of enforceability based on state public policy was "essentially a repackaged version of its initial argument that the enforceability of choice-of-law provisions in maritime contracts should be determined by state law." *Great Lakes*, 601 U.S. at 77. In the same way, the district court's use of Texas public policy to hold unenforceable the forum-selection clauses here was a backdoor way of using state law to determine enforceability. The district court insisted that it was applying federal law, rather than state law, and that federal law merely incorporates state public policy. App.21-22. But according to *Great Lakes*, relying on state public policy in the enforceability analysis is just a "repackaged" way of improperly using state law to determine enforceability. 601 U.S. at 77.

> **2.    Even if considering state public policy were permissible, that policy cannot be one of hostility to forum-selection clauses.**

Even assuming it were permissible for the district court to consider state public policy of some kind, it would still be impermissible for the court to rely on state law manifesting hostility to forum-selection clauses to defeat the federal presumption in favor of enforcing such clauses. Under the Supreme Court's decisions in *Stewart* and *The Bremen*, such a law would necessarily be preempted by federal law establishing that forum-selection clauses must be considered in the analysis and enforced in all but the most exceptional cases.

In *Stewart*, an Alabama marketing company and New Jersey-based manufacturer agreed to a forum-selection clause requiring any disputes be resolved in a New York court. 487 U.S. at 24. When the marketing company sued in Alabama, the manufacturer moved to transfer the case to New York under section 1404(a). *Id.* The district court denied the motion, reasoning that the "transfer motion was controlled by Alabama law and that Alabama looks unfavorably upon contractual forum-selection clauses." *Id.* The Eleventh Circuit reversed, and the Supreme Court affirmed. *Id.* at 25.

The Supreme Court explained that the district court faced a choice between either (1) applying federal law, specifically section 1404(a), and giving weight to the forum-selection clause, or (2) applying state law, specifically Alabama's categorical policy against forum-selection clauses, and therefore disregarding the forum-selection clause. *Id.* at 30. The Court held that, because federal law is supreme and preempts contrary state law, the district court should have chosen the former option and should not have denied the motion based on Alabama's anti-forum-selection clause law. *Id.* The dissent in *Stewart* took the contrary position that the enforceability of a forum-selection clause should be determined by state law. *Id.* at 31 n.10; *id.* at 35, 39 (Scalia, J., dissenting). The majority explained that the dissent's position would impermissibly "make[] the applicability of a federal statute depend on the content of state law." *Id.* at 31 n.10.

In short, *Stewart* holds that a court cannot deny a motion to transfer pursuant to a forum-selection clause simply because state law declares such clauses invalid. If a court presented with a section 1404(a) motion could consider state public policy hostile to forum-selection clauses as part of the enforceability analysis, that would open up a gaping loophole to *Stewart*. The district court in *Stewart* could have achieved the same result simply by claiming that it was not using Alabama law to determine enforceability but was merely incorporating Alabama's strong public policy against forum-selection clauses into the federal enforceability analysis.

Therefore, if *Stewart* is to retain any force, it necessarily must be impermissible for a district court to hold a forum-selection clause unenforceable on the basis of a state law disfavoring forum-selection clauses. It makes no difference whether the court does so by explicitly applying state law to determine enforceability or by sneaking that state law in through the federal enforceability analysis. *See Ameri-Fab, LLC v. Vanguard Energy Partners, LLC*, 646 F. Supp. 3d 795, 804 (W.D. Tex. 2022) (explaining that a Texas law disfavoring forum-selection clauses was no "different from the Alabama law given no weight in *Stewart*," and that denying enforcement on the basis of that Texas law would "require the [c]ourt to disregard the central holding[] in *Stewart*").

The Fourth Circuit reached the same conclusion based on *The Bremen*. *See Albemarle*, 628 F.3d at 652. In *Albemarle*, the plaintiff sued in South Carolina even

though it had agreed to a forum-selection clause requiring litigation in the United Kingdom. *Id.* at 645-46. The plaintiff argued that the clause was unenforceable because enforcement "would violate a strong public policy of South Carolina." *Id.* at 651.

