No. 26-50076

---

# UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

IN RE YOUTUBE LLC, GOOGLE LLC, AND ALPHABET, INC.

*Petitioners.*

On Petition for Writ of Mandamus from the United States District Court
for the Western District of Texas (No. 1:25-cv-01095-ADA)

---

## PETITIONERS' OPPOSED EMERGENCY MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING MANDAMUS REVIEW AND FOR A TEMPORARY ADMINISTRATIVE STAY PENDING CONSIDERATION OF THIS MOTION

Steven J. Wingard
Robyn Hargrove
Eli Barrish
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
(512) 495-6300

Jonathan Patchen
Michael A. Rome
Anika Holland
Madeleine R. Ahlers
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2000
jpatchen@cooley.com

Connie L. Wang
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

*Counsel for Petitioners
YouTube LLC, Google LLC, and Alphabet, Inc.*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record in *In re YouTube LLC, Google LLC, and Alphabet, Inc.*, on petition for writ of mandamus from the United States District Court for the Western District of Texas (No. 1:25-cv-01095-ADA), certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.      Respondent is Defense Distributed. To Petitioners' knowledge, Defense Distributed has no parent company and is not a publicly traded company.

2.      Respondent is represented in the Fifth Circuit by Chad Flores of Flores Law PLLC.

3.      Petitioners are YouTube LLC, Google LLC, and Alphabet, Inc. YouTube LLC is a subsidiary of Google LLC. Google LLC is a subsidiary of XXVI Holdings, Inc., which is a subsidiary of Alphabet, Inc. Alphabet, Inc. is a publicly traded company, but no publicly traded company owns 10% or more of its stock.

4.      Petitioners are represented in the Fifth Circuit by Jonathan Patchen, Michael A. Rome, Anika Holland, Madeleine R. Ahlers, and Connie L. Wang of Cooley LLP and Steven J. Wingard, Robyn Hargrove, and Eli Barrish of Scott Douglass & McConnico LLP.

*/s/ Jonathan Patchen*

Jonathan Patchen
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2000
jpatchen@cooley.com

*Counsel for Petitioners YouTube LLC, Google LLC, and Alphabet, Inc.*

**Page**

INTRODUCTION ...................................................................................................1

    I.    BACKGROUND ............................................................................4

    II.   ARGUMENT ..................................................................................7

        A.    Legal Standard ........................................................................7

        B.    Petitioners Satisfy the Four-Factor Test for Issuance of a
             Stay.........................................................................................7

            1.    Petitioners Have a Substantial Likelihood of
                 Success on the Merits. ....................................................7

            2.    Petitioners Will Suffer Irreparable Injury Absent a
                 Stay. .............................................................................11

            3.    Respondent Will Suffer No Prejudice From a Stay. .....15

            4.    A Stay Is In the Public Interest....................................16

CONCLUSION ...................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Andrade v. Chojnacki*,
　934 F. Supp. 817 (S.D. Tex. 1996) .................................................................. 14

*Barnett v. DynCorp Int'l, LLC*,
　831 F.3d 296 (5th Cir. 2016) ........................................................................... 12

*Bell Semiconductor, LLC v. NXP Semiconductors, N.V.*,
　No. 1:20-CV-611-LY, 2022 WL 1447948 (W.D. Tex. Feb. 7,
　2022) ................................................................................................................ 15

*In re Clarke*,
　94 F.4th 502 (5th Cir. 2024) ........................................................................... 11

*In re Delta Servs. Indus., Etc.*,
　782 F.2d 1267 (5th Cir. 1986) ........................................................................... 5

*E.T. v. Paxton*,
　19 F.4th 760 (5th Cir. 2021) ........................................................................... 15

*Gebbia v. Wal-Mart Stores, Inc.*,
　233 F.3d 880 (5th Cir. 2000) ........................................................................... 13

*Great Lakes Ins. SE v. Raiders Retreat Realty Co.*,
　601 U.S. 65 (2024) ........................................................................................ 7-8

*In re Horseshoe Ent.*,
　337 F.3d 429 (5th Cir. 2003) ...................................................................... 3, 16

*Lim v. Offshore Specialty Fabricators, Inc.*,
　404 F.3d 898 (5th Cir. 2005) ........................................................................... 10

