# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

DEFENSE DISTRIBUTED,

Plaintiff,

v.

YOUTUBE LLC, GOOGLE LLC, and
ALPHABET, INC.

Defendants.

No.1:25-cv-01095-ADA-ML

## DEFENDANTS' OPPOSED MOTION TO STAY PENDING RESOLUTION OF DEFENDANTS' MANDAMUS OF ORDER DENYING MOTION TO TRANSFER

## INTRODUCTION

Defendants YouTube LLC, Google LLC, and Alphabet Inc. (collectively, "Defendants") respectfully move to stay this case pending the Fifth Circuit's resolution of Defendants' Petition for Mandamus of the Order Denying Defendants' Motion to Transfer (Dkt. 58-1). Because the mandate on the Fifth Circuit's procedural dismissal of Defendants' appeal is scheduled to issue on February 10, Defendants respectfully request either (1) a decision on this stay motion by **February 6, 2026** or (2) if the Court prefers briefing on a regular timetable, the immediate entry of an administrative stay up to and for a short period following decision of this stay motion.

All four stay factors—Defendants' likelihood of success on appeal, injury suffered absent stay, the lack of similar injury to Plaintiff, and the public interest—favor a temporary stay. The transfer order that is the subject of the mandamus petition contravened binding Supreme Court precedent in considering Texas's public policy of hostility toward forum-selection clauses in answering the federal question of enforceability of the clauses under 28 U.S.C. § 1404(a). And Defendants will suffer substantial prejudice absent a stay, given that resources spent litigating in a forum other than the one Plaintiff agreed to cannot be recovered. Worse, if the Court assents to Plaintiff's repeated demands to improperly remand this case to Texas state court, Defendants will likely lose the opportunity for *any* higher-court review of the challenged transfer denial. By contrast, Plaintiff would suffer no prejudice from a temporary stay, especially considering that pleadings remain at a nascent stage and Plaintiff did not seek any preliminary injunctive relief. And a stay is in the public interest, because it would conserve judicial resources and adhere to the Fifth

Circuit's admonishment that the resolution of transfer motions takes "top priority in the handling of [a] case." *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003).

Defendants recognize that "[m]andamus petitions request an extraordinary remedy that is only appropriate in exceptional circumstances." *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1416 (5th Cir. 1995). But the Fifth Circuit allows for mandamus review of transfer denials precisely because the harm from an erroneous denial cannot be remedied after the fact: if a party is forced to litigate in the wrong venue, a court cannot unring that bell. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008) (en banc). And this case presents a unique set of facts: unlike a garden-variety dispute over a venue transfer, it is *uncontested* that Plaintiff agreed to litigate this dispute in California. This Court denied transfer based solely on Texas's alleged "strong public policy" against transfer. As Defendants explain in their mandamus petition, Supreme Court and Fifth Circuit precedent dictate that state public policy—particularly state public policy against forum-selection clauses—cannot defeat the federal presumption of enforceability. The denial of Defendants' transfer motion therefore warrants Fifth Circuit review before proceedings continue and substantial, irreparable prejudice ensues.

## I.    BACKGROUND

Plaintiff filed this lawsuit against Defendants alleging that they discriminate against certain content on YouTube and Google Ads in violation of Texas Civil Practice and Remedies Code Chapter 143A. Petition ¶ 8. Plaintiff did not seek any preliminary injunctive relief. On July 14, 2025, Defendants removed this action to this Court. Dkt. 1. Defendants then moved to transfer the action to the Northern District of California, as

Plaintiff agreed to multiple valid forum-selection clauses expressly designating California as the exclusive venue for litigation concerning Plaintiff's use of YouTube and Google Ads. Dkt. 26 at 6–7. In parallel, Plaintiff moved to remand the case. Dkt. 25. This Court heard argument on both motions at a November 6, 2025 hearing, during which it requested additional briefing on the motion to remand. Nov. 6, 2025 Hr'g Tr. at 26:23–27:11. On November 13, 2025, this Court exercised its discretion to first decide the transfer motion and denied Defendants' motion to transfer. Dkt. 48 at n.2.

On December 1, 2025, Defendants timely appealed the denial of the motion to transfer as a collateral order. Dkt. 51. On January 20, 2026, in a one-sentence, unpublished order, the Fifth Circuit granted Plaintiff's motion to dismiss the appeal for lack of appellate jurisdiction. Dkt. 56-1. In a footnote, the court asserted that it "need not address the mandamus issue" because "the document before [the] court states only 'Notice of Appeal'"—notwithstanding that Defendants had already filed their opening brief requesting mandamus relief in the alternative. *Id.* Two days later, on January 22, Defendants filed a separate mandamus petition seeking review of the transfer denial.

## II.    ARGUMENT

### A.    Legal Standard

This Court has the inherent power to stay proceedings. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997). Courts weigh four factors in considering whether to grant a stay: "(1) whether the movant has made a showing of likelihood of success on the merits," "(2) whether the movant has made a showing of irreparable injury if the stay is not granted," "(3) whether the granting of the stay would substantially harm the other parties," and "(4)

whether the granting of the stay would serve the public interest." *United States v. McKenzie*, 697 F.2d 1225, 1226 (5th Cir. 1983).[1]

### 1. Defendants Have a Substantial Likelihood of Success on Appeal.

In evaluating the likelihood of success on the merits, Fifth Circuit courts "look to the standards provided by the substantive law." *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990). As outlined in the mandamus petition, Dkt. 58-1,[2] and incorporated herein, Defendants respectfully submit that they have a substantial likelihood of success on appeal for three independent reasons.

