No. 26-50076

_____

In the United States Court of Appeals for the Fifth Circuit

_____

In re YouTube LLC, Google LLC, and Alphabet, Inc.,
                                                              Petitioners.

_____

On Petition for a Writ of Mandamus to the
United States District Court for the Western District of Texas
No. 1:25-cv-01095-ADA-ML

_____

**Response to the Petition for a Writ of Mandamus**

_____

Chad Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440

Counsel for Defense Distributed

# Table of Contents

Table of Authorities ..................................................................................iii

Summary of the Argument.................................................................... 1

Argument ................................................................................................4

I.    No error occurred. ......................................................................4

        A.    YouTube & Google's forum-selection clauses are not enforceable. ..... 5

                1.    Enforceability turns on public policy.......................... 5

                2.    The relevant public policy is that of Texas............... 6

                3.    Texas public policy deems these forum selection clauses unreasonable and unenforceable. ............................ 10

                4.    The 2023 amendment filled the gap......................... 13

                5.    Petitioners' cases are inapposite. ........................... 16

        B.    Public interest factors clearly oppose transfer. ...................20

                1.    Texas courts are faster.............................................. 21

                2.    Texas cares the most about Texas law. ...................22

                3.    Texas courts know Texas law best............................ 23

                4.    Keeping both HB20 cases in Texas avoids chaos. ...................24

        C.    The Platforms are estopped from denying the *NetChoice* forum. .......24

II.   No mandamus-worthy extraordinary circumstances exist............................27

        A.    Petitioners' theory prove too much.................................. 27

        B.    This is no *Defense Distributed v. Bruck*. ..............................30

i

III.    The Court should call for the views of the Solicitor General of Texas. ........ 31

      A.    Rule 44(b) supports calling for the State's views ................................ 32

      B.    Texas is uniquely positioned to address the questions presented. ...... 33

Conclusion ............................................................................................ 34

Certificate of Compliance ...................................................................... 35

## Table of Authorities

**Cases**

*Albemarle Corp. v. AstraZeneca UK Ltd.*,
628 F.3d 643 (4th Cir. 2010) .................................................................... 19, 20

*Ameri-Fab, LLC v. Vanguard Energy Partners, LLC*,
646 F. Supp. 3d 795 (W.D. Tex. 2022) ....................................................18, 19

*Cheney v. U.S. Dist. Ct.*,
542 U.S. 367 (2004) ................................................................................ 25, 30

*ConocoPhillips Co. v. Hahn*,
704 S.W.3d 515 (Tex. 2024) ......................................................................... 18

*Dandridge v. Williams*,
397 U.S. 471 (1970) ...................................................................................... 25

*Davis v. Meta Platforms, Inc.*,
No. 4:22-CV-01001, 2023 WL 4670491 (E.D. Tex. July 20, 2023) ....13, 14, 15

*Defense Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) .................................................................*passim*

*Elrod v. Burns*,
427 U.S. 347 (1976) ...................................................................................... 21

*Gabarick v. Laurin Mar. (Am.) Inc.*,
753 F.3d 550 (5th Cir. 2014).......................................................................... 27

*Great Lakes Ins. SE v. Raiders Retreat Realty Co.*,
601 U.S. 65 (2024).......................................................................................... 8

*Haynsworth v. The Corporation*,
121 F.3d 956 (5th Cir. 1997) .............................................................. 7, 10, 15

*In re Lyon Fin. Servs., Inc.*,
    257 S.W.3d 228 (Tex. 2008) .......................................................... 14

*In re Rolls-Royce Corp.*,
    775 F.3d 671 (5th Cir. 2014) .................................................. 27, 28

*In re Tex. Grand Prairie Hotel Realty*,
    710 F.3d 324 (5th Cir. 2013) ........................................................ 8

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) ................................................... 3, 29

*In re United States*,
    598 F.2d 233 (D.C. Cir. 1979) ..................................................... 25

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (en banc) ....................... 25, 28, 29, 31

*In re Willy*,
    831 F.2d 545 (5th Cir. 1987) ...................................................... 28

*Lauro Lines s.r.l. v. Chasser*,
    490 U.S. 495 (1989).................................................................... 27

*Lim v. Offshore Specialty Fabricators, Inc.*,
    404 F.3d 898 (5th Cir. 2005) ...................................................... 17

*Matthews v. Tidewater, Inc.*,
    108 F.4th 361 (5th Cir. 2024) ....................................................... 9

*Moody v. NetChoice, LLC*,
    603 U.S. 707 (2024) ................................................................... 26

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ................................................................ 5, 6, 9

*NetChoice, L.L.C. v. Paxton*,
    49 F.4th 439 (5th Cir. 2022) ...................................................... 26

*New Hampshire v. Maine,*
532 U.S. 742 (2001) ........................................................... 27

*Oncor Elec. Delivery Co. v. Wilbarger Cnty. Appraisal Dist.,*
691 S.W.3d 890 (Tex. 2024) ............................................. 18

*Scivation, Inc. v. Xtend5, LLC,*
No. 1:20-CV-00986-RP, 2021 WL 2177254 (W.D. Tex. May 28, 2021) ........ 23

*Stewart Org., Inc. v. Ricoh Corp.,*
487 U.S. 22 (1988) ............................................................ 16

*Trinity Marine Prods., Inc. v. United States,*
812 F.3d 481 (5th Cir. 2016) ............................................ 27

*Weber v. PACT XPP Techs., AG,*
811 F.3d 758 (5th Cir. 2016) ................................. 4, 7, 8, 15

*Will v. United States,*
389 U.S. 90 (1967) ........................................................... 28

*Wise Guys I v. Meta Platforms, Inc., No. 3:23-CV-0217-X,*
2023 WL 8434452 (N.D. Tex. Dec. 4, 2023) ..................... 13, 15

**Statutes & Rules**

28 U.S.C. § 1404(a) .......................................................... 4

Tex. Civ. Prac. & Rem. Code
§ 143A.003 ............................................... *passim*
§ 143A.0035 ............................................... *passim*

Federal Rule of Appellate Procedure 44 ................................ 32

**Other Authorities**

14A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure
§ 3672 (4th ed. 2025) ....................................................................... 8

23 Stephanie A. Giggetts, et al., Federal Procedure, Lawyers Edition
§ 53:4 (2026) ................................................................................. 8

## Summary of the Argument

The petition should be denied. The district court made no error, let alone a clear and indisputable error. The forum-selection clauses YouTube and Google invoke are unenforceable under Texas law. The public-interest factors independently require the case to stay in Texas. And the platforms are estopped from claiming otherwise. Mandamus is not available in any event. This is a routine transfer dispute between private parties, not the extraordinary case that justifies the writ. To confirm all of this, and since the sought relief would nullify core provisions of a Texas statute "of the highest importance and interest to this state," Tex. Civ. Prac. & Rem. Code § 143A.003(b), the Court should call for the views of the Solicitor General of Texas.

