No. 26-50076
_____

In the United States Court of Appeals for the Fifth Circuit
_____

In re YouTube LLC, Google LLC, and Alphabet, Inc.,
                                                                          Petitioners.
_____

On Petition for a Writ of Mandamus to the
United States District Court for the Western District of Texas
No. 1:25-cv-01095-ADA-ML
_____

**Response to the Motion for a Stay**
_____

Chad Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440

Counsel for Defense Distributed

# Table of Contents

Response to the Motion for a Stay ..................................................................... 3

I.     Likelihood of success is missing. ................................................... 5

     A.     Defense Distributed's response defeats the petition. .......... 5

     B.     The attempted reply arguments are wrong too. ................. 6

II.    Irreparable harm is missing. ......................................................... 9

     A.     Inconvenience is not enough. .............................................. 9

     B.     A stay is not needed to preserve this Court's jurisdiction. ................. 10

     C.     The motion attempts to circumvent § 1447(d). ................... 11

III.   The balance of equities opposes a stay. ....................................... 12

     A.     A stay harms Defense Distributed and benefits only Petitioners. ........ 13

     B.     Petitioners are estopped from rejecting this forum for HB20. ........... 14

IV.   The public interest opposes a stay. .............................................. 17

Conclusion ........................................................................................................ 19

Certificate of Compliance ................................................................................ 20

Petitioners YouTube and Google petitioned for a writ of mandamus, Doc. 2-1, and also moved for both (1) a stay of all district court proceedings pending disposition of the mandamus petition, and (2) an administrative stay pending disposition of the stay motion, Doc. 12. An administrative stay was issued, Doc. 22, and the stay motion remains pending. Defense Distributed now responds to the stay motion.

## Response to the Motion for a Stay

Petitioners seek extraordinary relief twice over: mandamus and a stay pending mandamus. They are entitled to neither.

A stay pending appeal is itself extraordinary. A stay pending mandamus is more extraordinary still, as it asks a court to freeze proceedings below based on a petition that seeks relief available only for clear judicial usurpation. *See generally* 16A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 3954 (5th ed. West 2025). The Solicitor General of the United States just told the Supreme Court of the United States that "there is no such thing as a preliminary writ of mandamus," *Trump v. Cook*, No. 25A312, Transcript of Oral Argument (U.S. Jan. 21, 2026), citing Judge Learned Hand's teaching that what amounts to a "preliminary mandamus" is the "starkest of solecisms." *Liscio v. Campbell*, 34 F.2d 646, 647 (2d Cir. 1929). A stay pending mandamus borders on the "preliminary mandamus" that doctrine rejects and should be reserved, if ever, for the clearest cases. This is not one.

The Court's administrative stay does not speak to the merits. It serves only to preserve the status quo long enough for informed consideration of the stay motion. *See, e.g.*, *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring in denial of applications to vacate stays) ("Administrative stays do not typically reflect the court's consideration of the merits of the stay application.").

Once the motion is fully briefed, the Court's obligation is to apply the *Nken* factors and not let an administrative stay drift into a de facto stay pending mandamus. *Id.* ("An administrative stay should last no longer than necessary to make an intelligent decision on the motion for a stay pending appeal."). That point has been reached here.

Any stay request must show a likelihood of success on the merits, irreparable harm, equities between the parties, and public interest. *See, e.g.*, *Nken v. Holder*, 556 U.S. 418 (2009); *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981). The first two factors "are the most critical." *Nken*, 556 U.S. at 434. Petitioners satisfy none of the four. In view of both the full mandamus petition, Doc. 2-1, and Defense Distributed's response, Doc. 32, the Court should quickly conclude that YouTube and Google have no strong likelihood of success on mandamus, no irreparable harm, and the equities and public interest cut against freezing district-court proceedings. The motion should be denied.

## I. Likelihood of success is missing.

A stay pending mandamus requires a "strong showing of likely success." *E.g.*, *Louisiana v. Becerra*, 20 F.4th 260, 262 (5th Cir. 2021). There is none here.