The Fourth Circuit rejected that argument, explaining that it was contrary to *The Bremen* in two ways. *First*, the Fourth Circuit explained that the Supreme Court had "specifically addressed and countered" "state reluctance to recognize and enforce forum selection clauses" in *The Bremen*. *Albemarle*, 628 F.3d at 652. The Supreme Court "held that, contrary to judicial disfavor of forum selection clauses such as that manifested in the South Carolina statute [at issue in *Albemarle*], in federal court, forum selection clauses enjoy a presumption of enforceability." *Id.* *Second*, the Fourth Circuit observed that "it can hardly be a strong public policy to countermand the very policy that the Supreme Court adopted in *The Bremen*." *Id.* The court reasoned that "*The Bremen* would have little effect if [S]tates could effectively override the decision by expressing disagreement with the decision's rationale." *Id.* Accordingly, the Fourth Circuit concluded that "[c]lassifying South Carolina's statute as manifesting a strong public policy within *The Bremen*'s reasoning would allow the very 'provincial attitude' rejected by *The Bremen* to override the federal policy of favoring a contractual choice of forum." *Id.*

This Court should align itself with the Fourth Circuit's well-reasoned opinion in *Albemarle* and hold that, under *Stewart* and *The Bremen*, it was impermissible for the district court "to override the federal policy" in favor of enforcing forum-selection clauses based on Texas public policy manifesting hostility to forum-selection clauses. *Albemarle*, 628 F.3d at 652.

3.    **At the very least, the district court was required to weigh federal and state public policy, and federal public policy prevails here.**

Even if state public policy embodying hostility to forum-selection clauses could be considered in the enforceability analysis, the district court still clearly erred. The court was at the very least required to consider both state *and* federal public policy, and it failed to give proper weight to the latter, as demonstrated by this Court's decisions in *Matthews* and *Lim*.

In *Matthews*, the plaintiff argued that a forum-selection clause requiring litigation in England was unenforceable because it ran "afoul of" "strong Louisiana public policy," as manifested in a Louisiana statute declaring forum-selection clauses like the one at issue to be "null and void." 108 F.4th at 368-39 (citations omitted). Rather than decide whether *The Bremen*'s invocation of the "public policy of the forum state" referred to state or federal public policy, this Court examined both. *Id.* at 369 (citation omitted). The Court determined that the strong *federal* public policy in favor of enforcing forum-selection clauses outweighed Louisiana's

admittedly strong interest against enforcing such clauses. *Id.* at 370. The Court explained that "Louisiana public policy conflicts with and frustrates the federal public policy's presumption of validity and arguably perpetuates the uncertainties *Bremen* warns against." *Id.* It therefore concluded that "[e]ven if Louisiana's public policy is relevant under a *Bremen* analysis," it could "not overcome" the federal presumption and that the plaintiff had failed to make the necessary "'strong showing' that the clause [was] unreasonable under the circumstances." *Id.* (citation omitted).

Here, despite Defendants prominently raising *Matthews* in their briefing, the district court barely considered the case, dismissing it in a footnote on the ground that "its holding was limited to the facts presented and based on federal public policy considerations in the maritime context." App.21 n.3. But the critical facts in *Matthews*—a mandatory and applicable forum-selection clause and a State's strong public policy against forum-selection clauses—are also present here. And while *Matthews* noted that forum-selection clauses are presumptively enforceable in the maritime context, it is well-established that the presumption of enforceability extends beyond that context. *The Bremen* arose in the admiralty context, and yet, "this court and others have not hesitated to apply the[] federal enforceability standards" articulated in *The Bremen* "in non-admiralty cases." *Haynsworth*, 121 F.3d at 962; *see, e.g.*, *Stewart*, 487 U.S. at 24; *Weber*, 811 F.3d at 863. If anything, the presumptive of enforceability is *even stronger* in cases governed by section

1404(a) than maritime cases, because section 1404(a) reflects Congress's favorable view of transfer to a district "to which all parties have consented" in advance, even if the suit could not have otherwise been brought in that district.

In any event, this Court in *Matthews* in no way cabined its holding to maritime cases. Indeed, the Court dismissed the plaintiff's objection that the Court's prior decision in *Lim* was inapposite because the plaintiffs in *Lim* were not Jones Act seamen. *Matthews*, 108 F.4th at 370. The Court explained that those distinctions were "inapposite to [its] analysis" and "[t]he similarities are more important." *Id.*

*Lim*, like *Matthews*, shows that between federal public policy in favor of forum-selection clauses and state public policy against forum-selection clauses, federal policy comes out ahead. In *Lim*, this Court considered both Louisiana and federal public policy in assessing the enforceability of an arbitration agreement and concluded that the plaintiffs failed to "meet the 'high burden of proof' necessary to show public policy renders the arbitration clause unreasonable." 404 F.3d at 906.[2] The plaintiffs had entered into employment contracts containing mandatory arbitration clauses, but the district court concluded that the clauses were "unenforceable" because of Louisiana's "strong public policy against a forum selection clause in an employment contract." *Id.* at 900-01. Rather than decide whether the relevant forum for purposes of *The Bremen*'s strong-public-policy

---

[2] An "arbitration clause is a subset of a forum selection clause." *Lim*, 404 F.3d at 901.

exception to the presumption of enforceability was the United States or Louisiana, this Court "consider[ed] both United States and Louisiana public policy." *Id.* at 905. After "weighing the[] competing policy concerns," the Court concluded that "the strong federal policy in favor of . . . arbitration agreements" outweighed Louisiana's strong public policy against such agreements. *Id.* at 906.