*M/S Bremen v. Zapata Off-Shore Co.*,
　407 U.S. 1 (1972) .......................................................................................... 7-9

*Matthews v. Tidewater, Inc.*,
　108 F.4th 361 (5th Cir. 2024) ...................................................................... 9-10

iv

*McDonnell Douglas Corp. v. Polin*,
 429 F.2d 30 (3d Cir. 1970) (per curiam) ............................................15

*In re Netflix, Inc.*,
 No. 2021-190, 2021 WL 4944826 (Fed. Cir. Oct. 25, 2021) ............16

*Nken v. Holder*,
 556 U.S. 418 (2009).............................................................................6

*Norman IP Holdings, LLC v. TP-Link Techs., Co.*,
 No. 6:13-CV-384-JDL, 2014 WL 5035718 (E.D. Tex. Oct. 8,
 2014) ...................................................................................................15

*Oldham v. Nationwide Ins. Co. of Am.*,
 No. 3:14-CV-00575, 2014 WL 3855238 (N.D. Tex. Aug. 5, 2014) .................14

*Ex parte Republic of Peru*,
 318 U.S. 578 (1943)...........................................................................14

*Roho, Inc. v. Marquis*,
 902 F.2d 356 (5th Cir. 1990) ...............................................................7

*Ruiz v. Estelle*,
 650 F.2d 555 (5th Cir. Unit A June 1981) (per curiam)......................6

*Sparling v. Doyle*,
 No. EP-13-CV-00323-DCG, 2014 WL 12489985 (W.D. Tex. Mar.
 3, 2014) ...............................................................................................15

*Stewart Org., Inc. v. Ricoh Corp.*,
 487 U.S. 22 (1988)...............................................................................9

*Templeton v. Jarmillo*,
 28 F.4th 618 (5th Cir. 2022) ................................................................9

*United States v. McKenzie*,
 697 F.2d 1225 (5th Cir. 1983) .............................................................6

*Valentine v. Collier,*
    978 F.3d 154 (5th Cir. 2020) ...............................................................6

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964)...........................................................................16

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008) (en banc) .................................... 2, 10-11

*Woodson v. Surgitek, Inc.,*
    57 F.3d 1406 (5th Cir. 1995) ...............................................................3

**Statutes**

28 U.S.C. § 1332 ...................................................................................12

28 U.S.C. § 1404(a) .............................................................................2, 8

28 U.S.C. § 1447(d) ..............................................................................13

Texas Civil Practice and Remedies Code Chapter 143A .........................4

**Other Authorities**

Fifth Circuit Rule 27.3 .........................................................................1, 4

Fed. R. App. P. 8 ....................................................................................1

Fed. R. App. P. 21(b)(1).........................................................................6

# INTRODUCTION

Pursuant to Rule 8 of the Federal Rules of Appellate Procedure and Fifth Circuit Rule 27.3, Petitioners YouTube LLC, Google LLC, and Alphabet Inc. (collectively, "Petitioners") respectfully move this Court for an emergency stay of district court proceedings pending resolution of the Petition for Mandamus of the Order Denying Motion to Transfer (Dkt. 2). Immediate relief is necessary to preserve the status quo and ensure Petitioners have a meaningful opportunity to seek higher-court review of the district court's order denying their motion to transfer.

Petitioners previously filed a collateral-order appeal seeking review of the district court's transfer order in accordance with this Court's precedents, but the Court dismissed that appeal for lack of jurisdiction with the mandate set to issue on February 10. App.339.[1] Petitioners then promptly filed a mandamus petition and moved in the district court for a stay pending this Court's decision on the petition. *See* Dkt. 2; Exhibit A (district court stay motion). Petitioners requested a stay decision from the district court by February 6 given the impending issuance of this Court's mandate, but the district court has not yet ruled on the stay motion.[2]

---

[1] To facilitate the Court's review, and in the absence of a record on appeal, the App. citations in this motion refer to the Appendix to Petitioners' Petition for Writ of Mandamus (Dkt. 3).