*First*, this court erred by considering Texas public policy at all in evaluating whether the forum-selection clauses were enforceable. This Court relied on an exception originating in *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1 (1972) ("*The Bremen*") concerning when enforcement of a forum-selection clause "would contravene a strong public policy of the forum state." *See* Dkt. 48 at 4 (quoting *Haynsworth v. The Corp.*, 121 F.3d 956, 962–63 (5th Cir. 1997), which cites *The Bremen*, 407 U.S. at 12–13, 15, 18). But the Supreme Court has made clear that the "public policy of the forum state" language in *The Bremen* refers only to federal public policy or that of a foreign country, not that of an individual State. *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 78

---

[1] The Fifth Circuit also employs an alternative test under which "the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Ruiz v. Estelle*, 650 F.2d 555, 565-66 (5th Cir. Unit A June 1981) (per curiam). A stay is warranted under that alternative standard as well.

[2] For the Court's convenience, a copy of the mandamus petition is attached hereto as **Exhibit A.**

(2024). Indeed, the respondent's argument in *Great Lakes* was effectively the same as this Court's justification for denying transfer: it contended that the strong federal presumption in favor of enforcing choice-of-law clauses should be overcome when enforcing a choice-of-law provision "would contravene the fundamental public policy" of a State. *Id*. at 77. But the Supreme Court squarely rejected that argument, explaining that it has not "looked to state law in the analogous forum-selection context," and that state public policy is irrelevant to the *Bremen* exception. *Id*. at 77–78. Therefore, this Court was required to reject Plaintiff's attempt to rely on state public policy under *The Bremen*.

*Second*, even if this court was allowed to consider Texas's public policy in the enforceability analysis, it contravenes Supreme Court precedent to allow state public policy against *forum-selection clauses* to control the federal enforceability question. *See The Bremen*, 407 U.S. at 9–15; *Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 30, 31 n.10 (1988). In *Stewart*, the Supreme Court held that a district court erred by disregarding a forum-selection clause based on a state law declaring such clauses to be void. *Id*. at 28–32. In denying Defendants' motion to transfer, this Court asserted that it was merely considering state law as part of the federal enforceability analysis, but that "makes the applicability of [the] federal" presumption "depend on the content of state law," in violation of *Stewart*. *Id*. at 31 n.10.

*Third*, even assuming that this Court was permitted to consider Texas's anti-forum selection clause public policy, it was required to weigh that public policy against the strong federal public policy in favor of forum-selection clauses. And under Fifth Circuit precedent, federal public policy would have easily prevailed. For instance, in *Matthews v.*

*Tidewater, Inc.*, 108 F.4th 361 (5th Cir. 2024), the Fifth Circuit considered both Louisiana's public policy against enforcement of forum-selection clauses in employment contracts and the federal public policy in favor of enforcement and determined that the federal interest must prevail, *id.* at 369–70; *see also Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 906 (5th Cir. 2005).

### 2.    Denying a Stay Causes Irreparable Injury to Defendants.

Defendants would be irreparably harmed if proceedings continue notwithstanding the concurrent mandamus petition. *First*, absent a temporary stay, Defendants will incur the irreparable injury of being forced to litigate in a forum other than the one that Plaintiff contractually agreed to through binding forum-selection clauses. *Cf. In re Volkswagen*, 545 F.3d at 319 (explaining that appeal from final judgment "provide[s] no remedy" for an "erroneous failure to transfer" because "the harm—inconvenience to witnesses, parties and others—will already have been done"). *Second*, the unique posture of this case amplifies the irreparability of Defendants' injury: if this court were to incorrectly grant Plaintiff's remand motion while the mandamus petition is pending, Defendants would almost certainly lose *any* ability to challenge the underlying transfer order.

1.    The importance of ensuring the litigants are in the correct venue before litigation resources are expended is why the Fifth Circuit has described a district court's practice of holding "order[s] to transfer venue for a short period in the event a party wishes to challenge the transfer" as "especially deserving of commendation." *In re Clarke*, 94 F.4th 502, 507 n.1 (5th Cir. 2024). The prejudice to Defendants of litigating in the wrong venue "cannot be put back in the bottle," even if the Fifth Circuit ultimately grants

Defendants' mandamus petition. *In re Volkswagen*, 545 F.3d at 319. Indeed, Plaintiff itself requested that, in the event this Court granted the motion to transfer, the Court "stay [its] transfer decision to afford the Plaintiff an adequate opportunity to pursue appellate review" in the Fifth Circuit. Plf's Opp. to Transfer (Dkt. 35) at 17. And in a previous case involving Plaintiff, the Fifth Circuit *sua sponte* stayed further district court proceedings pending Plaintiff's appeal of an adverse transfer order. Order Staying Case, *Defense Distributed v. Bruck*, No. 21-50327, slip op. at 1, 3 (5th Cir. June 23, 2021).

The harm of denying a stay in this case is amplified because it would deprive Defendants of the benefits of the forum-selection clauses that Plaintiff concedes are mandatory and applicable to this dispute. The Supreme Court has explained "that contractually selected forums often . . . become part of the parties' 'settled expectations,'" upon which they are entitled to rely. *Barnett v. DynCorp Int'l, LLC*, 831 F.3d 296, 300 (5th Cir. 2016) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 66 & n.8 (2013)). Moving forward with proceedings in this court while a concurrent mandamus petition challenges the suit's very presence in this forum will not only force Defendants to incur unrecoverable costs from litigating in the incorrect venue but also upset Defendants' legitimate reliance interests based on the forum-selection clauses.