## I. No error occurred. The case belongs in Texas.

YouTube and Google moved to transfer on the basis of their forum-selection clauses. They lost at the enforceability step. That was correct for three reasons.

1. Federal law deems a forum-selection clause unenforceable if enforcing it would contravene a strong public policy of the forum state. Chapter 143A supplies both a mandatory Texas-venue provision and a categorical waiver prohibition declaring contrary clauses void as unlawful and against public policy. As amended in 2023, the statute leaves no gap. Enforcing YouTube and Google's clauses would directly contradict the special Texas public policy this statute expressly codifies.

Petitioners' contrary argument rests on a category error. They deem state law irrelevant to the enforceability inquiry, citing admiralty and maritme cases. But while the enforceability framework is federal; the content of the public-policy inquiry here is state law because *Erie* requires it. This Court already held in *Haynsworth* and *Weber* that "public policy" for diversity cases like this is *state* public policy, and rightly so.

2. All of *Atlantic Marine's* public-interest factors weigh against transfer. Speed matters because both sides here claim free speech rights, and the Texas court below resolves cases three times faster than YouTube and Google's home court. Texas has the strongest local interest for even more reasons than it did in *Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022). This is a Texas statute, enacted by the Texas Legislature, protecting Texas users, expressly directing litigation to Texas courts. Issue expertise is lopsided, with the court below and this Court having already spent years litigating HB20 issues in *NetChoice, LLC v. Paxton*. And transfer would create a severe conflict of parallel proceedings in different circuits construing the same law.

3. YouTube and Google cannot have it both ways. In *NetChoice*, they deliberately chose the Western District of Texas as the forum to litigate the constitutionality of Chapter 143A. They described it as the proper and preferred venue for the definitive challenge. They cannot now claim it is the wrong forum when a regulated party sues to enforce the same statute. Estoppel forbids the flip–flop.

## II. No mandamus-worthy extraordinary circumstances exist.

Even if there was an error, that is all there was. Nothing extraordinary enough to warrant mandamus is afoot. Petitioner's view of what suffices would make most transfer denials mandamus-eligible and collapse Congress's deliberate choice to make transfer orders nonappealable. That proves too much.

This case bears no resemblance to the very rare decisions granting mandamus. In *In re TikTok, Inc.*, 85 F.4th 352 (5th Cir. 2023), nothing connected the case to Texas. Here, everything does. In *Defense Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022), a state official weaponized serial litigation to evade review and impose extraterritorial regulation. No such sovereign gamesmanship and systemic harm are at issue here. Defense Distributed is a Texas plaintiff suing under a Texas statute in the Texas forum the Legislature mandated. The result below is totally mainstream.

## III. The Court should call for the views of the Solicitor General of Texas.

To put the nail in the coffin, the Court should invite the views of the Texas Solicitor General. Petitioners' position would effectively disable Chapter 143A's venue mandate and antiwaiver rule for claims in federal court, even though this scheme is "of the highest importance and interest to this state." Tex. Civ. Prac. & Rem. Code § 143A.003. A writ that functionally nullifies core components of a state enforcement scheme should not issue without allowing the State to be heard.

**Argument**

## I.   No error occurred.

The petition should be denied because the district court did not err at all, let alone as dramatically as is required. The district court's transfer denial was correct.

YouTube & Google moved to transfer under 28 U.S.C. § 1404(a) by arguing that forum-selection clauses warrant transfer under the paradigm of *Atlantic Marine* (U.S. 2013). App. 88. Such transfer motions entail three key inquiries:

(1)     whether the forum selection clause is mandatory
(2)     whether the forum selection clause is enforceable
(3)     whether public-interest factors override the forum selection clause

*See, e.g.*, *Weber v. PACT XPP Techs., AG*, 811 F.3d 758 (5th Cir. 2016).

The district court denied the motion to transfer at step two by rightly holding that Texas law makes the invoked forum selection clauses unenforceable. App. 22. That alone warrants denying the petition. Though the district court did not go further (because it did not need to, App. 22 n.4), it could also have denied the motion to transfer at step three by rightly holding that the public-interest factors warrant keeping the case in Texas. That too warrants denying the petition. And finally, the petition should be denied because of estoppel, another ground justifying the result that the district court did not need to address. The Court can deny the petition for any of these reasons. The decision to keep the case in Texas was correct.

**A.    YouTube & Google's forum-selection clauses are not enforceable.**

First, the district court rightly denied transfer for failure to satisfy step two's enforceability inquiry. The forum selection clauses that YouTube and Google invoked are not enforceable against Defense Distributed here because of the public policy Texas codified in Texas Civil Practice and Remedies Code Chapter 143A.

**1.    Enforceability turns on public policy.**

The Section 1404(a) test for enforceability of forum selection clauses turns on reasonableness under the circumstances. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Courts presume that a mandatory forum selection clause is reasonable and enforceable "unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id*. One such ground entails forum public policy: "A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Id*.

Petitioners invert *Bremen*'s framework. They treat the presumption of enforceability as though it were an absolute rule—one that no state statute can overcome. But *Bremen* created the presumption and the exception in the same breath. The Court held that forum-selection clauses are "prima facie valid," *id*. at 10, and simultaneously specified that enforcement may be refused when it "would

contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision," *id*. at 15. That language—"whether declared by statute"—contemplates exactly what Texas has done. A presumption that cannot be rebutted by the mechanism the Court itself specified is not a presumption. It is an irrebuttable rule, and *Bremen* announced no such thing.[1]

### 2. The relevant public policy is that of Texas.

The "public policy of the forum" here is the public policy of Texas. The enforceability inquiry is federal in framework. But *Erie* forecloses the invention of freestanding federal public policy in ordinary diversity cases. Outside areas of uniquely federal concern (e.g., admiralty), there is no federal substantive common law displacing state policy choices. Texas state law—not a freestanding federal gloss—supplies the content.