Petitioners cannot make the threshold "strong showing" of likely success. Their theory wants to disregard settled panel precedent about how to treat § 1404(a) in diversity cases, treat a maritime decision as silently overruling those decisive precedents, and then label the district court's faithful adherence to the controlling precedents "clear" error— despite never presenting below the Supreme Court case they now claim changes everything. If their new case truly upended this Circuit's current rule, withholding it below would be a serious omission. The fact that YouTube and Google must lean on a supposed "new" flagship that changes nothing only underscores how weak their position is under the law that actually governs.

### A. Defense Distributed's response defeats the petition.

Defense Distributed's main response brief, Doc. 32, explains in full detail why mandamus is unavailable. The district court properly declined to enforce forum-selection clauses that would contravene Chapter 143A's express public-policy provisions. *Id.* at 11-27. Independently, *Atlantic Marine*'s public-interest factors support keeping the case in Texas. *Id.* at 27-31. And Petitioners are estopped from attacking this forum after selecting the Western District of Texas to litigate the

constitutionality of the same statute in *NetChoice, LLC v. Paxton*, No. 1:21-cv-00840-RP (W.D. Tex.). *Id.* at 31-34. And even if the requisite error had occurred, the petition should be denied because the ruling does not present other circumstances special enough to warrant the writ. *Id.* at 32-38.

Defense Distributed's response addresses every dispositive issue and shows Petitioners cannot make the required "strong showing" of likely success. Petitioners have now moved for leave to file a reply. Doc. 35-1. But mandamus does not permit patchwork: when a petition cannot clear its burden on the papers it chose to file, the need for a reply points to denial, not more briefing. The remaining points address the proposed reply only to eliminate any doubt that the petition will fail.

**B.     The attempted reply arguments are wrong too.**

Petitioners' proposed reply does not salvage likelihood of success. Doc. 35-2. It still identifies no unequivocal Supreme Court directive that displaces this Circuit's settled § 1404(a) framework in diversity cases. Worse, Petitioners' theory shifts midstream: at times they insist *Great Lakes* "fits comfortably" with *Haynsworth* and *Weber*; elsewhere they claim it silently "superseded" them. Both cannot be true, and mandamus cannot rest on a moving target. This alone defeats any claim to the "strong showing" required for a stay. If Petitioners cannot even maintain a consistent theory of error, they cannot possibly show a clear one.

### 1. First principles: *Bremen* applies differently by context, and *Great Lakes* is the wrong context.

This is a diversity case on a state-law claim. *Bremen* supplies the general enforceability framework, including its public-policy inquiry. But context matters. *Great Lakes* arose in maritime choice-of-law, where uniform federal rules are the point and federal common law does the work. It did not announce a trans-substantive rule that silently rewrites § 1404(a) practice in ordinary diversity litigation or strips forum states of their public-policy role.

Defense Distributed is not disputing that *Bremen* applies in diversity. The point is narrower: in diversity, *Haynsworth* applies *Bremen* through *Erie* such that the "public policy of the forum" is the forum state's policy, here Texas's. *Great Lakes* addressed a different clause, in a different domain, for different structural reasons.

Clipped quotes reveal YouTube and Google's weakness. Defense Distributed is accused of "claiming that 'there is no need to follow *[The] Bremen*'s thinking'" here, Resp. 16," Doc. 35-2, as though the analysis ended there without more. But what Defense Distributed actually said was more precise, *quoting the decision itself*. The quoted brief page actually says that "there is no need to follow *Bremen*'s thinking about 'the correct doctrine to be followed by federal district courts **sitting in admiralty**.'" Doc. 32 at 9 (quoting the case; emphasis added). Explaining *Bremen* by quoting it is correct. Attacking Defense Distributed by stripping its quote is wrong.

## 2. It does not matter anyway: *Haynsworth* and *Weber* control.

Even if Petitioners could debate first principles, they cannot escape controlling circuit law. In diversity cases, *Haynsworth* and *Weber* apply *Bremen* through *Erie*: "public policy of the forum" means the forum state's public policy—here, Texas's.

Petitioners now assert that *Great Lakes* "superseded" those decisions. Doc. 35-2 at 4–5. It did not. A Fifth Circuit panel treats circuit precedent as overruled only when the Supreme Court "unequivocally" directs it. *E.g.*, I*n re Tex. Grand Prairie Hotel Realty*, 710 F.3d 324, 331 (5th Cir. 2013). There is no such directive in the § 1404(a) diversity posture—not in *Great Lakes* and not anywhere else. The district court did not err by following the rule of *Haynsworth* and *Weber* that binds it.