Under *Matthews* and *Lim*, the district court should have at the very least weighed Texas's public policy of hostility toward forum-selection clauses against the strong federal policy in favor of such clauses. And just as in *Matthews* and *Lim*, federal policy would have prevailed, given that there are no unusual circumstances here that would render the federal presumption of enforceability particularly weak or the state interest against forum-selection clauses particularly strong.

### C. This is Not the Exceptional Case In Which the Public-Interest Factors Can Overcome an Otherwise Enforceable Forum-Selection Clause.

Under a normal section 1404(a) analysis, the court considers a variety of private- and public-interest factors, including deference to the plaintiff's choice of forum. But the presence of an enforceable forum-selection clause "dramatically alters this analysis" in at least two ways. *Weber*, 811 F.3d at 767. *First*, "the plaintiff's choice of forum merits no weight." *Atl. Marine*, 571 U.S. at 63. That is because "when a plaintiff agrees by contract to bring suit only in a specified forum, . . . the plaintiff has effectively exercised its 'venue privilege' before a dispute

arises." *Id.* *Second*, the private-interest factors "weigh entirely in favor of the preselected forum," because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 64.

As a result, "[w]hen a defendant files . . . a motion" to transfer based on an enforceable forum-selection clause, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine*, 571 U.S. at 52. The public-interest factors "will rarely defeat a transfer motion," so "the practical result is that forum-selection clauses should control . . . [i]n all but the most unusual cases." *Id.* at 64, 66. That result accords with the Supreme Court's "guidance that contractually selected forums often . . . become part of th[e] parties' 'settled expectations'—so if a plaintiff disregards such a contractual commitment, 'dismissal [or transfer to that forum] . . . work[s] no injustice.'" *Barnett v. DynCorp Int'l, LLC*, 831 F.3d 296, 300 (5th Cir. 2016) (quoting *Atl. Marine*, 571 U.S. at 66 & n.8).

Plaintiff therefore bears a heavy "burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine*, 571 U.S. at 67. Plaintiff cannot satisfy that burden.

Courts consider four public-interest factors: (1) "the familiarity of the forum with the law that will govern the case," (2) "the avoidance of unnecessary problems

of conflict of laws [or] application of foreign law," (3) "the local interest in having localized interests decided at home," and (4) "the administrative difficulties flowing from court congestion." *Volkswagen*, 545 F.3d at 315 (citation omitted). None of those factors weigh in Plaintiff's favor, let alone amount to the exceptional justification necessary to override an enforceable forum-selection clause.

*First*, familiarity with the relevant law "does not weigh in favor of transfer when both districts are 'equally capable of applying [that] law.'" *TikTok*, 85 F.4th at 365 (citation omitted). There is no reason to think "that the judges of the Northern District of California would be less equipped to handle these claims" than judges in the Western District of Texas. *Id.* at 366. "Federal judges routinely apply the law of a State other than the State in which they sit." *Bruck*, 30 F.4th at 436 (citation omitted). And Plaintiff has identified no difficult statutory-interpretation questions about Chapter 143A that "are likely to defy comprehension by a federal judge sitting in" California. *Atl. Marine*, 571 U.S. at 68. In any event, the central question will be whether enforcing Chapter 143A here violates the First Amendment, and Texas judges have no special expertise in First Amendment law.

*Second*, because this case turns on federal First Amendment law, there is no risk of conflict-of-law issues or need for application of foreign law. *See Bruck*, 30 F.4th at 436. Courts in this Circuit have repeatedly held that the conflict-of-laws factor does not move the needle where the legal issues in dispute are predominantly

federal. *See, e.g.*, *Barton v. Young*, 144 F. Supp. 2d 685, 689 (E.D. Tex. 2001); *Alaniz v. Liberty Life Assurance Co. of Boston*, No. 1:18-cv-297, 2018 WL 11428242, at *8 (E.D. Tex. Oct. 4, 2018).