[2] In connection with the stay motion in the district court, counsel for the parties conferred and Respondent indicated that it opposes a stay and filed an opposition. Petitioners later notified Respondent that they intended to file a stay motion in this Court and asked Respondent whether it would oppose that motion as well. Respondent confirmed that it remains opposed. In addition, pursuant to Fifth Circuit Rule 27.3, Petitioners advised both the Fifth Circuit Clerk's Office and

Accordingly, to avoid irreparable injury, Petitioners now move this Court for an immediate stay. Petitioners respectfully request that the Court enter a stay before its mandate from the prior appeal issues on February 10.

All four factors this Court considers in deciding whether to grant a stay—Petitioners' likelihood of success on appeal, Petitioners' injury in the absence of a stay, the lack of similar injury to Respondents if a stay is granted, and the public interest—favor a stay.

The transfer order that is the subject of the mandamus petition contravened binding Supreme Court precedent in considering Texas's public policy of hostility toward forum-selection clauses in answering the federal question of enforceability of the clauses under 28 U.S.C. § 1404(a).

Petitioners will suffer substantial prejudice absent a stay, given that resources spent litigating in a forum other than the one Respondent agreed to cannot be recovered. This Court facilitates immediate mandamus review of transfer denials precisely because the harm from an erroneous denial cannot be remedied after the fact: If a party is forced to litigate in the wrong venue, a court cannot unring that bell. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008) (en banc) (explaining that "an appeal from an adverse final judgment" is not "an adequate remedy" for an erroneous transfer order because "the harm—inconvenience to

Respondent of their intent to file this emergency motion by telephone call.

2

witnesses, parties and other—will have been done by the time the case is tried and appealed, and the prejudice suffered cannot be put back in the bottle" (citation omitted)).  Moreover, this case presents unique circumstances that fairly compel a stay:  First, unlike a garden-variety dispute over transfer, it is *uncontested* that Respondent agreed to litigate this dispute in California.  Second, if the district court accedes to Respondent's repeated demands to improperly remand this case to Texas state court, Petitioners will likely lose the opportunity for *any* higher-court review of the challenged transfer denial.

By contrast, Respondent would suffer no prejudice from a temporary stay: The mandamus action is proceeding in an expeditious manner, Respondent has not sought any preliminary injunctive relief, and proceedings before the district court are at a nascent stage.

Finally, a stay is in the public interest because it would conserve judicial resources and adhere to this Court's admonishment that the resolution of transfer motions takes "top priority in the handling of [a] case."  *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003).

Petitioners recognize that "[m]andamus petitions request an extraordinary remedy that is only appropriate in exceptional circumstances." *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1416 (5th Cir. 1995).  But this case does present exceptional circumstances, warranting both mandamus relief and an immediate stay.

Notwithstanding its admission that the parties have diverse citizenship and that there is more than $5 million in controversy in this action, Respondent has moved to remand the case to state court, and has repeatedly urged the district court to remand "immediately"—even before the mandate issues from the prior appeal. *See* Exhibit B (Respondent's "Notice of Supplemental Authority" requesting that the district court remand "immediately"). A remand to state court would effectively destroy Petitioners' opportunity to obtain higher-court review of the transfer denial, as a Texas state appellate court could not review the district court's erroneous transfer decision. Absent a stay, the district court could improperly remand the case as soon as this Court's mandate issues on February 10. This Court should enter an immediate stay to avoid that perverse result. To the extent the Court is unable to issue a full stay on this abbreviated timeline, Petitioners request a temporary administrative stay of further district court proceedings pending the Court's consideration of this motion.[3]

## I.     BACKGROUND

Respondent sued Petitioners in Texas state court alleging that Petitioners discriminate against certain content on YouTube and Google Ads in violation of Texas Civil Practice and Remedies Code Chapter 143A. App.33-37. Respondent

---

[3] Pursuant to Fifth Circuit Rule 27.3, Petitioners certify that the facts supporting emergency consideration of this motion are true and complete.

did not seek any preliminary injunctive relief. Given that Respondent's lawsuit is subject to federal diversity jurisdiction, Petitioners removed this action to the federal District Court for the Western District of Texas. App.24-28. Petitioners then moved to transfer the action to the Northern District of California, as Respondent agreed to multiple valid forum-selection clauses expressly designating California as the exclusive venue for litigation concerning Respondent's use of YouTube and Google Ads. App.89-113. In parallel, Respondent moved to remand the case to Texas state court. The district court heard argument on both motions at a November 6, 2025 hearing, during which it requested additional briefing on the motion to remand. App.211-12. On November 13, 2025, the district court exercised its discretion to first decide the transfer motion and denied Petitioners' motion to transfer. App.15; App.16 n.2.