2.      The threat of irreparable injury to Defendants absent a stay is particularly acute here because, if this Court grants Plaintiffs' pending Motion to Remand (Dkt. 25) before the Fifth Circuit has adjudicated Defendants' mandamus petition, then Defendants will likely lose *any* opportunity for review of this Court's transfer decision. That is

because, as a general matter, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise."  28 U.S.C. § 1447(d).  A decision on the remand order before the Fifth Circuit considers Defendants' mandamus petition would also deprive Defendants of the right to have "the court who would ultimately try the case" upon conclusive determination of the correct venue "to rule on the remand motion."  *Oldham v. Nationwide Ins. Co. of Am.*, No. 3:14-CV-00575, 2014 WL 3855238, at *4 (N.D. Tex. Aug. 5, 2014); *Andrade v. Chojnacki*, 934 F. Supp. 817, 825 (S.D. Tex. 1996) (Substantive motions "should be adjudicated by the court that has responsibility for ultimately deciding the case," not by a "transferor court.").  This Court itself exercised its discretion to decide Defendants' motion to transfer before Plaintiff's motion to remand— granting a stay pending resolution of Defendants' mandamus petition regarding the transfer order would be consistent with this Court's prior sequencing decision.

### 3.    Plaintiff Will Suffer No Prejudice From a Stay.

Plaintiff, by contrast, would not be prejudiced by a temporary stay.  Defendants have already moved quickly, filing their mandamus petition within two days of the Fifth Circuit's order clarifying that appeal is not a means available to Defendants to challenge the transfer order here, and the timeframe for resolving a mandamus petition is far more expedited than for an ordinary appeal.  *See, e.g.*, Practitioner's Guide to the U.S. Court of Appeals for the Fifth Circuit (May 2025).

Moreover, the current proceedings are at an early stage: "[t]he court has not yet rendered a scheduling order or set a trial date," and the parties have yet to exchange any discovery.  *Bell Semiconductor, LLC v. NXP Semiconductors, N.V.*, No. 1:20-CV-611-LY,

2022 WL 1447948, at *2 (W.D. Tex. Feb. 7, 2022); *cf. Norman IP Holdings, LLC v. TP-Link Techs., Co*., No. 6:13-CV-384-JDL, 2014 WL 5035718, at *3 (E.D. Tex. Oct. 8, 2014) ("the stage of litigation weighs in favor of a stay if there remains a significant amount of work ahead for the parties and the court"). And Plaintiffs have not sought a temporary restraining order or preliminary injunctive relief in this action. *Twitch LLC v. Bote, LLC*, No. WA-24-CV-00233-KC, 2024 WL 3898297, at *6 (W.D. Tex. Aug. 21, 2024) (finding prejudice factor "neutral" in part because plaintiff "did not seek preliminary injunctive relief").

### 4.   A Stay is in the Public Interest.

Finally, a temporary stay is in the public interest. To start, a stay will conserve judicial resources by minimizing any potential for duplicative proceedings in the transferee and transferor forums. *See McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30 (3d Cir. 1970) (per curiam) (judicial economy "requires that the court which ultimately decides the merits of the action should also decide the various questions which arise during the pendency of the suit"); *Sparling v. Doyle*, No. EP-13-CV-00323-DCG, 2014 WL 12489985, at *4 (W.D. Tex. Mar. 3, 2014) ("the Court should evade 'needlessly expending its energies familiarizing itself with the intricacies of a case that the transferee judge may have to duplicate if the cases are consolidated'" (citation omitted)). Because the Fifth Circuit may transfer the case, there is no reason for the Court to spend its limited judicial resources on further proceedings in the interim—and in doing so, potentially deprive the Northern District of California of the opportunity to resolve pending motions or discovery disputes.

A temporary stay is also consistent with the Fifth Circuit's instruction that a timely motion to transfer venue takes "top priority in the handling of [a] case." *In re Horseshoe Ent.*, 337 F.3d at 433.  That instruction makes good sense, because it ensures that "the whole action" is transferred "to the more convenient court" and that subsequent motions on both procedure and the merits are evaluated by that court. *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964); *cf. In re Netflix, Inc.*, No. 2021-190, 2021 WL 4944826, at *1 (Fed. Cir. Oct. 25, 2021) ("Fifth Circuit law entitle[s] parties to have their venue motions prioritized over substantive proceedings in district court.").

## CONCLUSION

For the foregoing reasons, the Court should stay proceedings pending the Fifth Circuit's resolution of Defendants' mandamus petition.  Given that the Fifth Circuit's mandate from Defendants' collateral-order appeal will issue on February 10, 2026, Defendants respectfully request the Court enter a stay by February 6.  If this motion is not granted by then, Defendants intend to seek a stay from the Fifth Circuit.

Dated: January 28, 2026

Respectfully submitted,

**SCOTT DOUGLASS & MCCONNICO LLP**

*/s/ Steven Wingard*
Steven J. Wingard
Texas Bar No. 00788694
Robyn Hargrove
Texas Bar No. 24031859
Eli Barrish
Texas Bar No. 24144433

303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 474-0731
swingard@scottdoug.com
rhargrove@scottdoug.com
ebarrish@scottdoug.com

**COOLEY LLP**
Jonathan Patchen (admitted *pro hac vice*)
Michael A. Rome (admitted *pro hac vice*)
Anika Holland (admitted *pro hac vice*)
Madeleine R. Ahlers (admitted *pro hac vice*)

3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
Facsimile: (415) 693-2222
jpatchen@cooley.com
mrome@cooley.com
anika.holland@cooley.com
mahlers@cooley.com

*Attorneys for Defendants YouTube LLC, Google LLC, and Alphabet, Inc.*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(G), Defendants advise the Court that in advance of filing this Motion, counsel for the parties met and conferred on January 26, 2026 in a good-faith attempt to resolve this motion by agreement. The discussions conclusively ended in an impasse as the parties disagree on whether the case should be stayed. Counsel for Plaintiff indicated that it opposes this motion.