---

[1] *Bremen* also did not arise in a vacuum resembling this case. It involved a freely negotiated international commercial contract between sophisticated parties of equal bargaining power for the transoceanic tow of a drilling rig. *Bremen*, 407 U.S. at 12. The Court emphasized that the forum clause was "a vital part of the agreement" reached through "arm's-length negotiation by experienced and sophisticated businessmen." *Id*. YouTube's Terms of Service are the opposite: nonnegotiable clickwrap terms imposed unilaterally on every user as a condition of access. Defense Distributed did not sit across a table from YouTube and bargain for Santa Clara County. It clicked "I agree" or lost the platform. Whatever force *Bremen's* freedom-of-contract rationale carries in the context of a bespoke international commercial agreement, it carries far less when applied to a standardized adhesion contract that no user has the power to alter.

The question is not open. Fifth Circuit precedent has already resolved that the relevant public policy is that of the forum state—here, Texas. In *Haynsworth v. The Corporation*, 121 F.3d 956 (5th Cir. 1997), this Court established the governing framework for forum-selection-clause enforceability in diversity cases. Though federal law supplies the overall test, *Haynsworth* identifies four distinct grounds on which that presumption may be overcome. The fourth—and dispositive here—is that "enforcement of the forum selection clause would contravene a strong public policy of the forum state." *Id.* at 963. That reference to "the forum state" is not decorative. It identifies the source of the substantive rule: state law.

*Weber v. PACT XPP Technologies, AG*, 811 F.3d 758 (5th Cir. 2016), confirms. *Weber* reiterated the *Haynsworth* framework, applied Texas choice-of-law principles under *Erie–Klaxon* to determine the governing substantive law, and quoted the "strong public policy of the forum state" standard as operative. *Id.* at 770–73. If the relevant public policy were federal rather than Texan, that choice-of-law analysis would have been unnecessary.

*Haynsworth* and *Weber* are controlling. Both treat the "strong public policy of the forum state" prong as calling for state-law content—not a freestanding federal judgment. *Haynsworth* collected state-law sources as the basis for the public-policy determination. *Haynsworth*, 121 F.3d at 963. *Weber* conducted a full Restatement

Second analysis to identify the proper state law. *Weber*, 811 F.3d at 771–72. That makes sense only if state law is doing the substantive work.

*Haynsworth* and *Weber* remain controlling notwithstanding *Great Lakes Insurance SE v. Raiders Retreat Realty Co.*, 601 U.S. 65 (2024). The rule of orderliness requires this. *See, e.g.*, *In re Tex. Grand Prairie Hotel Realty,* 710 F.3d 324, 331 (5th Cir.2013) ("a panel of this court can only overrule a prior panel decision if such overruling is unequivocally directed by controlling Supreme Court precedent"). And so do first principles, which reveal *Haynsworth* and *Weber* to still be fully correct.

*Great Lakes* is categorically distinguishable. It addressed the distinct context of federal maritime law, where the Constitution vests Congress with power to create a uniform body of substantive admiralty rules.[2] In that specialized domain alone,

---

[2] *See generally* 23 Stephanie A. Giggetts, et al., Federal Procedure, Lawyers Edition § 53:4 (2026) ("A distinctive aspect of maritime and admiralty law is that, unlike the rule in legal and equitable cases, admiralty law is federal law in the sense that it derives from the implications of Article III evolved by the courts, and state law must yield to the needs of a uniform federal maritime law where there is a conflict."); 14A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 3672 (4th ed. West 2025) ("In order to achieve the constitutional objective of uniformity underlying the grant of admiralty and maritime jurisdiction to the federal courts, the power of state courts and state legislatures to create or destroy remedies that might be sought under the saving-to-suitors clause has been limited. As a result, the saving clause does not authorize the application of substantive rights created by state statutes that significantly modify or change the traditional characteristics of the national substantive admiralty and maritime law that otherwise would be applicable in a particular case; however, state procedures and remedies are available as long as

constitutionally-rooted federal policy—not state policy—supplies the measure for gap-filling in maritime contracts. That holding does not generalize. Outside admiralty, there is no comparable federal common-law regime governing forum-selection clauses in state-law claims.

Defense Distributed obviously isn't suing YouTube and Google in admiralty. So there is no need to follow *Bremen*'s thinking about "the correct doctrine to be followed by federal district courts sitting in admiralty." *M/S Bremen*, 407 U.S. at 10-14. Defense Distributed sues YouTube and Google for violating a Texas statute, with the court below having only diversity jurisdiction (and even that is challenged). The law of the State of Texas therefore supplies the operative content of the "strong public policy of the forum state" inquiry—exactly as *Haynsworth* and *Weber* hold.

*Matthews v. Tidewater, Inc.*, 108 F.4th 361, 370 (5th Cir. 2024), turned—like *Great Lakes*—on a competing federal statutory policy that occupied the field. Congress has enacted no comparable framework in the HB20 context. *Matthews* is therefore inapposite for the same reason: it involved maritime employment contracts governed by a comprehensive congressional scheme, not a state-law claim in a diversity case.

---

they do not conflict with the essential elements of the national law." (footnotes omitted).

Read together, *Great Lakes* and *Matthews* reinforce the same structural principle: when federal law supplies the governing public policy—whether by constitutional design, as in maritime law, or by statute, as in *Matthews*—state law yields. But when federal law instead looks to state policy to define the limits of contractual enforcement, state law controls. Chapter 143A operates in that latter space.

### 3. Texas public policy deems these forum selection clauses unreasonable and unenforceable.

Chapter 143A supplies both the cause of action Defense Distributed asserts and a comprehensive statutory framework that renders Petitioners' forum-selection clauses unenforceable. Two interlocking provisions do the work: a mandatory venue command in Section 143A.0035, and a categorical waiver prohibition in Section 143A.003. Together, they codify the "strong public policy of the forum state" that enforcement of Petitioners' clauses would contravene. *Haynsworth*, 121 F.3d at 963; *Weber*, 811 F.3d at 773.