## 3. Argument timing underscores the lack of "clear" error.

A district court does not "clearly" err by following binding circuit precedent—especially when the contrary theory was never presented below. Petitioners did not cite *Great Lakes* to the district court. They now invoke it for the first time on mandamus and call the district court's adherence to *Haynsworth* and *Weber* "clear legal error." That is backwards. A party cannot withhold an argument, raise it for the first time in an extraordinary-writ posture, and then fault the district court for not anticipating it. At most, Petitioners press an arguable extension of a maritime decision into diversity § 1404(a) doctrine.

At most, Petitioners posit an arguable extension of a maritime case into diversity doctrine. Mandamus does not issue to resolve arguable extensions, and a stay does not issue to freeze proceedings while Petitioners attempt one.

## II. Irreparable harm is missing.

Irreparable harm must be concrete, imminent, and incapable of remediation. *See, e.g.*, *Nken*, 556 U.S. at 434. Speculation does not suffice. *Id.* This is a "heavy burden," *Plaquemines Par. v. Chevron USA, Inc.*, 84 F.4th 362, 373 (5th Cir. 2023), and "simply showing some possibility of irreparable injury fails to satisfy" it. *Id.* at 376. There must be a "strong" showing of irreparable harm. *Id.* None exists here.

The motion's main "harm" is the expense and inconvenience of litigating in Texas, which is not irreparable. The fallback—that remand would moot mandamus review—is legally wrong under this Court's precedent. And their effort to freeze the entire case to avoid the ordinary operation of remand and review rules is an improper end-run around § 1447(d), confirming that the motion is about delay, not necessity.

### A. Inconvenience is not enough.

Litigation expense—even substantial and unrecoupable expense—is not irreparable injury. *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."). That rule forecloses Petitioners' principal claim of harm: the

cost and inconvenience of litigating in Texas rather than California. If ordinary litigation burdens sufficed, every transfer denial would warrant a stay. The Supreme Court has rejected that premise.

B. **A stay is not needed to preserve this Court's jurisdiction.**

This Court's mandamus jurisdiction over the transfer order would survive a remand. *Bruck* holds as much in a harder case. Petitioners' contrary premise—that remand to state court will extinguish appellate review—is wrong.

*Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022), holds that this Court's mandamus jurisdiction survives even after a case has left the transferor court—and even after it has left the jurisdiction altogether. There, the district court had already severed and transferred the case out of the Western District of Texas and into the District of New Jersey, beyond this Court's normal territorial jurisdiction. *Id.* at 421–27. Nevertheless, the Court held that it retained mandamus jurisdiction over the transfer order and granted relief, directing the Texas district court to seek retransfer from the transferee court. *Id.* By both opinion and judgment, *Bruck* makes clear that the physical departure of a case—even an out-of-circuit transfer—does not defeat the Fifth Circuit's authority to review a transfer decision via mandamus. *Id.* Even when unable to demand the action's return in a traditional fashion, mandamus

still includes the authority to both (1) determine the transfer decision's propriety, and (2) if erroneous enough, remedy it by asking the transferee court to retransfer.

Given that mandamus jurisdiction survives an out-of-circuit transfer (*Bruck*), it necessarily survives the remand to state court forecasted here. The power to review a transfer order does not depend on which other jurisdiction holds the file. Denial of a stay would not moot or frustrate mandamus review. It would place YouTube and Google in the same posture as the petitioners in *Bruck*—where this Court granted relief despite the case having already moved.

### C. The motion attempts to circumvent § 1447(d).

Petitioners' position also conflicts with Congress's structural judgments. Transfer denials are not appealable final orders. Remand orders are generally not reviewable. 28 U.S.C. § 1447(d). Congress accepted the risk of occasional error in exchange for finality and efficiency.

If the possibility of remand justified a stay of all proceedings whenever a mandamus petition was pending, removal defendants could routinely halt district court litigation by filing a petition. That would convert nonappealable orders into effectively stayed ones. Mandamus is not a vehicle for circumventing statutory limits on interlocutory review. Neither is a stay.