*Third*, this is not a quintessentially local matter focused on local interests. The case involves content that Plaintiff would like to publish to a national audience. The relief Plaintiff seeks—an injunction restoring its content to YouTube and Google Ads, both national platforms—is not limited to Texas. And the core legal dispute over whether enforcing Chapter 143A would violate Defendants' First Amendment rights to make editorial choices about the content on their platforms is of national interest and importance. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 731, 734-35 (2024); *Davis v. Meta Platforms, Inc.*, No. 4:22-cv-01001, 2023 WL 4670491, at *17 (E.D. Tex. July 20, 2023).

*Fourth*, the Northern District of California is perfectly capable of adjudicating cases promptly, especially those like this one that largely turn on pure issues of law. And given its abundance of judges, it is implausible that the addition of this case to the Northern District of California's docket would generate administrative difficulties or court congestion. *See* Judges, United States District Court Northern District of California, https://perma.cc/2AME-8XEX. Moreover, Plaintiff's "assertions that [its] case needs to be decided quickly should not affect the weight

of this factor," because such assertions reflect Plaintiff's *private* interest, not a public

one.  *In re Chamber of Com. of U.S.*, 105 F.4th 297, 310 (5th Cir. 2024).

In sum, this is not "one of the rare cases in which the public-interest . . . factors

favor keeping a case despite the existence of . . . valid and enforceable" forum-

selection clauses.  *Weber*, 811 F.3d at 776.  Rather, the "interest of justice" warrants

transferring this case to California, the place that the parties agreed in advance would

be the exclusive forum for precisely this kind of dispute.  28 U.S.C. § 1404(a); *Atl.*

*Marine*, 571 U.S. at 66 ("'[T]he interest of justice' is served by holding parties to

their bargain.").

## II.    Petitioners Have No Other Adequate Means of Obtaining Relief and the Writ Is Appropriate Under the Circumstances.

The other requirements for a writ of mandamus—that "the party seeking

issuance of the writ [have] no other adequate means to attain the relief he desires,"

and that issuance of the "writ [be] appropriate under the circumstances," *Cheney*,

542 U.S. at 380-81—are also satisfied here.

This Court has held that the first requirement "is satisfied in the motion-to-

transfer context," *TikTok*, 85 F.4th at 358, because "an appeal from an adverse final

judgment" is not "an adequate remedy for an improper failure to transfer the case,"

*Volkswagen*, 545 F.3d at 318-19 (citation omitted).  This Court's opinion in *Bruck*

left some doubt as to whether a collateral-order appeal might be an alternative

adequate means of obtaining relief from an adverse transfer order.  30 F.4th at 423

n.8 (acknowledging "intra-circuit split"). But the motions panel's order dismissing Defendants' appeal for lack of jurisdiction removes any such doubt: It is now indisputable that appeal is *not* an adequate means for Defendants to obtain relief.

As to the requirement that a writ be appropriate under the circumstances, this Court has explained that "writs of mandamus are supervisory in nature and are particularly appropriate when the issues also have an importance beyond the immediate case." *Volkswagen*, 545 F.3d at 319. The Court has "recognized that § 1404(a) decisions often have 'importance beyond the immediate case . . . [b]ecause venue transfer decisions are rarely reviewed.'" *TikTok*, 85 F.4th at 367 (citation omitted). Granting mandamus here would provide salutary guidance to district courts on the important issue of when transfer is warranted in response to a § 1404(a) motion premised on a forum-selection clause. In particular, it would permit this Court to address what was left unresolved in *Matthews* and *Lim* and issue the unequivocal direction to district courts required by *Great Lakes*: State public policy plays no role in the federal enforceability analysis of a forum-selection clause.

## CONCLUSION

For the foregoing reasons, Petitioners request that this Court issue a writ of mandamus ordering the district court to transfer the case to the Northern District of California.

Dated: January 22, 2026

Respectfully submitted,

*/s/ Jonathan Patchen*
Jonathan Patchen
Michael A. Rome
Anika Holland
Madeleine R. Ahlers
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2000
jpatchen@cooley.com

Connie L. Wang
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

Steven J. Wingard
Robyn Hargrove
Eli Barrish
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
(512) 495-6300

*Counsel for Petitioners YouTube LLC,*
*Google LLC, and Alphabet, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Jonathan Patchen*
Jonathan Patchen

# CERTIFICATE OF COMPLIANCE

I certify that:

1.      This petition complies with the type-volume limitations of Federal Rule of Appellate Procedure 21(d)(1) because it consists of 7,785 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 21(d) and Fifth Circuit Rule 21.

2.      This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), as incorporated by Federal Rules of Appellate Procedure 21(d) and 32(c)(2), because it has been prepared in a proportionally spaced, serif typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Jonathan Patchen*
Jonathan Patchen