On December 1, 2025, Petitioners timely appealed the denial of the motion to transfer as a collateral order. App.11-13. On January 20, 2026, this Court granted Respondent's motion to dismiss the appeal for lack of appellate jurisdiction. App.339. In a footnote to that dismissal, the Court explained that it "need not address the mandamus issue" because "the document before [the] court states only 'Notice of Appeal'"—notwithstanding that Petitioners had already filed their opening brief on appeal requesting mandamus relief in the alternative. App.339 n.1; *see also* App.275-337; *In re Delta Servs. Indus., Etc.*, 782 F.2d 1267, 1272 (5th Cir.

1986) (explaining that parties may seek mandamus relief in the alternative by either "appl[ying] for a writ of mandamus under Fed. R. App. P. 21" *or* "request[ing] that [the Court] treat their appeal as a petition for a writ").

Two days later, on January 22, Petitioners filed a separate mandamus petition seeking review of the transfer denial. Dkt. 2. The following day, on January 23, Petitioners moved the district court for a stay pending resolution of the mandamus petition. *See* Ex. A. In that motion, Petitioners requested that the district court issue a decision by February 6, given that this Court's mandate in Petitioners' collateral-order appeal is set to issue on February 10. Despite receiving Respondent's opposition brief on February 4 and Petitioners' reply brief on February 5, the district court has not yet ruled on the stay motion.

On February 6, this Court called for a response to the mandamus petition by February 13, signaling that the petition is worthy of serious consideration. Dkt. 10; *see* Fed. R. App. P. 21(b)(1) (explaining that an appellate court has two options for handling a mandamus petition: it "may deny the petition without an answer," or "it must order the respondent, if any, to answer within a fixed time"); Practitioners' Guide to the United States Court of Appeals for the Fifth Circuit at 14 (May 2025) ("Fifth Circuit Practitioners' Guide") ("If the court thinks the writ should not be granted, it normally denies the petition without calling for an answer. Otherwise, it issues an order fixing a time for filing an answer.").

## II.   ARGUMENT

### A.   Legal Standard

This Court's "authority to stay a district court's order buys [it] time to conduct careful, considered appellate review." *Valentine v. Collier*, 978 F.3d 154, 160 (5th Cir. 2020).  The Court considers four factors in determining whether to issue a stay: "(1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest." *United States v. McKenzie*, 697 F.2d 1225, 1226 (5th Cir. 1983).  The first two factors "are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009).[4]

### B.   Petitioners Satisfy the Four-Factor Test for Issuance of a Stay.

#### 1.   Petitioners Have a Substantial Likelihood of Success on the Merits.

In evaluating the likelihood of success on the merits, this Court "look[s] to the standards provided by the substantive law." *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990).  As outlined in the mandamus petition, Dkt. 2, and incorporated herein, Petitioners have a substantial likelihood of success on the merits for three

---

[4] This Court also employs an alternative test under which "the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A June 1981) (per curiam).  A stay is warranted under that alternative standard as well.

independent reasons.

*First*, the district court erred by considering Texas public policy at all in evaluating whether the forum-selection clauses were enforceable. It relied on an exception originating in *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1 (1972) ("*The Bremen*") concerning when enforcement of a forum-selection clause "would contravene a strong public policy of the forum state." *See* App.18 (quoting *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997), which cites *The Bremen*, 407 U.S. at 12-13, 15, 18). But the Supreme Court has made clear that the "public policy of the forum state" language in *The Bremen* refers only to federal public policy or that of a foreign country, not that of an individual State. *Great Lakes Ins. SE v. Raiders Retreat Realty Co.*, 601 U.S. 65, 78 (2024). Indeed, the respondent's argument in *Great Lakes* was effectively the same as the district court's justification for denying transfer: It contended that the strong federal presumption in favor of enforcing choice-of-law clauses should be overcome when enforcing a choice-of-law provision "would contravene the fundamental public policy" of a State. *Id.* at 77. But the Supreme Court squarely rejected that argument, explaining that it has not "looked to state law in the analogous forum-selection context," and that state public policy is irrelevant to the *Bremen* exception. *Id.* at 77-78. Therefore, the district court was required to reject Respondent's attempt to rely on state public policy under *The Bremen*.