*/s/ Steven Wingard*
Steven Wingard

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on January 28, 2026, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Steven Wingard*
Steven Wingard

# EXHIBIT B

In the United States District Court
for the Western District of Texas
Austin Division

| | | | |
|---|---|---|---|
| Defense Distributed, | | § | |
| | Plaintiff, | § | |
| | | § | |
| v. | | § | No. 1:25-cv-01095-ADA-ML |
| | | § | |
| YouTube LLC, | | § | |
| Google LLC, | | § | |
| Alphabet, Inc., | | § | |
| | Defendants. | § | |

**Plaintiff's Notice of Supplemental Authority in Support of
Plaintiff's Motion to Remand**

## Table of Contents

Table of Contents ................................................................................................................. 2

Argument ............................................................................................................................... 3

I.     The Fifth Circuit dismissed Defendants' appeal from the transfer decision. ................... 3

II.    The Court should decide the motion to remand immediately. ......................................... 3

Conclusion ............................................................................................................................. 4

Certificate of Service ........................................................................................................... 5

## Argument

### I.    The Fifth Circuit dismissed Defendants' appeal from the transfer decision.

Defendants claimed that their appeal from the Court's transfer decision halted this Court's consideration of Defense Distributed's pending motion to remand. But Defendants' appeal is no more. On January 20, 2026, the Fifth Circuit entered an order granting Plaintiff's motion to dismiss Defendants' appeal for lack of jurisdiction. Ex. A. The court held that Defendants' notice of appeal failed to invoke appellate jurisdiction and declined to treat it as a mandamus petition:

> PER CURIAM:
>
> IT IS ORDERED that Appellee's opposed motion to dismiss the appeal for lack of jurisdiction is GRANTED.[1]
>
> ---
> [1] Appellant claims that a motion for mandamus would be proper but the document before this court states only "Notice of Appeal," so we need not address the mandamus issue.

Ex. A.

### II.   The Court should decide the motion to remand immediately.

Today's Fifth Circuit decision confirms what Plaintiff had argued from the outset: Defendants' appeal was always jurisdictionally defective and incapable of triggering any *Griggs*-style divestiture of this Court's authority. *See* Doc. 53 at 5–6. Whatever temporary pause Defendants sought to impose by filing a notice of appeal has ended. There is no longer any appellate proceeding to respect, await, or accommodate. Because the Fifth Circuit has dismissed Defendants' appeal for lack of jurisdiction, this Court has clear authority to proceed.

**Conclusion**

Plaintiff respectfully requests that the Court rule on the pending motion to temand without further delay by granting it.

Respectfully submitted,

Chad Flores
Texas Bar No. 24059759
cf@chadflores.law
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 364-6640

Colleen McKnight
Texas Bar No. 24078976
colleen.mcknight@mcknightlaw.us
McKnight Law PLLC
801 Travis Street Suite 2101, PMB 698
Houston, TX 77002
(713) 487-5645

Counsel for Plaintiff

**Certificate of Service**

A true and correct copy of this submission was served on the day of its filing via the Court's CM/ECF system on all counsel registered therewith.

Chad Flores
Texas Bar No. 24059759
cf@chadflores.law
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 364-6640

# EXHIBIT C

In the United States District Court
for the Western District of Texas
Austin Division

| | | |
|---|---|---|
| Defense Distributed, | § | |
|         Plaintiff, | § | |
| | § | |
| v. | § | No. 1:25-cv-01095-ADA-ML |
| | § | |
| YouTube LLC, | § | |
| Google LLC, | § | |
| Alphabet, Inc., | § | |
|         Defendants. | § | |

**Plaintiff's Response to
Defendants' Motion to Stay Pending Resolution of
Defendants' Mandamus of Order Denying Transfer**

## Table of Contents

Argument ......................................................................................................... 3

I.    The requisite likelihood of success is missing. ................................................. 3

    A.    The challenged ruling is correct. ................................................. 3

    B.    Sandbagging belies a stay. .......................................................... 4

II.    The requisite irreparable harm is missing. ....................................................... 5

    A.    Remanding does not deprive the Fifth Circuit of jurisdiction. ............................. 5

    B.    The asserted interest is not cognizable. ........................................ 5

III.    Equities of this case alone oppose a stay. ........................................................ 6

    A.    A stay would prejudice Defense Distributed by delaying merits review. ................ 6

    B.    A stay would prolong the challenged conduct. ....................................... 7

    C.    A stay would reward delay and distort litigation leverage. ....................... 7

IV.    Equities stemming from *NetChoice* oppose a stay. ........................................... 7

V.    The public interest opposes a stay. ................................................................ 9

    A.    The public interest disfavors interlocutory paralysis. ............................ 9

    B.    The public interest favors timely enforcement of Chapter 143A. ...................... 9

Conclusion .................................................................................................... 10

Certificate of Service ...................................................................................... 11

## Argument

Stays pending appeal are extraordinary and stays pending mandamus efforts even more so. *See generally* 16A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 3954 (5th ed. West 2025). The standard is strenuous, requiring an analysis of the likelihood of success on the merits, irreparable harm, equities between the parties, and public interest. *See, e.g., id.*; *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981). It is not met here.

## I.    The requisite likelihood of success is missing.

A stay pending mandamus requires a "strong showing" of likely success at the Fifth Circuit. *E.g.*, *Louisiana v. Becerra*, 20 F.4th 260, 262 (5th Cir. 2021) ("We thus focus on that issue in assessing whether the Secretary has made a strong showing of likely success."). Defendants cannot make that showing, which is reason enough alone to deny the motion.

### A.    The challenged ruling is correct.

Defendants cannot make the requisite success-likelihood showing because they are wrong on the merits. This Court's decision is correct for the reasons given and the additional reasons Defense Distributed advanced. There is no reason to disturb it.