*Venue Mandate.* Section 143A.0035 supplies the statute's venue mandate. It provides that any "action brought under this chapter against a social media platform shall be brought and maintained in a court in this state," and does so "[n]otwithstanding any other law, any contract, or any venue, forum selection, or choice-of-law provision in a contract":

§ 143A.0035. Venue and Choice of Law

Notwithstanding any other law, any contract, or any venue, forum selection, or choice-of-law provision in a contract, an action brought under this chapter against a social media platform shall be brought and maintained in a court in this state, and the law of this state applies to the action.

Tex. Civ. Prac. & Rem. Code § 143A.0035. The Legislature's enumeration of "any venue, forum selection, or choice-of-law provision in a contract" is not incidental. It targets by name the exact contractual mechanism Petitioners invoke.

*Waiver Shield.* Section 143A.0035 supplied the statute's waiver shield. It provides that any "waiver or purported waiver of the protections provided by this chapter is void as unlawful and against public policy, and a court or arbitrator may not enforce or give effect to the waiver, including in an action brought under Section 143A.007, notwithstanding any contract or choice-of-law provision in a contract," and does so "to the full extent permitted by the United States Constitution and Texas Constitution":

§ 143A.003. Waiver Prohibited

(a) A waiver or purported waiver of the protections provided by this chapter is void as unlawful and against public policy, and a court or arbitrator may not enforce or give effect to the waiver, including in an action brought under Section 143A.007, notwithstanding any contract or choice-of-law provision in a contract.

(b) The waiver prohibition described by Subsection (a) is a public-policy limitation on contractual and other waivers of the highest importance

and interest to this state, and this state is exercising and enforcing this limitation to the full extent permitted by the United States Constitution and Texas Constitution.

Tex. Civ. Prac. & Rem. Code § 143A.003. That provision's express Constitutional bolstering warrants emphasis. Foreseeing cases just like this one, the Legislature declared the waiver prohibition a matter "of the highest importance and interest to this state" and announced that it enforces the prohibition "to the full extent permitted by" both Constitutions. § 143A.003(b).

Both provisions apply here. Defense Distributed brought this action under Chapter 143A in Texas state court. *See* W.D. Tex. Doc. 1-2 at 35-39, ¶¶ 70-87. The venue mandate requires it be "maintained in a court in this state" "[n]otwithstanding any ... forum selection ... provision in a contract." § 143A.0035. The waiver shield applies because Petitioners' own motion characterizes forum-selection clauses in waiver terms, arguing that "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum." App. 109. Texas has declared that waiver void. § 143A.003.

Context confirms this reading. Every platform regulated by Chapter 143A operates through mandatory clickwrap terms containing boilerplate forum-selection clauses. The Legislature knew that. If the statute's venue mandate and waiver shield did not reach those contracts, Chapter 143A would be a dead letter—every covered

platform could negate the statute by invoking its own pre-existing clause. The Legislature does not enact nullities.

The district court agreed. It found that enforcing the forum-selection clauses "would contravene Texas's policy that actions under Chapter 143A are to be 'maintained' in this state notwithstanding any 'forum selection' provision in a contract," and "Texas's policy that waivers of Chapter 143A's protections—including the protection provided by the venue provision—are void and unenforceable." App. 19–20. That conclusion was correct—and certainly not the kind of clear error that mandamus requires.

### 4. The 2023 amendment filled the gap.

*Davis* and *Wise Guys* are the only decisions to have conducted a § 1404(a) forum-selection-clause analysis under Chapter 143A. Both allowed transfer. Both are now Petitioners' worst enemy. And that is why the Petition does not cite either one.

*Davis v. Meta Platforms, Inc.*, No. 4:22-CV-01001, 2023 WL 4670491 (E.D. Tex. July 20, 2023), and *Wise Guys I v. Meta Platforms, Inc.*, No. 3:23-CV-0217-X, 2023 WL 8434452 (N.D. Tex. Dec. 4, 2023), applied exactly the framework at issue here—the *Haynsworth/Weber* public-policy inquiry—to Chapter 143A claims. Both held that the statute as it then existed did not establish a strong enough public policy

to override forum-selection clauses. But both decisions turned expressly on a gap the Legislature has since filled.

*Davis* maps the key evolution. When *Davis* was decided, Chapter 143A contained a waiver prohibition but lacked any express venue mandate. *Davis* identified two fatal deficiencies: the statute said "nothing about forum-selection clauses" by name, *Davis*, 2023 WL 4670491, at *13, and "absent a statute requiring suit to be brought in Texas, the existence of statutory law in an area [does] not establish such Texas public policy as would negate a contractual forum-selection provision," *id.* (quoting *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 234 (Tex. 2008)).

Critically, *Davis* did not stop there. It observed that the Legislature had already enacted the fix—Senate Bill 1602, adding Section 143A.0035—but that the new provision applied "only to an action filed on or after" September 1, 2023, and was therefore inapplicable to the case before the court. *Id.* at *14. *Davis* acknowledged that "the addition of § 143A.0035 reflects the Texas Legislature's desire to keep future cases brought under Chapter 143A in Texas courts." *Id.* The court simply could not apply a statute that had not yet taken effect.

*That constraint no longer exists.* Defense Distributed filed suit after September 1, 2023. Section 143A.0035 applies. And the statute now contains every element that *Davis* found missing. It uses the terms "forum" and "venue." It expressly "requir[es]

suit to be brought in Texas." And it overrides "any contract, or any venue, forum selection, or choice-of-law provision in a contract." § 143A.0035. The gap *Davis* identified is closed. The analysis *Davis* prescribed now points the other way.

Petitioners dismissed *Davis* and *Wise Guys* below because those courts "did not have to consider *Stewart* or the federal preemption issues ... because the relevant provisions had not been enacted." App. 177. That gets it backwards. *Davis* and *Wise Guys* did not address *Stewart* because the statute then lacked the textual predicates to establish a strong public policy. What has changed is not the legal framework—it is the statute. The Legislature supplied the missing provisions, and those provisions now satisfy the standard *Davis* itself articulated.