Even if Petitioners could raise a non-speculative concern about a remand order occurring before this Court acts, that would not justify the relief they seek. Petitioners ask to halt all district-court proceedings—discovery, case management, and merits litigation—based on a supposed risk tied only to one event: a remand ruling. If the Court sees any need to preserve the status quo pending mandamus, the tailored course is obvious: a limited order addressing remand alone, not an across-the-board shutdown of the case. Petitioners' overbreadth underscores the real aim here—delay for delay's sake—and it independently confirms they have not made the "strong showing" *Nken* demands for a stay pending mandamus.

### III. The balance of equities opposes a stay.

A stay would skew the equities, not preserve them. It would impose concrete delay harms on Defense Distributed—prolonging the very restrictions it challenges—while giving Petitioners the only benefit they seek: inaction. And Petitioners come to equity with unclean hands: they previously embraced this very forum to litigate Chapter 143A's validity in *NetChoice*, only to denounce it now when the statute is enforced against them. That flip-flop independently tips the balance against discretionary interim relief.

### A. A stay harms Defense Distributed and benefits only Petitioners.

A stay would delay adjudication of Defense Distributed's statutory claims and prolong the ongoing restrictions it challenges. That delay is not neutral. It entrenches the status quo Petitioners seek to preserve: continued restriction of Defense Distributed's speech with no judicial check.

Petitioners suggest that the absence of a preliminary injunction minimizes harm. The opposite is true. Without interim relief in place, halting proceedings preserves the contested conduct while depriving Defense Distributed of timely judicial resolution. Delay benefits only the party seeking inaction. *See Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) ("Partial stays will cause no harm to respondents because they will remain protected by the preliminary injunctions to the extent necessary and appropriate to afford them complete relief.").

Here, there is no preliminary injunction protecting Defense Distributed's interests during the interim. A stay gives Petitioners what they want—nothing happening—without satisfying the standard that governs extraordinary remedies.

## B. Petitioners are estopped from rejecting this forum for HB20.

### 1. Petitioners cannot disavow and embrace the same forum.

Petitioners are also not entitled to a stay because they have already treated this forum as proper for HB20 litigation. Through their trade association, they selected the Western District of Texas as the venue for their facial constitutional challenge to Chapter 143A. *See* First Amended Complaint, *NetChoice, LLC v. Paxton*, No. 1:21-cv-00840-RP, Doc. 76 at 5 (W.D. Tex. Feb. 6, 2025) (identifying YouTube as a member platform litigating on behalf of its interests); *see also NetChoice, L.L.C. v. Paxton*, 49 F.4th 439 (5th Cir. 2022), *vacated and remanded sub nom. Moody v. NetChoice, LLC*, 603 U.S. 707 (2024). They litigated there through judgment and appeal without once suggesting that this District was an improper or inconvenient forum for resolving the statute's meaning or validity.

Petitioners now seek to halt proceedings on the ground that this forum is wrong for HB20 litigation. But they previously invoked this very court as the appropriate battleground for Chapter 143A. The only difference is alignment. When they were plaintiffs challenging the statute, Texas was proper. Now that they are defendants subject to it, Texas is intolerable. Equity's longstanding estoppel doctrine forbids such gamesmanship. *See New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001); *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 490 (5th Cir. 2016).

The estoppel triggered by this flip-flop has two consequences. First, it undermines the mandamus petition itself. Mandamus is reserved for *clear* abuses of discretion that produce a patently improper result. A party that affirmatively chose this forum to adjudicate the same statute cannot plausibly contend that keeping a related HB20 case here is a judicial usurpation of power. The estoppel point thus goes to entitlement to extraordinary relief at all, as explained in the response to the petition. Second, and independently, estoppel is decisive on the equities of a stay.

### 2. Associational standing cuts both ways.

A party that claims the benefit of associational litigation takes the burden too. Associational standing exists precisely so that an association can litigate on behalf of its members and bind them to the result. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). YouTube was one of those members. NetChoice's First Amended Complaint identifies YouTube as a member platform on whose behalf NetChoice brought the challenge. First Amended Complaint, *NetChoice, LLC v. Paxton*, No. 1:21-cv-00840-RP, Doc. 76 at 5 (W.D. Tex. Feb. 6, 2025). YouTube was not a bystander. It was a represented party whose interests were advanced by counsel of its choosing in a forum of its choosing. Formal separateness does not allow YouTube to harvest the advantages of *NetChoice*'s forum selection while disclaiming

responsibility for it. Petitioners' protest that "NetChoice is a legally distinct entity," Doc. 35-2 at 7, proves nothing that estoppel does not already account for.