8

In its opposition to Petitioners' stay motion below, Respondent accused Petitioners of engaging in impermissible "sandbagging" by not citing *Great Lakes* earlier in this litigation. Exhibit C ("Plaintiff's Response to Defendants' Motion to Stay") at 4. That accusation is entirely unfounded. Defendants have consistently argued that consideration of state law and public policy is impermissible because federal law governs the enforceability analysis. *See, e.g.*, App.173 ("Since federal law governs the transfer analysis under § 1404(a) in diversity cases, state laws purporting to invalidate forum-selection clauses are irrelevant."); App.175 ("[T]he Texas state law provisions Plaintiff relies on cannot be used to preclude this Court from considering and enforcing the forum-selection clause."); App.189 at 4:08-5:23 (arguing at hearing that state public policy cannot be "smuggled in in the fourth factor under the Bremen analysis"); App.192 at 7:01-07 ("[I]f you were to consider the Texas law . . . our frontline argument[] is that it's an impermissible consideration under 1404(a) and the Bremen fourth factor."). And it is well-established in this Circuit and others that parties are permitted to cite new authority in support of an argument they made below. As this Court put it, "[a] new precedent is not a new argument; it is new support for an existing argument." *See Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022) (also citing cases from the First, Seventh and D.C. Circuits).

*Second*, even if the district court was allowed to consider Texas's public

policy in the enforceability analysis, it contravenes Supreme Court precedent to allow state public policy *against forum-selection clauses* to control the federal enforceability question. *See The Bremen*, 407 U.S. at 9-15; *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30, 31 n.10 (1988). In *Stewart*, the Supreme Court held that a district court erred by disregarding a forum-selection clause based on a state law declaring such clauses to be void. *Id.* at 28-32. In denying Petitioners' motion to transfer, the district court asserted that it was merely considering state law as part of the federal enforceability analysis. App.21-22. But that assertion runs afoul of *Stewart*, as it "makes the applicability of [the] federal" presumption "depend on the content of state law." 487 U.S. at 31 n.10.

*Third*, even assuming that the district court was permitted to consider Texas's anti-forum selection clause public policy, it was required to weigh that policy against the strong federal public policy in favor of forum-selection clauses. And under this Court's precedent, federal public policy would have easily won out. For instance, in *Matthews v. Tidewater, Inc.*, 108 F.4th 361 (5th Cir. 2024), this Court evaluated both Louisiana's public policy against enforcement of forum-selection clauses in employment contracts and the federal public policy in favor of enforcement and determined that the federal interest must prevail, *id.* at 369-70. Similarly, in *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898 (5th Cir. 2005), this Court "consider[ed] both United States and Louisiana public policy" and concluded that

10

"the strong federal policy in favor of . . . arbitration agreements" (a type of forum-selection clause) outweighed Louisiana's strong public policy against such agreements, *id.* at 905-06.

At bottom, the district court committed clear legal error thrice over. And absent these legal errors, the forum-selection clauses that Respondent agreed to are plainly enforceable. Petitioners are thus likely to succeed on the merits of their mandamus petition.

**2.    Petitioners Will Suffer Irreparable Injury Absent a Stay.**

For two reasons, Petitioners will be irreparably harmed if district court proceedings continue notwithstanding the concurrent mandamus petition. First, absent a stay, Petitioners will incur the irreparable injury of being forced to litigate in a forum other than the one that Respondent contractually agreed to through binding forum-selection clauses. *See In re Volkswagen*, 545 F.3d at 319. Second, the unique posture of this case amplifies the irreparability of Petitioners' injury: If the district court were to incorrectly grant Respondent's remand motion while the mandamus petition is pending, Petitioners would almost certainly lose *any* ability to challenge the underlying transfer order.