But even if Defendants could identify error—which they cannot—that would not suffice. The question is not whether this Court erred, or even whether a different court might have weighed the factors differently. Defendants must show a clear abuse of discretion amounting to a judicial usurpation of power. They sought appellate review precisely to avoid that demanding standard; the Fifth Circuit dismissed their appeal. Now confined to mandamus, Defendants must satisfy the standard they tried to escape. They cannot do so, especially when much of the petition's argument would require overruling settled Fifth Circuit law (*Weber*, *Haynsworth*, and the framework rightly applied in *Davis* and *Wise Guys*)—relief a mandamus panel has no authority to grant.

**B.      Sandbagging belies a stay.**

Defendants′ mandamus petition leads with an argument they sandbagged. Their lead authority in the Fifth Circuit is *Great Lakes Insurance SE v. Raiders Retreat Realty Co.*, 601 U.S. 65 (2024). But Defendants never cited *Great Lakes* to this Court. Not in their motion to transfer. Not in their reply. Not at the hearing. The decision was available throughout; it issued in February 2024, more than a year before this litigation began. Yet Defendants held it back, only to unveil it now in the Fifth Circuit as the linchpin of their mandamus theory.

*Great Lakes* most certainly does *not* help Defendants. As Defense Distributed will explain to the Fifth Circuit, it concerns maritime contracts that are gap-filled by federal law—not the normal contracts at issue here. But the relevant point now is procedural: likely success at the Fifth Circuit cannot be built on arguments a party never made to this Court when it mattered.

Sandbagging is incompatible with both the mandamus and stay Defendants now seek. The writ itself is rightly confined to cases of a district court's clear, indisputable error—not for arguments unveiled for the first time on extraordinary review at the circuit level. *See Wainwright v. Sykes*, 433 U.S. 72, 89 (1977) (rejecting habeas-by-"sandbagging"); *Lucio v. Lumpkin*, 987 F.3d 451, 474–76 (5th Cir.) (en banc) (plurality opinion) (same); *see also Quinn v. Sw. Wood Products, Inc.*, 597 F.2d 1018, 1025 (5th Cir. 1979) ("It is contrary to the spirit of our procedures to permit counsel to be sandbagged by such tactics or the trial court to be so put in error."). Likewise for a stay attendant to the writ. What sandbagging bars at mandamus, it bars at the stay stage as well.

The other factors strongly oppose a stay too. But where, as here, the likelihood of success is so lacking, it is dispositive. *See, e.g.*, *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021).

## II.     The requisite irreparable harm is missing.

### A.     Remanding does not deprive the Fifth Circuit of jurisdiction.

*Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022), establishes that the Fifth Circuit's mandamus jurisdiction survives even after a case has left the transferor court—and even after it has left the circuit altogether. There, the district court had already severed and transferred the case out of the Western District of Texas and into the District of New Jersey, beyond the Fifth Circuit's territorial jurisdiction. *Id.* at 421–27. Nevertheless, the Fifth Circuit held that it retained mandamus jurisdiction over the transfer order and granted relief, directing the Texas district court to seek retransfer from the transferee court. *Id.* By both opinion and judgment, *Bruck* makes clear that the physical departure of a case—even an out-of-circuit transfer—does not defeat the Fifth Circuit's authority to review a transfer decision via mandamus.

That rule forecloses Defendants' theory here. If the Fifth Circuit can grant mandamus after a case has already been transferred beyond its territorial jurisdiction, it necessarily follows that a remand to Texas state court does not impair its ability to adjudicate Defendants' mandamus petition. Denial of a stay would not moot or frustrate mandamus review; at most, it would place Defendants in the same posture as the petitioners in *Bruck*—seeking mandamus after the case has left the transferor court. Fifth Circuit precedent confirms that such relief remains fully available.

### B.     The asserted interest is not cognizable.

Even if remand had some effect on the timing or posture of mandamus review—which it does not—Defendants still fail to identify a cognizable irreparable harm. A stay pending appeal is "extraordinary relief" for which the movant bears a "heavy burden." *Plaquemines Par. v. Chevron USA, Inc.*, 84 F.4th 362, 373 (5th Cir. 2023). And "simply showing some possibility of irreparable

injury fails to satisfy" that burden; the movant must make a "strong" showing. *Id.* at 376 (quoting *Nken v. Holder*, 556 U.S. 418 (2009)).

Defendants' stay request also attempts an impermissible end run around the settled rules governing remand. Defendants know that they cannot appeal a remand decision. *See id.*; 28 U.S.C. § 1447(d). So they instead seek to freeze the case now by coupling a mandamus challenge to transfer with a request to halt all proceedings—including the remand ruling. That maneuver would effectively grant Defendants the very relief Congress has withheld: interlocutory appellate review and suspension of a remand decision. Mandamus is not a vehicle for backdooring appellate review of remand or for converting a non-appealable ruling into a stayed one.

## III.   Equities of this case alone oppose a stay.

The requested stay would skew the equities sharply. It would delay Defense Distributed's right to a merits determination, prolong the unlawful conduct at issue, and reward Defendants' strategy of delay by granting them the benefit of inaction. Delay is not neutral in this posture; it operates as a substantive advantage. Equity rightly disfavors stays where, as here, they function not as protection against genuine irreparable harm, but as tactical devices to freeze litigation and preserve the very status quo being challenged. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

### A.   A stay would prejudice Defense Distributed by delaying merits review.

First, a stay would prejudice Defense Distributed by postponing the merits adjudication it is entitled to pursue. Defense Distributed filed this action to obtain a judicial determination of its rights. Halting the case now would delay that determination indefinitely, even though Defendants have not shown a likelihood of success or any irreparable harm. Delay is not neutral. It denies the prevailing party the timely resolution that federal courts exist to provide.