The 2023 amendment thus confirms what the statutory text independently establishes: Petitioners' forum-selection clauses are unenforceable because enforcing them would contravene a strong public policy of the forum state. *Davis*, 2023 WL 4670491, at *11; *Weber*, 811 F.3d at 773; *Haynsworth*, 121 F.3d at 963.

For these reasons, the motion fails at step (2) because the forum-selection clauses are not enforceable. This standalone failure warrants denying the motion without more. *See Wise Guys*, 2023 WL 8434452, at *2; *accord Davis*, 2023 WL 4670491, at *9.

### 5. Petitioners' cases are inapposite.

*Stewart Organization Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988), does not help Petitioners. It hurts them. *Stewart* held that § 1404(a) preempts a state rule that purports to dictate the outcome of a transfer inquiry. 487 U.S. at 28–30. But it simultaneously held that state policy remains relevant as a factor within the federal analysis. *Id.* at 29 ("The forum-selection clause … should receive neither dispositive consideration … nor no consideration … but rather the consideration for which Congress provided in § 1404(a)."). Petitioners read *Stewart* as eliminating state public policy from the enforceability inquiry. *Stewart* says the opposite.

The distinction between Alabama's rule and Chapter 143A is dispositive. Alabama maintained a *blanket hostility to forum-selection clauses as such*—a background preference untethered to any particular statutory scheme. *Stewart* preempted that categorical stance because it functioned as a state-law override of the federal transfer framework. Chapter 143A is fundamentally different. Texas has not announced a generalized disfavor of forum-selection clauses. It has enacted a statute that creates the cause of action, specifies where it must be litigated, and declares any contrary waiver "void as unlawful and against public policy"—"a public-policy limitation … of the highest importance and interest to this state." §§ 143A.003, 143A.0035.

*Stewart* did not involve—and did not purport to resolve—the effect of a targeted venue mandate enacted to protect a specific statutory enforcement scheme.[3]

*Stewart* thus confirms the district court's approach. State law cannot mechanically dictate transfer outcomes, but state public policy remains part of the federal enforceability inquiry. The district court treated Texas's public-policy judgment as input into the federal framework—which is what *Haynsworth*, *Weber*, and *Stewart* itself require.

*Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898 (5th Cir. 2005), turned on a mismatch absent here. Louisiana's statute protected Louisiana employees from foreign forums, but the *Lim* plaintiffs were Philippine citizens required to arbitrate in the Philippines—their contracts did not present "the inequities the Louisiana statute was crafted to prevent." *Id.* at 906. Here, the fit is exact. Defense Distributed is a

---

[3] Petitioners also invoke Congress's 2011 amendment adding "to any district or division to which all parties have consented" to § 1404(a). Pet. 16–17. The amendment permits transfer to a consented-to forum; it does not compel it or eliminate enforceability defenses. Congress expanded the set of transferee districts available under § 1404(a). It said nothing about whether public-policy exceptions to forum-selection-clause enforceability survive—much less that they do not. And the concept of "consent" Congress codified sits uneasily with nonnegotiable clickwrap terms imposed unilaterally on every user as a condition of platform access. If "consent" in this statutory context meant "any forum-selection clause in any contract of any kind," every transfer motion invoking such a clause would be per se meritorious. That is not the law.

Texas entity suing under a Texas cause of action in a Texas court. Enforcing Petitioners' clause would produce the precise inequity the Legislature targeted.

"Void" is not the same as "voidable." That distinction disposes of Petitioners' best lower-court authority. *Ameri-Fab, LLC v. Vanguard Energy Partners, LLC*, 646 F. Supp. 3d 795, 800 (W.D. Tex. 2022) (cited at Pet. 23).

A void contract clause is treated as if it never existed; it is a legal nullity, unenforceable ab initio from the moment of its creation, no matter what the parties later say or do. *See, e.g.*, *ConocoPhillips Co. v. Hahn*, 704 S.W.3d 515, 526 n.15 (Tex. 2024); *Oncor Elec. Delivery Co. v. Wilbarger Cnty. Appraisal Dist.*, 691 S.W.3d 890, 907 (Tex. 2024). By contrast, a voidable clause remains effective unless and until a party successfully invokes some defense to avoid it. *See, e.g.*, *id.*

"Void" is what Chapter 143A makes Petitioners' forum-selection clauses. Section 143A.003 declares any purported waiver "void as unlawful and against public policy" and commands that "a court or arbitrator may not enforce or give effect to the waiver." That is not a defense a user may elect to raise. It is a legislative declaration that these clauses are nullities—no matter what the parties say or do.

"Voidable" is all that the *Ameri-Fab* statute did to its subject clauses: "Pursuant to the Texas law upon which this argument relies, such clauses are deemed 'voidable' under certain circumstances...." *Ameri-Fab*, 646 F. Supp. 3d at

801. That kind of "voidable" designation leaves the clause enforceable unless and until a party takes affirmative steps to set it aside, which is precisely the framework *Atlantic Marine* contemplates. Chapter 143A is different: it declares such waivers "void" ab initio. By invoking *Ameri-Fab*, the Defendants want this Court to treat as voidable what Texas law has already made an absolute nullity.

*Ameri-Fab*'s own reasoning now points the other way. That statute said nothing about forum-selection clauses by name and did not require suit to be brought in Texas. *Ameri-Fab*, 646 F. Supp. 3d at 805–06. Chapter 143A satisfies both. It expressly overrides "any venue, forum selection, or choice-of-law provision in a contract" and requires that covered actions "be brought and maintained in a court in this state." And it declares the resulting policy one "of the highest importance and interest to this state." If *Ameri-Fab* sets the test, Chapter 143A passes it.

*Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643 (4th Cir. 2010), does not help YouTube and Google either—for the same reason *Stewart* does not. *Albemarle* held that South Carolina could not override *Bremen*'s federal presumption by statute, reasoning that "it can hardly be a strong public policy to countermand the very policy that the Supreme Court adopted in The Bremen." *Id.* at 652. YouTube and Google ask this Court to "align itself" with that holding. Pet. 25. The Court should—because *Albemarle* supports Defense Distributed.