### 3. The clauses are equally applicable in both cases.

The State of Texas has a YouTube account. So does the Texas Attorney General. They clicked the same adhesive terms of service Defense Distributed did. So if those terms require California litigation, they required it in *NetChoice* just as well as they do here. Yet YouTube and Google, acting through NetChoice, filed that case in Texas—not California.[1] They did not move to transfer. They did not invoke their own forum-selection clauses. They litigated in Texas for years without objection. They cannot treat the forum-selection clauses as sacrosanct when invoked against Defense Distributed and invisible when they would have applied to *NetChoice*. That is the very inconsistency estoppel exists to prevent.

### 4. Estoppel is apart from *Bremen*.

Strawman: Petitioners say estoppel "does not fall within any of the four *Bremen* exceptions." Doc. 35-2 at 7–8. No one said it did. Estoppel is not offered as a *Bremen* exception. It is an independent equitable ground that supports the district

---

[1] Nothing about *Ex parte Young*, 209 U.S. 123 (1908), required them to sue in Texas. *See Defense Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2021) (unconstitutionally censored citizens can bring *Ex parte Young* actions against the offending state official in the censored citizen's home state).

court's ruling and independently defeats the mandamus petition. If Petitioners are estopped from claiming this forum is improper, they cannot show the "clear and indisputable" right to relief that mandamus demands. *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 381 (2004). And a party that cannot clear the mandamus threshold is certainly not entitled to a stay of district court proceedings while it tries.

Because Petitioners embraced this forum when it served their interests, they cannot obtain interim equitable relief by disavowing it now. That contradiction independently defeats any claim that the balance of equities favors a stay.

## IV. The public interest opposes a stay.

The public interest disfavors interlocutory paralysis. District courts are entrusted to manage and resolve cases. Freezing proceedings absent a compelling showing undermines orderly judicial administration and encourages strategic delay.

First, there is a sovereign interest at stake. This case concerns enforcement of a Texas statute that the Legislature has declared to be of the "highest importance and interest" to the State. Tex. Civ. Prac. & Rem. Code § 143A.003(b). "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)). A stay that

prevents Defense Distributed from enforcing Chapter 143A delays the operation of that statute just as surely as an injunction would. YouTube and Google should have notified the State of their challenge. *Cf.* 28 U.S.C. § 2403(b). That they did not underscores their interest in avoiding public accountability for seeking to block a state statute's enforcement.

Second, just as the public interest favors protecting individual liberties that "frustrate government officials," *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 619 (5th Cir. 2021), it favors protecting the individual liberties that Chapter 143A secures against censorship by dominant platforms. A stay delays vindication of those interests, which safeguard the marketplace of ideas for everyone—not just the parties before the Court. *See, e.g.*, *Red Lion Broad. Co. v. F.C.C.*, 395 U.S. 367, 390 (1969) ("It is the right of the viewers and listeners, not the right of the broadcasters, which is paramount.")

Third, the public interest disfavors interlocutory paralysis. District courts are entrusted to manage and resolve cases. Freezing proceedings absent a compelling showing undermines orderly judicial administration and encourages strategic delay. Petitioners' asserted interests—litigation cost, burden, and forum preference—are private. They do not outweigh the public's interest in timely adjudication of claims arising under state law.

## Conclusion

The motion for a stay should be denied.

Respectfully submitted,

/s/ Chad Flores
Chad Flores
chad@chadflores.law
Texas Bar No. 24059759
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440

Counsel for Defense Distributed

**Certificate of Compliance**

This filing complies with the type-volume limitations of the Federal Rules of Appellate Procedure because it contains 3,493 not-exempted words.

This filing complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32 and Fifth Circuit Rule 32 because it has been prepared in a proportionally spaced typeface in 14-point font using Microsoft Word for Mac Version 16.106.

/s/ Chad Flores
Chad Flores