1.    The importance of ensuring litigants are in the correct venue before litigation resources are expended is precisely why this Court has described a district court's practice of holding transfer orders "for a short period in the event a party

wishes to challenge the transfer" as "especially deserving of commendation." *In re Clarke*, 94 F.4th 502, 507 n.1 (5th Cir. 2024). The prejudice to Petitioners of litigating in the wrong venue "cannot be put back in the bottle," even if this Court ultimately grants Petitioners' mandamus petition. *In re Volkswagen*, 545 F.3d at 319. Indeed, in the proceedings below, Respondent *itself* requested that in the event the district court granted the motion to transfer, the district court "stay the transfer decision to afford the Plaintiff an adequate opportunity to pursue appellate review" in this Court. App.168. And in a previous case involving Respondent, this Court *sua sponte* stayed further district court proceedings pending the appeal of an adverse transfer order. Order Staying Case at 1, 3, *Defense Distributed v. Bruck*, No. 21-50327 (5th Cir. June 23, 2021), Dkt. No. 46-1.[5]

The harm of denying a stay is amplified here because it would deprive Petitioners of the benefits of the forum-selection clauses that Respondent concedes are mandatory and applicable to this dispute. *See* App.17-18. The Supreme Court has explained "that contractually selected forums often . . . become part of [the] parties' 'settled expectations,'" upon which they are entitled to rely. *Barnett v. DynCorp Int'l, LLC*, 831 F.3d 296, 300 (5th Cir. 2016) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 66 & n.8 (2013)). Moving

---

[5] While the aforementioned cases involved orders *granting* motions to transfer, the underlying rationale—avoiding the irreparable harm of being forced to litigate in the wrong court—applies equally here.

forward with proceedings in the district court while a concurrent mandamus petition challenges the suit's very presence in that forum will not only force Petitioners to incur unrecoverable costs from litigating in the incorrect venue, but also upset Petitioners' legitimate reliance interests based on the forum-selection clauses.

2.     This case also presents unusual circumstances that render the threat of irreparable injury to Petitioners absent a stay particularly acute.  As mentioned above, Respondent filed a motion to remand to Texas state court which remains pending before the district court.  That motion is meritless because this case clearly belongs in federal court.  Based on Respondent's explicit allegations, the requirements for federal diversity jurisdiction under 28 U.S.C. § 1332—namely, diversity of citizenship and an amount in controversy in excess of $75,000—are indisputably satisfied.  Respondent expressly alleged that the "amount in controversy exceeds $5 million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs." App. 38.  And it further alleged that it is a citizen of Texas and all three Petitioners are citizens of Delaware and California.  App.39; App.41.

Nonetheless, in a last-ditch effort to destroy federal jurisdiction, Respondent attempted to stipulate at the remand motion hearing that it would not seek more than $74,999 in monetary recovery.  App.206.  That gambit fails because black letter law precludes post-removal amount-in-controversy stipulations from undoing facially

proper diversity jurisdiction. *See Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) (citing *St. Paul Mercury Indem. Co v. Red Cab. Co.*, 303 U.S. 283, 292 (1938)). In addition, Respondent's stipulation as to monetary relief is meaningless because Respondent seeks only injunctive and declaratory relief, and it *did not* agree to limit the value of that relief to $74,999.

Despite all the gaping holes in its case against federal jurisdiction, Respondent has continued to insist that the district court is required to remand to state court. *See* Ex. B. And if the district court does so before this Court has adjudicated Petitioners' mandamus petition, then Petitioners will likely lose *any* opportunity to exercise their recognized right to higher-court review of the district court's transfer decision. That is because, as a general matter, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d). Additionally, if the district court issues a decision on the remand motion before this Court determines whether the transfer decision was correct, Petitioners will lose their right to have "the court who would ultimately try the case," upon conclusive determination of the correct venue, "rule on the remand motion." *Oldham v. Nationwide Ins. Co. of Am.*, No. 3:14-CV-00575, 2014 WL 3855238, at *4 (N.D. Tex. Aug. 5, 2014); *see also Andrade v. Chojnacki*, 934 F. Supp. 817, 825 (S.D. Tex. 1996) (Substantive motions "should be adjudicated by the court that has

responsibility for ultimately deciding the case," not by a "transferor court." (citation omitted)).