### B.     A stay would prolong the challenged conduct.

Second, a stay would prolong the very conduct this suit challenges. Defense Distributed alleges ongoing, unlawful restrictions that continue to operate day by day. Suspending proceedings would leave those alleged violations in place while Defendants pursue extraordinary relief that is unlikely to succeed. Equity does not favor freezing the status quo when the status quo itself is the source of the alleged injury. *See Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) ("preserving the status quo 'is an important' equitable consideration in the stay decision").

### C.     A stay would reward delay and distort litigation leverage.

Third, a stay would improperly reallocate litigation leverage. Granting a stay does not merely pause the docket; it shifts power. It gives Defendants exactly what they seek—nothing happening—without requiring them to satisfy the demanding standards that govern extraordinary relief. That is not an incidental effect; it is the point of the request. Delay is a strategy, not a consequence.

Federal courts are properly wary of stays that function as tactical weapons rather than as necessary protections against genuine irreparable harm. If the ordinary burdens of litigation and the speculative prospect of extraordinary relief were enough to justify a stay, defendants could routinely slow-walk cases simply by filing mandamus petitions. Equity does not endorse that result.

## IV.     Equities stemming from *NetChoice* oppose a stay.

The equities weigh decisively against a stay for an additional, independent reason. Defendants are estopped from denying the propriety of the forum they themselves chose, and that same estoppel forecloses any claim to equitable interim relief. *See New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) ("a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory"); *Gabarick*

*v. Laurin Mar. (Am.) Inc.*, 753 F.3d 550, 553 (5th Cir. 2014) ("Judicial estoppel is an equitable doctrine that defies 'inflexible prerequisites or an exhaustive formula.'"); *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 490 (5th Cir. 2016) (preventing "assert[ion of] contradictory positions for tactical gain").

Estoppel applies here because Defendants through their trade association deliberately selected this Court as the forum for litigating the constitutionality of HB20. *See* First Amended Complaint, *NetChoice, LLC v. Paxton*, No. 1:21-cv-00840-RP, Doc. 76 at 5 (W.D. Tex. Feb. 6, 2025) ("Plaintiffs bring this challenge on behalf of websites operated by Plaintiffs' members when they curate and disseminate compilations of third-party speech posted on their services, including, e.g., (1) Facebook (Meta); (2) Instagram (Meta); (3) Nextdoor; (4) Pinterest; (5) X; and (6) YouTube (Google)."). That choice was strategic, not incidental. They invoked the Western District of Texas as the preferred forum for what they repeatedly described as the definitive constitutional challenge to Chapter 143A, *see, e.g.*, Plaintiffs' Brief Regarding Texas House Bill 20 (2021) Sections 2 and 7's Scope, *NetChoice, LLC v. Paxton*, No. 1:21-cv-00840-RP, Doc. 84 (W.D. Tex. Aug. 11, 2025), and they litigated that case here through judgment and appeal without once suggesting that this forum was improper or disfavored for HB20 litigation.

Equity does not allow Defendants to reverse course now. They chose this Court when it served their interests and cannot demand that proceedings halt because the forum has become inconvenient. The same principles that bar Defendants from mandamus relief also bar a stay. A party that has embraced a forum cannot later claim equitable entitlement to freeze proceedings by declaring that forum improper. Because Defendants accepted this forum when it advantaged them and repudiate it only now that it does not, the equities cut sharply against a stay.

## V.     The public interest opposes a stay.

### A.     The public interest disfavors interlocutory paralysis.

The public interest opposes a stay. Federal courts have a duty to ensure the orderly progression of cases and to respect the authority of district courts to manage and resolve the matters before them. The public interest is not served by interlocutory paralysis—especially where, as here, extraordinary relief is unlikely and delay would serve only private strategic ends.

### B.     The public interest favors timely enforcement of Chapter 143A.

More specifically, the public interest implicated in this case is not abstract. It is concrete and codified. This case concerns the enforcement and application of Texas's Chapter 143A law. The public has an interest in seeing duly enacted state law enforced sooner rather than later, and enforced in the forum that has already been selected, litigated in, and recognized as proper for resolving disputes under that statute. To the extent there is any doubt in the stay analysis, the Court should err on the side of the public interest that has been affirmatively expressed through legislation, not the private preferences of regulated parties seeking delay. Just as the public interest favors protecting individual liberties that "frustrate government officials," *BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Labor*, 17 F.4th 604, 619 (5th Cir. 2021), so too it favors protecting the individual liberties that frustrate the censorship of Google and YouTube.

In contrast, the Defendants' asserted interests deserve no great weight. For they are not public interests at all. They are private, litigation-management concerns—cost, burden, and forum preference. Those do not outweigh the public's interest in timely adjudication of state law and constitutional questions arising under it. Where the public interest favors action and the opposing interests are purely private, the balance necessarily cuts against a stay.

## Conclusion

The motion should be denied.

Respectfully submitted,

Chad Flores
Texas Bar No. 24059759
chad@chadflores.law
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 364-6640

Colleen McKnight
Texas Bar No. 24078976
colleen.mcknight@mcknightlaw.us
McKnight Law PLLC
801 Travis Street Suite 2101
PMB 698
Houston, TX 77002
(713) 487-5645

Counsel for Plaintiff

**Certificate of Service**

A true and correct copy of this submission was served on the day of its filing via the Court's CM/ECF system on all counsel registered therewith.

Chad Flores
Texas Bar No. 24059759
chad@chadflores.law
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 364-6640

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

DEFENSE DISTRIBUTED,

                      Plaintiff,

v.

YOUTUBE LLC, GOOGLE LLC, and
ALPHABET, INC.

                      Defendants.