The *Albemarle* statute expressed generalized hostility to forum-selection clauses as such. It declared all such clauses "void and unenforceable" as a categorical matter. *Id.* at 651–52. That is the same kind of blanket anti-FSC policy Alabama maintained in *Stewart*—a background preference untethered to any particular statutory scheme. The Fourth Circuit rejected it for that reason: allowing states to "effectively override" *Bremen* "by expressing disagreement with the decision's rationale" would permit "the very 'provincial attitude' rejected by *The Bremen*." *Id.* at 652.

Chapter 143A is not that statute. Texas enforces forum-selection clauses routinely. What it has done here is enact a specific regulatory scheme that creates a cause of action, prescribes where it must be litigated, and prevents regulated entities from using boilerplate clickwrap terms to export those claims out of Texas. That is not the "provincial attitude" *Albemarle* condemned. The line *Albemarle* draws— between blanket anti-FSC hostility and targeted statutory enforcement protections—places Chapter 143A on Defense Distributed's side.

### B.    Public interest factors clearly oppose transfer.

Even if the forum-selection clauses are enforceable, YouTube and Google's motion should have been denied at step three because the public-interest factors under *Atlantic Marine* weigh decisively against transfer.  The district court did not

reach this ground for decision because it did not need to, having disposed of the motion at step two. App. 22 n.5. But since Defense Distributed fully pressed its step three argument below, App. 164-68, the Court can deny the petition on that basis.

### 1. Texas courts are faster.

Factor one is the administrative difficulties flowing from court congestion. This factor clearly favors the Western District of Texas.

The Western District of Texas resolves civil cases nearly three times faster than the Northern District of California. Median time from filing to disposition is 7.6 months here versus 20.5 months there. Median time from filing to trial is 33.4 months here versus 40.2 months there. *See* W.D. Tex. Doc. 35-01 (Administrative Office of the U.S. Courts, U.S. District Court—Judicial Caseload Profile (March 31, 2025)). That is not a marginal difference. It is a year of additional delay to disposition and the better part of a year more to trial.

That disparity has special force here because both sides say they are vindicating speech rights. Defense Distributed invokes HB20's speech-protection mandate. Petitioners say the First Amendment shields their editorial discretion. The Supreme Court has long held that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Transfer would guarantee that the freedoms at

stake—whoever's they are—go unresolved for substantially longer. If Petitioners genuinely believe the First Amendment is on their side, they should prefer faster vindication in Texas to slower vindication in California.

### 2. Texas cares the most about Texas law.

Factor two is the local interest in having localized interests decided at home. This factor clearly favors the Western District of Texas.

This Court has already answered this question. *Defense Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022), considered strikingly parallel facts—Defense Distributed being censored in Texas by out-of-state actors—and held that "Texas's 'local interest in having [the] localized interests' this case implicates 'decided at home' cannot be overstated." *Id.* If anything, the local interest here is stronger. *Bruck* involved federal constitutional claims. This case involves a Texas statute—a cause of action created by the Texas Legislature, applicable only to users who reside, do business, or share expression "in this state," and directed by that same Legislature to be "brought and maintained in a court in this state." § 143A.0035. Texas's stake in adjudicating its own statutory scheme is at its apex.

### 3. Texas courts know Texas law best.

Factor three is the familiarity of the forum with the law that will govern the case. This factor clearly favors the Western District of Texas.

This case turns on Chapter 143A—a Texas statute that no California federal court has ever construed. The Western District of Texas has not only general familiarity with Texas law, *see Scivation, Inc. v. Xtend5, LLC*, No. 1:20-CV-00986-RP, 2021 WL 2177254, at *2 (W.D. Tex. May 28, 2021), but singular expertise with this statute in particular. *NetChoice, LLC v. Paxton*, No. 1:21-cv-00840-RP (W.D. Tex.), the seminal constitutional challenge to Chapter 143A, has been litigated in the Western District of Texas from inception. That case involves the same statutory regime, the same legislative findings, and the same speech-nondiscrimination mandate at issue here. The Western District of Texas and this Court have already spent years analyzing Chapter 143A's text, structure, and constitutional footing.

Transfer would squander that expertise and hand a novel Texas statute to a court starting from zero. The Western District of Texas is the national epicenter for HB20 litigation. Coordination with NetChoice may become appropriate as both cases progress—an option that exists only if both remain in this District.

### 4. Keeping both HB20 cases in Texas avoids chaos.

Factor four is the avoidance of unnecessary problems of conflict of laws. This factor clearly favors the Western District of Texas.

Transfer would split Chapter 143A litigation across two circuits. *NetChoice, LLC v. Paxton*, No. 1:21-cv-00840-RP, is already pending in the Western District of Texas and involves the same statute and the same speech-nondiscrimination mandate. If this case goes to California, two federal courts in different circuits would construe the same Texas statute simultaneously, with no mechanism to ensure consistency. That is the definition of an unnecessary conflict-of-laws problem..

Transfer would also generate a threshold conflict it need not create. Chapter 143A expressly mandates that "the law of this state applies to the action." § 143A.0035. In Texas, that directive is self-executing. In California, it becomes a contested choice-of-law question—whether to honor the statute's own command or apply forum-state procedural defaults. Keeping the case here avoids that entirely artificial dispute.