### 3. Respondent Will Suffer No Prejudice From a Stay.

Respondent, by contrast, would not be prejudiced by a temporary stay. Petitioners have moved expeditiously, filing their mandamus petition within two days of this Court's order clarifying that appeal is not an available means to challenge the transfer order and implicitly declining to treat Petitioners' already filed opening brief on appeal as a mandamus petition. And the timeframe for resolving a mandamus petition is far more expedited than for an ordinary appeal. *See* Fifth Circuit Practitioners' Guide at 14; *cf. Ex parte Republic of Peru*, 318 U.S. 578, 583 (1943) (a writ of mandamus "afford[s] an expeditious and effective means of confining the inferior court to a lawful exercise of its prescribed jurisdiction, or of compelling it to exercise its authority when it is its duty to do so"). This Court has already directed Respondent to respond to the mandamus petition by no later than this Friday, February 13. Dkt. 10.

Moreover, the district court proceedings are at an early stage: "The court has not yet rendered a scheduling order or set a trial date," and the parties have yet to exchange any discovery. *Bell Semiconductor, LLC v. NXP Semiconductors, N.V.*, No. 1:20-CV-611-LY, 2022 WL 1447948, at *2 (W.D. Tex. Feb. 7, 2022); *see Norman IP Holdings, LLC v. TP-Link Techs., Co.*, No. 6:13-CV-384-JDL, 2014 WL

5035718, at *3 (E.D. Tex. Oct. 8, 2014) ("[T]he stage of litigation weighs in favor of a stay if there remains a significant amount of work ahead for the parties and the court."). And Respondent has not sought a temporary restraining order or preliminary injunctive relief in this action. *See E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021) (finding no prejudice because the plaintiffs had "not requested emergency relief, and the district court never entered any preliminary relief, despite plaintiffs' request for a preliminary injunction").

### 4. A Stay Is In the Public Interest.

Finally, a temporary stay is in the public interest. For one, a stay will conserve judicial resources by minimizing any potential for duplicative proceedings in the transferee and transferor forums. *See McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30 (3d Cir. 1970) (per curiam) ("Judicial economy . . . requires that the court which ultimately decides the merits of the action should also decide the various questions which arise during the pendency of the suit instead of considering it in two courts."); *Sparling v. Doyle*, No. EP-13-CV-00323-DCG, 2014 WL 12489985, at *4 (W.D. Tex. Mar. 3, 2014) (A district court "should evade 'needlessly expending its energies familiarizing itself with the intricacies of a case that the transferee judge may have to duplicate.'" (citation omitted)). Because this Court may—and Petitioners respectfully submit *should*—order the district court to transfer the case, there is no reason for the district court to spend its limited judicial resources on

further proceedings in the interim, and in doing so, potentially deprive the Northern District of California of the opportunity to resolve pending motions or discovery disputes.

A temporary stay is also consistent with this Court's instruction that a timely motion to transfer venue takes "top priority in the handling of [a] case." *In re Horseshoe Ent.*, 337 F.3d at 433. That instruction makes good sense, because it ensures that "the whole action" is transferred "to the more convenient court" and that subsequent motions on both procedure and the merits are evaluated by that court. *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964); *see In re Netflix, Inc.*, No. 2021-190, 2021 WL 4944826, at *1 (Fed. Cir. Oct. 25, 2021) ("Fifth Circuit law entitle[s] parties to have their venue motions prioritized over substantive proceedings in district court."). A stay pending review of Petitioners' mandamus petition would ensure that the correct court handles the proceedings to come, serving the public interest in the efficient administration of justice.

## CONCLUSION

For the foregoing reasons, the Court should grant an emergency stay of further district court proceedings pending resolution of the mandamus petition. If the Court is unable to issue a full stay by February 10, Petitioners respectfully request that the Court issue a temporary administrative stay pending its resolution of this motion.

Dated:   February 9, 2026

Respectfully submitted,

*/s/ Jonathan Patchen*
Jonathan Patchen
Michael A. Rome
Anika Holland
Madeleine R. Ahlers
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2000
jpatchen@cooley.com

Connie L. Wang
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

Steven J. Wingard
Robyn Hargrove
Eli Barrish
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
(512) 495-6300

*Counsel for Petitioners YouTube LLC,*
*Google LLC, and Alphabet, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Jonathan Patchen*
Jonathan Patchen

# **CERTIFICATE OF COMPLIANCE**

I certify that:

1.      This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) because it consists of 4,143 words, excluding parts exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced, serif typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Jonathan Patchen*
Jonathan Patchen