Case No. 1:25-cv-1095-ADA-ML

## DEFENDANTS' REPLY IN SUPPORT OF
## MOTION FOR STAY PENDING RESOLUTION OF DEFENDANTS'
## MANDAMUS OF ORDER DENYING MOTION TO TRANSFER

## DECISION REQUESTED BY FEBRUARY 6, 2026

## ARGUMENT

Stays pending mandamus review "simply suspend judicial alteration of the status quo" and allow an appellate court to "responsibly fulfill [its] role in the judicial process." *Nken v. Holder*, 556 U.S. 418, 427, 429 (2009) (citation omitted). As of the date of this filing, the Fifth Circuit is still reviewing the merits of Defendants' mandamus petition. All four stay factors strongly favor a temporary stay—Plaintiff's opposition brief (Dkt. 62) does nothing to change that. Defendants respectfully request that by no later than February 6, the Court stay these proceedings pending the Fifth Circuit's ongoing mandamus review of the transfer denial.

### A.    Defendants Are Likely to Succeed on the Merits.

In addressing the likelihood of success on the merits, Plaintiff ignores two of the three independent reasons why the transfer denial was incorrect, and its response to Defendants' *Great Lakes* argument rests on a baseless procedural objection.

*First*, Plaintiff is silent on two of the three legal errors presented in the stay motion and advanced in the mandamus petition. *See* Mot. 6-7; Ex. A to Mot. 30-37. Plaintiff instead falls back on the mandamus standard. But a court "by definition abuses its discretion when it makes an error of law." *Defense Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022) (citation omitted). By identifying three clear errors of law, Defendants readily satisfy the mandamus standard.

*Second,* Plaintiff's accusation (at 4) that Defendants are engaging in "sandbagging" by citing an additional case in support of the argument they have made all along is entirely unfounded. Defendants have consistently argued that consideration of state law and public policy is impermissible because federal law governs the enforceability analysis. *See, e.g.*, Dkt. 40 at 2 ("Since federal law governs the transfer analysis . . ., state laws purporting to invalidate forum-selection clauses are irrelevant."); *id.* at 4 ("[T]he Texas state law provisions Plaintiff relies on

cannot . . . preclude this Court from considering and enforcing the forum-selection clause."); Dkt. 49-2 at 4:08-5:23 (arguing at hearing that state public policy cannot be "smuggled in in the fourth factor under the *Bremen* analysis"); *id.* at 7:01-07 ("[I]f you were to consider the Texas law . . . our frontline argument[] is that it's an impermissible consideration under 1404(a) and the *Bremen* fourth factor."). And the Fifth Circuit has made clear that "[a] new precedent is not a new argument; it is new support for an existing argument." *See Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022) (also citing cases from the First, Seventh and D.C. Circuits).

*Third*, Plaintiff's promise to later explain why *Great Lakes* is inapplicable reveals that it has no real response to the case. Plaintiff meekly suggests (at 4) that it can get around *Great Lakes* because *Great Lakes* involved "maritime contracts" rather than "normal contracts." But in roundly rejecting reliance on state public policy, *Great Lakes* interpreted *The Bremen*'s exception for when "enforcement would contravene a strong public policy of the forum in which suit is brought." *Great Lakes Insurance SE v. Raiders Retreat Realty Co.*, 601 U.S. 65, 78 (2024) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). It is well-established that *The Bremen* governs the enforceability of all forum-selection clauses, not just those in maritime contracts, which is why *Haynsworth* (a non-maritime case) cited *The Bremen* in setting out the public-policy exception. *See Haynsworth v. The Corp.*, 121 F.3d 956, 962-63 (5th Cir. 1997) ("[T]his Court and others have not hesitated to apply [*The Bremen's*] federal enforceability standards in non-admiralty cases."). And there is nothing in *Great Lakes* to suggest that courts confronting "normal contracts" need not comply with its authoritative interpretation of *The Bremen*'s public-policy exception.

## B. Defendants Will Suffer Irreparable Injury Absent Stay.

Plaintiff next asserts that Defendants' injuries are not irreparable, and that alternatively, the equities render those injuries unworthy of recognition. Opp. at 5-8. Plaintiff is wrong.

1.  Pointing to *Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022), Plaintiff promises that Defendants will be able to continue "seeking mandamus after the case has" been remanded. Opp. at 5. That is an empty promise. *Bruck* concerned the Fifth Circuit's authority to direct one federal district court to ask another federal district court to return a transferred case. Plaintiff conspicuously fails to mention that the District of New Jersey *denied* the request to re-transfer the case. *See Defense Distributed v. Platkin*, 617 F. Supp. 3d 213, 220 (D.N.J. 2022). In any event, *Bruck* says nothing about cases that are remanded to state court, an entirely separate and independent judicial system. Even mandamus relief requesting re-transfer between federal courts "risks 'provok[ing] a possible conflict between the Circuits,'" so is reserved for "a very extreme case." *In re Red Barn Motors, Inc.*, 794 F.3d 481, 484 (5th Cir. 2015) (citation omitted). Mandamus relief requesting that a *state court* return a case to federal court would open a Pandora's box of issues concerning federalism, comity, and the general bar against appealing a remand decision. That is likely why Plaintiff cites no case in which the Fifth Circuit or any other court has allowed a party to continue to pursue mandamus review after a case was remanded to state court.

2.  Plaintiff tellingly ignores Defendants' other irreparable injury: loss of the right to have "the court who would ultimately try the case . . . rule on the remand motion." *Oldham v. Nationwide Ins. Co. of Am.*, No. 3:14-CV-575-B, 2014 WL 3855238, at *4 (N.D. Tex. Aug. 5, 2014). This Court explicitly "exercise[d] its discretion to resolve" transfer before remand. Dkt. 48 at 2. A stay is thus not only consistent with that sequencing decision but also ensures that the critical jurisdictional question of remand is adjudicated by the proper district court.