### C. The Platforms are estopped from denying the *NetChoice* forum.

Petitioners are estopped from denying the propriety of the very forum they selected to litigate HB20 in *NetChoice*. The district court's decision can be defended on this ground because it is supported by the record, even if not pressed below. *See,*

*e.g.*, *In re U. S.*, 598 F.2d 233, 237 n.5 (D.C. Cir. 1979) ("On direct appeal '(t)he prevailing party may, of course, assert in a reviewing court any ground in support of his judgment, whether or not that ground was relied upon or even considered by the trial court.' *Dandridge v. Williams*, 397 U.S. 471, 475 n. 6 (1970). If this is true on direct appeal, it is A fortiori true in a mandamus proceeding.").[4]

Estoppel applies here because YouTube and Google through their trade association deliberately selected the Western District of Texas as the forum for litigating the constitutionality of HB20. *See* First Amended Complaint, *NetChoice,*

---

[4] This principle applies with special force in the mandamus context. Whatever reservations may attend affirming a final judgment on grounds not pressed below, those reservations have no purchase here. Mandamus asks a single question: whether the district court clearly abused its discretion. If a valid legal ground supports the district court's ruling, the petition necessarily fails—the petitioner cannot show a "clear and indisputable" right to relief. *See Cheney v. U.S. Dist. Court*, 542 U.S. 367, 381 (2004). An appellate court that declined to consider such a ground would not be protecting the writ's integrity; it would be issuing extraordinary relief despite a sound basis for the order under review. That inverts the mandamus standard. The writ exists to confine district courts "to the sphere of [their] discretionary power," not to require that they articulate every correct reason for staying within it. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (en banc). Because mandamus demands a patently erroneous result, *id.* at 310, 317, a petitioner who cannot overcome a ground that is valid as a matter of law has not carried that burden, regardless of whether it was briefed below.

That is the posture here. Estoppel presents a pure question of law involving no serious factual dispute. When Defense Distributed raised the argument after the challenged order issued, W.D. Tex. Doc. 62 at 7–8, Petitioners did not contest the underlying facts; they just dismissed the argument as legally irrelevant, W.D. Tex. Doc. 63 at 6 n.*. The Court can resolve the issue on the undisputed record before it.

*LLC v. Paxton*, No. 1:21-cv-00840-RP, Doc. 76 at 5 (W.D. Tex. Feb. 6, 2025) ("Plaintiffs bring this challenge on behalf of websites operated by Plaintiffs' members when they curate and disseminate compilations of third-party speech posted on their services, including, e.g., (1) Facebook (Meta); (2) Instagram (Meta); (3) Nextdoor; (4) Pinterest; (5) X; and (6) YouTube (Google)."). That choice was strategic, not incidental. They invoked the Western District of Texas as the preferred forum for what they repeatedly described as the definitive constitutional challenge to Chapter 143A, *see, e.g.*, Plaintiffs' Brief Regarding Texas House Bill 20 (2021) Sections 2 and 7's Scope, *NetChoice, LLC v. Paxton*, No. 1:21-cv-00840-RP, Doc. 84 (W.D. Tex. Aug. 11, 2025), and they litigated that case here through judgment and appeal without once suggesting that this forum was improper or disfavored for HB20 litigation. *See NetChoice, L.L.C. v. Paxton*, 49 F.4th 439 (5th Cir. 2022), *vacated and remanded sub nom. Moody v. NetChoice, LLC*, 603 U.S. 707 (2024).

YouTube and Google cannot maintain that the Western District of Texas is the right forum to challenge the statute (*NetChoice*) but the wrong one to enforce it (this case). That is not a argument. It is a forum flip-flop—embraced when advantageous, repudiated when inconvenient—and it is precisely what estoppel principles forbid.

Nothing material has changed between *NetChoice* and this case except the alignment of the parties. YouTube and Google chose Texas as the battleground for

resolving Chapter 143A's meaning and validity. They seek transfer now only because a regulated party has invoked the statute offensively.

Equity reinforces law. Petitioners are estopped from declaring the Western District of Texas an improper forum for HB20 litigation because they affirmatively selected this District to litigate their constitutional challenge to the same statute in *NetChoice*. They cannot now claim the forum is inconvenient merely because they are on the defensive. *See New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) ("a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory"); *Gabarick v. Laurin Mar. (Am.) Inc.*, 753 F.3d 550, 553 (5th Cir. 2014) ("Judicial estoppel is an equitable doctrine that defies 'inflexible prerequisites or an exhaustive formula.'"); *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 490 (5th Cir. 2016) (preventing "assert[ion of] contradictory positions for tactical gain").

## II. No mandamus-worthy extraordinary circumstances exist.

Even if the requisite error occurred, the petition should be denied because the ruling does not present other circumstances special enough to warrant the writ.

### A. Petitioners' theory prove too much.

Transfer orders are not appealable as of right. *See Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 501 (1989); *In re Rolls Royce Corp.*, 775 F.3d 671, 676 (5th Cir. 2014)

("we have previously held that transfer orders do not fall within the scope of [the collateral order] doctrine"). That is a deliberate structural choice. Congress accepted error-tolerance in transfer rulings in exchange for finality and efficiency. Mandamus exists as a safety valve for that design—but only within its demanding limits. A court cannot order mandamus "on the mere ground that [the district court] may be erroneous." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (en banc) (quoting *Will v. United States*, 389 U.S. 90, 98 n.6 (1967)). The petitioner must instead show a "clear and indisputable" right to the writ. Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 381 (2004). And mandamus "cannot be used as a substitute for the regular appeals process." *Id.* at 380–81; *see also In re Willy*, 831 F.2d 545, 549 (5th Cir. 1987) ("Mandamus cannot be used as a substitute for appeal even when hardship may result.").

Petitioners' theory has no limiting principle. Their argument reduces to this: the district court misapplied *Bremen/Haynsworth* at the enforceability step—and separately that the *Atlantic Marine* public-interest factors should have compelled transfer. But in doing so Petitioners must identify something that distinguishes this ruling from the mine-run of transfer disputes without opening the door to mandamus review across the board. They cannot. Alleged misapplication of § 1404(a), misweighing of factors, even disregard of a forum-selection clause—these are

garden-variety transfer disputes, not the "patently erroneous result" that "clearly exceeds the bounds of judicial discretion." *Volkswagen*, 545 F.3d at 310.

A conclusion within the governing framework is not an abuse of discretion. The district court identified *Haynsworth*'s "strong public policy of the forum state" test and applied it to the statute Texas enacted. That it resolved the inquiry in Defense Distributed's favor is a conclusion within that framework, not a departure from it. *See In re Volkswagen*, 545 F.3d at 309–10. The real complaint is that they would have weighed things differently. *Volkswagen* says that is not enough. *Id.* at 309.