3.  Instead, Plaintiff accuses Defendants of gamesmanship, declaring that Defendants are "attempt[ing] an impermissible end run around . . . remand." Opp. at 6. But it is Plaintiff who

seeks to use an improper remand as an end run around Defendants' recognized right to mandamus review of the transfer order—a right that Plaintiff itself previously invoked, *see Bruck*, 30 F.4th at 421, and which the Fifth Circuit has recognized is an "appropriate," and now the exclusive, "means of testing a district court's section 1404(a) ruling," *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 309 (5th Cir. 2008) (en banc).

### C.   Plaintiff Has No Comparable Injury, and the Public Interest Favors a Stay.

Plaintiff's claimed injuries do not cut against a stay.  Plaintiff proclaims that a stay would "indefinitely" delay its ability "to obtain a judicial determination of its rights."  Opp. at 6.  By that logic, a stay would never be warranted: delay is incidental to *any* stay pending appellate review.  Moreover, a stay would not be indefinite: the Fifth Circuit prioritizes the review and disposition of mandamus petitions.  Even on a lengthier appeal timeline, "a stay through the time a decision is issued by the Fifth Circuit with a 120-day backstop [is] neither indefinite nor immoderate." *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, No. 5:18-CV-97, 2019 WL 13191609, at *2 (S.D. Tex. Aug. 26, 2019).  And Plaintiff's complaint (at 7) that a stay would prolong "unlawful restrictions that continue to operate day by day" relies on the incorrect assumption that it will prevail on the merits.

Plaintiff also obliquely suggests that a stay would "shift[] power" to Defendants.  Opp. at 7.  But a stay would not give Defendants some kind of improper tactical advantage—it would simply protect Defendants' recognized right to higher-court review of the transfer denial and afford the Fifth Circuit "time to conduct careful, considered [mandamus] review." *Valentine v. Collier*, 978 F.3d 154, 160 (5th Cir. 2020).  Plaintiff tries to paint preservation of the status quo as an injustice, but the Fifth Circuit has made clear that "preserving the status quo 'is an important' equitable consideration" that *favors* a stay. *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021)

(citation omitted).  The only injustice would be to permit Plaintiff to use denial of a stay and departure from the status quo as a "tactical weapon" to obtain an improper remand and vitiate Defendants' right to review of the transfer order.  Opp. at 7.

Finally, the public interest firmly favors Defendants.  Plaintiff's proclamation (at 9) that a stay would disserve the public interest by introducing "interlocutory paralysis" would mean that a stay, which always has the effect of pausing proceedings, can never be in the public interest.  And Plaintiff's attempt to invoke the public interest in enforcement of state law improperly prejudges the merits—Defendants maintain that applying Chapter 143A here violates the First Amendment, and the public has no interest in enforcement of an unconstitutional law.  In all events, the public interest will be served by ensuring that the correct court is the one to "ultimately decide[] the merits of the action."  *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30 (3d Cir. 1970) (per curiam).[*]

\*     \*     \*

Because all four factors favor a stay, and given the impending issuance of the mandate in Defendants' prior collateral-order appeal on February 10, Defendants respectfully request that the Court grant the stay motion by February 6.

---

[*] Grasping for straws, Plaintiff asserts (at 7-8) that NetChoice's decision to file a constitutional challenge to HB 20 in this district weighs against a stay.  This argument borders on frivolous. *Paxton* was a pre-enforcement challenge seeking to fully enjoin HB 20 and did not involve claims subject to any forum-selection clause.  It has no bearing on whether Defendants are entitled to a temporary stay in a separate case involving an attempt to enforce HB 20 by an entity that, pursuant to concededly mandatory and applicable forum-selection clauses, agreed to litigate in California. And, consistent with *Ex Parte Young,* 209 U.S. 123 (1908), NetChoice's lawsuit to enjoin enforcement of HB 20 was filed against Ken Paxton, the Attorney General of Texas.  *See* Complaint for Declaratory and Injunctive Relief at ¶ 41, *NetChoice v. Paxton*, No. 1:21-cv-00840 (W.D. Tex. Sept. 22, 2021), Dkt. No. 1.  Because Paxton, as "the only Defendant" and the person against whom an injunction would be entered and enforced, "resides in Austin, Texas," the natural venue was the Western District of Texas.  *Id.* ¶ 43.  There is no comparable justification to litigate in Texas here.  In any event, NetChoice is a legally distinct entity from Defendants that represents numerous other members, and its litigation decisions in another case cannot estop Defendants from seeking enforcement of the forum-selection clauses in this case.

Dated: February 5, 2026                    Respectfully submitted,


**SCOTT DOUGLASS & MCCONNICO LLP**

*/s/ Steven J. Wingard*
Steven J. Wingard
Texas Bar No. 00788694
Robyn Hargrove
Texas Bar No. 24031859
Eli Barrish
Texas Bar No. 24144433

303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 474-0731
swingard@scottdoug.com
rhargrove@scottdoug.com
ebarrish@scottdoug.com

**COOLEY LLP**

Jonathan Patchen (admitted *pro hac vice*)
Michael A. Rome (admitted *pro hac vice*)
Anika Holland (admitted *pro hac vice*)
Madeleine R. Ahlers (admitted *pro hac vice*)

3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
Facsimile: (415) 693-2222
jpatchen@cooley.com
mrome@cooley.com
anika.holland@cooley.com
mahlers@cooley.com

*Attorneys for Defendants YouTube LLC, Google LLC, and Alphabet, Inc.*

6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served upon counsel via electronic service on February 5, 2026.

*/s/ Steven J. Wingard*
Steven J. Wingard