*In re TikTok, Inc.*, 85 F.4th 352 (5th Cir. 2023), illustrates rather than undermines the limiting principle Petitioners lack. *TikTok* granted mandamus because a Chinese plaintiff with no connection to the Western District of Texas filed suit there over Chinese intellectual property misappropriated in China. No evidence was in the district. No witnesses were in the district. No forum-selection clause was at issue. No state public-policy question was presented. "Not a single relevant factor favor[ed] the plaintiff's chosen venue." *Id.* at 366. The only thing connecting that case to the Western District of Texas was the plaintiff's choice to file there. *Id.*

This case is the opposite on every dimension. Defense Distributed is a Texas entity asserting a Texas statutory cause of action that the Legislature directed to be maintained in Texas. The forum-selection clauses are void under Texas law. Every

public-interest factor favors Texas. If *TikTok* marks a case where mandamus was warranted because nothing tied the suit to the forum, it equally marks the boundary: mandamus is not warranted where everything does.

## B.    This is no *Defense Distributed v. Bruck*.

*Defense Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022), is Petitioners' worst precedent, not their best. The Fifth Circuit granted mandamus there because of a convergence of extraordinary features that have no analogue in this case.

In *Bruck*, the New Jersey Attorney General employed serial enforcement actions and procedural maneuvering to impose nationwide regulatory pressure on Defense Distributed while evading judicial review in the proper forum. 30 F.4th at 422–26. The transfer order did not arise in a vacuum—it functioned as part of that broader campaign, effectively conscripting the federal courts into "an enforcement scheme that exceeded lawful bounds." *Id.* at 430–33. The Court intervened not because the transfer was merely wrong, but because leaving it in place would have "ratified" a sovereign's litigation strategy designed to coerce and chill lawful conduct through procedural gamesmanship. *Id.* at 433–35. That is the kind of "systemic" institutional harm mandamus exists to correct. *See Cheney*, 542 U.S. at 382 (mandamus may issue to prevent "the judicial process itself" from being "transformed into an instrument of … injury").

*Bruck*'s rationale supplies its own limiting principle—and it excludes this case. *Bruck* warranted mandamus because a sovereign actor exploited litigation mechanics to impose extraterritorial regulation, creating irreparable harm that could not be unwound after final judgment. *See Volkswagen*, 545 F.3d at 318–19. No comparable feature exists here. This is a conventional § 1404(a) dispute between private litigants. The order does not distort the judicial process or create irreparable systemic harm.

*Bruck* was about preserving the integrity of the judicial process in the face of extraordinary sovereign misuse—not about venue preferences. Treating it as support for mandamus here would sever the decision from the facts that justified it. This case falls on the other side of *Bruck*'s line.

## III.    The Court should call for the views of the Solicitor General of Texas.

YouTube and Google's petition attacks as essentially unlawful a Texas statute that the Legislature has declared to embody a public policy "of the highest importance and interest to this state." Tex. Civ. Prac. & Rem. Code § 143A.003(b). Petitioners ask the Court to enforce private forum-selection clauses notwithstanding the statute's express venue mandate and waiver prohibition. That request squarely implicates Texas's sovereign interests in defining when and how its laws may be displaced. Before granting extraordinary relief that would functionally nullify those provisions, the Court should hear from the State.

## A.     Rule 44(b) supports calling for the State's views.

Federal Rule of Appellate Procedure 44(b) provides that when "the constitutionality of a ... State statute is drawn in question in a proceeding ... in which the State ... is not a party," the court must "certify that fact to the attorney general of the State." Fed. R. App. P. 44(b). The rule exists to ensure that a State has notice and an opportunity to be heard before a federal court invalidates its law. That institutional interest is directly implicated here.

Petitioners do not style their argument as a constitutional challenge to Chapter 143A. But form does not control substance. Their theory's upshot is that Sections 143A.003 and 143A.0035—the statute's waiver prohibition and venue mandate—are inoperative as a matter of federal law. The argument, stripped to its core, is that constitutional doctrines adjacent to *Erie*—federal supremacy over procedure in federal courts, the structural limits on state interference with § 1404(a)—prevent Texas from giving effect to its own statute. If that argument prevails, Chapter 143A's venue mandate and waiver shield are dead letters in every federal case. That is not a garden-variety transfer dispute. It is a conclusion that a state statute cannot constitutionally operate as written—reached through structural constitutional reasoning rather than a formal Fourteenth Amendment challenge, but with the same practical consequence.

A state statute's constitutionality is "drawn in question" when the necessary implication of a party's argument is that the statute cannot be given effect consistent with federal constitutional principles. That is precisely what Petitioners contend. They argue that *Stewart* preempts Chapter 143A's venue mandate, that *Bremen* forecloses the waiver prohibition, and that no state statute can override the federal presumption of forum-selection-clause enforceability. Each of those contentions, if accepted, would render Sections 143A.003 and 143A.0035 unenforceable—not as a matter of statutory construction, but because federal constitutional structure forbids their operation. That draws the statute's constitutionality into question within the meaning of Rule 44(b), whether or not Petitioners use those words.

## B.     Texas is uniquely positioned to address the questions presented.

The Solicitor General of Texas can speak authoritatively to the Legislature's intent in enacting and amending Chapter 143A, to the public policy the statute reflects, and to whether Petitioners' proposed override is consistent with Texas law as Texas understands it. That input would materially assist the Court in resolving whether enforcement of the clauses would contravene a strong public policy of the forum state—the central legal question this petition presents.

Calling for the views of the Texas Solicitor General would promote institutional comity and ensure accurate resolution of a state-law question with

substantial statewide consequences. It would also reduce the risk of this Court effectively nullifying a state statute—one Texas has declared to be of the "highest importance and interest," § 143A.003(b)—without affording the State an opportunity to defend it.

## Conclusion

The Court should call for the views of the Solicitor General of Texas. The petition should be denied.

Respectfully submitted,

/s/ Chad Flores
Chad Flores
chad@chadflores.law
Texas Bar No. 24059759
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440

Counsel for Defense Distributed

**Certificate of Compliance**

This filing complies with the type-volume limitations of the Federal Rules of Appellate Procedure because it contains 7,023 not-exempted words.

This filing complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32 and Fifth Circuit Rule 32 because it has been prepared in a proportionally spaced typeface in 14-point font using Microsoft Word for Mac Version 16.103.3

/s/ Chad Flores
Chad Flores