No. 26-50076

# In the United States Court of Appeals for the Fifth Circuit

In re YouTube LLC, Google LLC, and Alphabet, Inc.,

Petitioners.

On Petition for a Writ of Mandamus to the United States District Court for the Western District of Texas, Austin Division

## BRIEF OF *AMICUS CURIAE* THE STATE OF TEXAS IN SUPPORT OF RESPONDENT DEFENSE DISTRIBUTED

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700

William R. Peterson
Solicitor General

Nathaniel A. Plemons
Assistant Solicitor General
Nathaniel.Plemons@oag.texas.gov

*Counsel for amicus curiae the State of Texas*

No. 26-50076

———

IN RE YOUTUBE LLC, GOOGLE LLC, AND ALPHABET, INC.,

Petitioners.

———

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.


**Amicus Curiae:**
The State of Texas

**Counsel for Amicus Curiae:**
Ken Paxton
Brent Webster
William R. Peterson
Nathaniel A. Plemons

/s/ Nathaniel A. Plemons
NATHANIEL A. PLEMONS
*Counsel for amicus curiae*

# Table of Contents

Page

Certificate of Interested Persons ........................................................................ i

Table of Authorities ........................................................................................... iii

Identity and Interest of Amicus Curiae ................................................................ 1

Introduction ...................................................................................................... 2

Background ........................................................................................................ 4

Argument ........................................................................................................... 8

    I.   This Court Considers a State's Public Policy When Evaluating the Enforceability of Forum-selection clauses. ............................................... 8

    II.  Petitioners' Reliance on *Great Lakes* Is Misplaced. ................................. 10

    III. HB 20 Embodies the Kind of Strong Public Policy that Overcomes the Presumption in Favor of Forum-Selection Clauses. ........................... 12

Conclusion and Prayer ...................................................................................... 13

Certificate of Compliance ................................................................................. 14

## TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49 (2013) .................................................................. 3, 13

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585 (1991) ..................................................................... 8

*Davis v. Meta Platforms, Inc.*,
No. 4:22-CV-01001, 2023 WL 4670491 (E.D. Tex. July 20, 2023).................... 6

*Def. Distributed v. YouTube LLC*,
No. 1:25-CV-01095-ADA, 2025 WL 3610601 (W.D. Tex. Nov. 13,
2025) ............................................................................... 12, 13

*Great Lakes Insurance SE v. Raiders Retreat Realty Co., LLC*,
601 U.S. 65 (2024) ........................................................ 3, 10, 11, 12

*Haynsworth v. The Corp.*,
121 F.3d 956 (5th Cir. 1997) .................................................. 8, 11, 12, 13

*Lim v. Offshore Specialty Fabricators, Inc.*,
404 F.3d 898 (5th Cir. 2005)........................................................... 8

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972)...................................................................... 8, 9

*Matthews v. Tidewater, Inc.*,
108 F.4th 361, 370 (5th Cir. 2024) .................................................... 9

*Moody v. NetChoice*,
LLC, 603 U.S. 707 (2024) (Alito, J., concurring) .................................. 4, 7

*NetChoice v. Paxton*,
No. 1:21-cv-00840-RP (W.D. Tex.) .................................................... 7

*Packingham v. North Carolina*,
582 U.S. 98 (2017) .................................................................... 4

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988) ................................................................... 8

*In re TruBridge, Inc. v. Hospital Service District No. 1 of the Parish of
Lasalle*, No. 25-30727, 2026 WL 252660 (5th Cir. Jan. 30, 2026) ............. *passim*

**Constitutional Provisions and Statutes:**

U. S. Const., art. III, § 2, cl. 1 ..................................................... 10

28 U.S.C. § 1404(a) ............................................................... 2, 3, 8, 13

Tex. Civ. Prac. & Rem. Code

ch. 143A .................................................................6, 7, 11, 12

§ 143A.001 ...................................................................... 4, 5

§ 143A.002....................................................................... 4, 5

§ 143A.003 ....................................................................*passim*

§ 143A.003(a) ...................................................................6, 12

§ 143A.003(b) ...................................................................6, 12

§ 143A.004......................................................................... 4, 5

§ 143A.004(a) ...................................................................... 5

§ 143A.005........................................................................ 4, 5

§ 143A.006......................................................................... 4, 5

§ 143A.007 ...................................................................... 4, 5, 6

§ 143A.008......................................................................... 4, 5

§ 143A.0035 ...............................................................2, 6, 7, 12

**Other Authorities:**

Const. Rights & Rem., Select Comm., Bill Analysis, Tex. H.B. 20,
87th Leg., 2d C.S. (2021) ................................................................ 4

# IDENTITY AND INTEREST OF AMICUS CURIAE

The State of Texas appears as amicus curiae to defend its strong public policy interest in ensuring that social media platforms do not engage in wrongful viewpoint discrimination and ensuring that Texas causes of action are litigated in and decided by courts located in Texas.

# Introduction

Texas law prohibits social media platforms, which function as the "modern public square," from censoring users based on viewpoint. In HB 20, the Texas Legislature declared that Texans have a fundamental interest in the free exchange of ideas and that the State itself has a strong interest in protecting that exchange. The Texas Legislature treats dominant social media platforms as common carriers—businesses that serve the public and therefore may be regulated to prevent discriminatory treatment.

In addition to creating a cause of action for those who were wrongfully censored by social media platforms, the Texas Legislature enacted specific protections to ensure that HB 20's protections would be enforced. Texas Civil Practice and Remedies Code Section 143A.003 provides that any waiver of HB 20's protections is void and against Texas public policy, even if a contract says otherwise. After courts allowed those cases to be transferred to other jurisdictions, the Texas Legislature added Section 143A.0035, which requires HB 20 cases to be brought and kept in courts located in Texas. Texas does not have a general policy against forum-selection clauses—Texas has an explicit public policy concerning these specific Texas statutory claims.

Although federal law governs transfer motions in federal court, 28 U.S.C. § 1404(a), and governs the enforceability of forum-selection clauses, one element of enforceability under federal law is whether enforcement would violate a strong public policy of the forum state. This Court's decisions applying that rule consistently consider state policy in this analysis.

Petitioners' reliance on *Great Lakes Insurance SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65 (2024) ("*Great Lakes*") is misplaced. That decision turns on "the fundamental purpose of choice-of-law clauses in *maritime* contracts: uniform and stable rules for maritime actors." *Id.* at 77 (emphasis added); *see also id.* at 72 ("As courts and commentators have recognized, the presumption of enforceability for choice-of-law provisions in maritime contracts facilitates maritime commerce by reducing uncertainty and lowering costs for maritime actors.")

But this case involves state law claims under diversity jurisdiction, not maritime law. And this Court's recent decision denying mandamus relief in *In re TruBridge, Inc. v. Hospital Service District No. 1 of the Parish of Lasalle* confirms that, in a diversity case involving state-law claims, a federal court may deny transfer based on a state statute expressing a strong public policy against forum-selection clauses. No. 25-30727, 2026 WL 252660 (5th Cir. Jan. 30, 2026) (per curiam) ("*TruBridge*").

HB 20 reflects exactly the kind of strong state policy that overrides forum-selection clauses. Texas expressly declared that waivers of HB 20 protections are void, and that these protections are of the "highest importance and interest" to the State. It also required that HB 20 cases be litigated in courts located in Texas. Because enforcing Petitioners' forum-selection clauses would directly undermine that policy, the district court correctly found the clauses unenforceable under federal law and declined to apply the special transfer analysis used for valid forum-selection clauses under *Atlantic Marine*. The district court instead applied the ordinary § 1404(a) analysis and acted within its discretion in keeping the case in Texas. The Court should thus deny the petition for writ of mandamus.

## Background

As the Supreme Court has recognized, social media platforms have become the "modern public square." *Packingham v. North Carolina*, 582 U.S. 98, 107 (2017). "In just a few years, [social media platforms] have transformed the way in which millions of Americans communicate with family and friends, perform daily chores, conduct business, and learn about and comment on current events." *Moody v. NetChoice, LLC*, 603 U.S. 707, 767 (2024) (Alito, J., concurring). But social media platforms have engaged in wrongful viewpoint discrimination. *See* Press Release, Office of Governor Greg Abbott, Governor Abbott Signs Law Protecting Texans from Wrongful Social Media Censorship (September 9, 2021) (discussing same).

The Texas Legislature sought to address this problem through HB 20 in 2021. Const. Rights & Rem., Select Comm., Bill Analysis, Tex. H.B. 20, 87th Leg., 2d C.S. (2021) (codified at Tex. Civ. Prac. & Rem. Code §§ 143A.001-008). The Texas Legislature made several explicit findings in its bill analysis concerning this issue:

- Texas residents have "a fundamental interest in the free exchange of ideas and information, including the freedom of others to share and receive ideas and information";
- The State "has a fundamental interest in protecting the free exchange of ideas and information in Texas"; and
- Large social media platforms with market dominance "function as common carriers" given their "central [role as] public forums for public debate" and therefore should not engage in viewpoint discrimination.

*Id.* These findings reflect the Texas Legislature's view that social-media platforms have assumed quasi-public functions like telephone infrastructure or the postal service. HB 20's authors thus analogized platform censorship to old-fashioned common carriers refusing service for disfavored viewpoints and identified selective content moderation as wrongful viewpoint discrimination.

HB 20 curbs viewpoint discrimination by expressly forbidding social media platforms from censoring a user or a user's ability to receive the expression of another person "based on . . . the viewpoint of the user or another person," "the viewpoint represented in the user's expression or another person's expression," or the user's location in Texas. Tex. Civ. Prac. & Rem. Code § 143A.002. This prohibition applies when the user resides in Texas, does business in Texas, or shares or receives expression in Texas. *Id.* § 143A.004(a). Users who believe that they have been wrongfully censored by social media platforms can sue them under HB 20 for declaratory relief, injunctive relief, and associated attorney's fees. *Id.* § 143A.007. HB 20 also allows the Attorney General to bring actions against such social media platforms if certain conditions are met. *Id.* § 143A.008. But the Texas Legislature foresaw attempts by social media platforms to avoid HB 20's prohibition on viewpoint discrimination by transferring cases to out-of-state courts.

The Texas Legislature headed off those attempts in two ways. *First*, it directed courts that contractual waivers of HB 20's rights are unenforceable:

> A waiver or purported waiver of the protections provided by this chapter is void as unlawful and against public policy, and a court or arbitrator may not enforce or give effect to the waiver, including in an action brought under

> Section 143A.007, notwithstanding any contract or choice-of-law provision in a contract.

*Id.* § 143A.003(a) (titled "Waiver Prohibited"). The Texas Legislature made clear that HB 20's waiver prohibition is key to Texas's public policy of prohibiting viewpoint discrimination and having Texas claims litigated in Texas, declaring that the provision is "a public-policy limitation on contractual and other waivers of the *highest* importance and interest to this state." *Id.* § 143A.003(b) (emphasis added). This language underscores the Texas Legislature's view that HB 20's protections cannot (and must not) be contracted away as a matter of public policy. Even if users sign terms of service designating a different forum or choice of law, section 143A.003 voids waivers of HB 20's protections.

*Second*, while HB 20 originally addressed waiver provisions, it was silent on forum-selection clauses. *See, e.g.*, *Davis v. Meta Platforms, Inc.*, No. 4:22-CV-01001, 2023 WL 4670491, at *13 (E.D. Tex. July 20, 2023). The Texas Legislature addressed this issue by amending the statute in 2023 to include section 143A.0035, titled "Venue and Choice of Law:"

> Notwithstanding any other law, any contract, or any venue, forum-selection, or choice-of-law provision in a contract, an action brought under [Chapter 143A] against a social media platform shall be brought and maintained in a court in [Texas], and the law of [Texas] applies to the action.

Tex. Civ. Prac. & Rem. Code § 143A.0035. As the district court in *Davis* recognized, "the addition of § 143A.0035 reflects the Texas Legislature's desire to keep future cases brought under Chapter 143A in Texas courts." *Davis*, 2023 WL 4670491, at *14. Put otherwise, Texas's public policy interest in (1) preventing social media

platforms from engaging in viewpoint discrimination and (2) having Texas cases based on Texas law litigated in Texas is so strong that the Texas Legislature went through pains to close any loophole that social media platforms could exploit.

Texas's commitment to HB 20 and its underlying policies has been unwavering. Texas has and continues to vigorously defend Chapter 143A at all levels of the federal judicial system. *See*, *e.g.*, *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) (addressing aspects of HB 20); *NetChoice v. Paxton*, No. 1:21-cv-00840-RP (W.D. Tex.) (litigation ongoing).

Section 143A.003 embodies a strong public policy of having these cases heard in Texas courts. By declaring waivers void and against public policy, the Legislature signaled that the right to be free from viewpoint-based censorship is fundamental and cannot be contracted away. The statute's pronouncement that the waiver prohibition is "of the highest importance and interest to this state" underscores the seriousness with which Texas views the issue. And Section 143A.0035 reinforces this interest by ensuring that disputes brought under HB 20 will be heard in courts located in Texas under Texas law. The amendment demonstrates the Texas Legislature's steadfast commitment to prevent social media platforms from avoiding Texas's nondiscrimination policy through forum-selection clauses or choice-of-law provisions.

# ARGUMENT

## I. This Court Considers a State's Public Policy When Evaluating the Enforceability of Forum-selection clauses.

Federal law governs motions to transfer venue in federal court, 28 U.S.C. § 1404(a), including the enforceability of a forum-selection clause. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988).

As this Court has recognized, federal law presumes that a forum-selection clause is enforceable, but that presumption can be overcome when enforcing the clause "would contravene a strong public policy of the forum state." *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) and *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-15 (1972) (*Bremen*)).

This Court routinely incorporates the state public policy exception in its venue transfer analyses. In *Lim v. Offshore Specialty Fabricators, Inc.*, when a plaintiff brought claims under the Fair Labor Standards Act, this Court analyzed both federal and Louisiana law, declining to decide whether the phrase "the forum" refers to state or federal law. 404 F.3d 898, 904-07 (5th Cir. 2005); *see also id.* at 905 ("[W]hen analyzing the reasonableness of a choice of forum clause *in an international contract*, courts do not ignore federal law and policy." (emphasis added)). This Court acknowledged Louisiana's policy but ultimately enforced the clause because the Louisiana plaintiff suffered injuries abroad and the contract implicated maritime law. *See id.* at 906 ("[P]laintiffs' employment contracts do not present the inequities the Louisiana statute was crafted to prevent.").

Likewise, in *Matthews v. Tidewater, Inc.*, this Court recognized Louisiana's policy but held that it was outweighed by federal public policy favoring uniform enforcement of maritime forum-selection clauses given the predominance of admiralty law. *See* 108 F.4th 361, 370 (5th Cir. 2024) (""Even if Louisiana's public policy is relevant under a *Bremen* analysis, its particular application in this case does not overcome the federal public policy's presumption of a maritime forum-selection clause's validity.").

This Court's recent decision in *TruBridge* denying a petition for writ of mandamus confirms that a State's strong public policy interest can override a forum-selection clause. 2026 WL 252660. There, a Louisiana public hospital sued its vendor in Louisiana, and the vendor moved to transfer the case to Alabama under a forum-selection clause. *Id.* at *1. The district court denied transfer, relying on a Louisiana statute that voids forum-selection clauses in public contracts. *Id.* This Court denied mandamus relief, holding that the district court appropriately applied federal law by considering Louisiana's strong public policy against such forum-selection clauses. *See id.* at *3 ("Therefore, the district court's examination of Louisiana law and subsequent conclusion that it has a strong public policy against forum-selection clauses in this context was appropriate.").

This Court distinguished *Matthews* because that case involved a different context (maritime law) and concerned non-Louisiana plaintiffs who had little connection to Louisiana and suffered injuries while outside the United States. *Id.* (citing *Matthews* 108 F.4th at 370). In contrast, *TruBridge* concerned state-law claims brought by a Louisianan entity under a Louisiana statute enacted to protect public entities

like the plaintiff. *Id.* This Court concluded that, because state law showed "a strong public policy against forum-selection clauses in this context," the forum-selection clause was unenforceable. *Id. TruBridge* thus demonstrates that in diversity cases, this Court gives effect to a State's statutory policies when determining whether forum-selection clauses are enforceable.

## II. Petitioners' Reliance on *Great Lakes* Is Misplaced.

Petitioners rely heavily on *Great Lakes*, Pet. at 17-21, but that case concerned "choice-of-law provisions in maritime contracts." 601 U.S. at 67. In *Great Lakes*, the Supreme Court held that courts may not "discar[d] a choice-of-law provision in a maritime contract on the ground that enforcement of the choice-of-law provision would violate state law." *Id.* at 78.

That decision's reasoning is grounded in the Constitution's grant of authority to federal courts "to create and apply maritime law," *id.* at 69 (citing U. S. Const., art. III, § 2, cl. 1), and contemplates a "system of maritime law . . . operating uniformly i[n] the whole country," *id.* (internal quotation marks omitted). "[T]he presumption of enforceability for choice-of-law provisions in maritime contracts facilitates maritime commerce by reducing uncertainty and lowering costs for maritime actors." *Id.* at 72. "Maritime commerce traverses interstate and international boundaries, so when a maritime accident or dispute occurs, time-consuming and difficult questions can arise about which law governs." *Id.*

"[T]he presumption of enforceability for choice-of-law provisions in maritime contracts facilitates maritime commerce by reducing uncertainty and lowering costs for maritime actors," reducing legal uncertainty and advancing the "fundamental

purpose of federal maritime law," which is to protect maritime commerce. *Id.* at 72-73; *see also id.* at 75 ("[T]he uniformity and predictability resulting from choice-of-law provisions are especially important for marine insurance contracts.").

In the maritime context, reliance on state public policy as grounds not to enforce a maritime choice-of-law provision would undermine the goal of uniform and stable rules for maritime actors:

> A federal presumption of enforceability would not be much of a presumption if it could be routinely swept aside based on 50 States' public policy determinations. The ensuing disuniformity and uncertainty caused by such an approach would undermine the fundamental purpose of choice-of-law clauses in maritime contracts: uniform and stable rules for maritime actors.

*Id.* at 77. Similarly, in the maritime forum-selection context, the Supreme Court has not looked to state law. *Id.* at 78. Injecting "disuniformity and unpredictability into maritime commerce" would not serve any "federal maritime interest." *Id.* at 79.

But nothing in *Great Lakes*'s reasoning regarding the need for uniformity in maritime law has any relevance to this case. The district court exercised diversity jurisdiction to hear Defense Distributed's state-law claims, and those claims solely arise under the chapter codifying HB 20 in the Texas Civil Practice and Remedies Code. *See* Dkt. 3 at 65-69 (Orig. Pet.). Outside maritime law, there is no comparable federal common-law regime requiring displacement of state policy in state-law claims, and *Haynsworth*'s "strong public policy of the forum state" inquiry appropriately looks to state law. *TruBridge*, 2026 WL 252660, at \*\*3-4. The Texas Legislature has expressly declared that actions enforcing HB 20 must be litigated in courts located in Texas and that any waiver or forum-selection clause seeking to achieve otherwise is

void. Tex. Civ. Prac. & Rem. Code §§ 143A.003, 143A.0035. Federal law does not conflict with these state commands but recognizes that a forum-selection clause is unenforceable when its enforcement would contravene such a strong state policy. *See*, *e.g.*, *Haynsworth*, 121 F.3d at 963; *TruBridge*, 2026 WL 252660, at **3-4. *Great Lakes*'s discussion of maritime law does not change this analysis.

### III. HB 20 Embodies the Kind of Strong Public Policy that Overcomes the Presumption in Favor of Forum-Selection Clauses.

The district court did not clearly abuse its discretion in applying these principles to deny the motion to transfer venue. To ensure HB 20's effectiveness, the Texas Legislature mandated that actions "shall be brought and maintained" in Texas courts notwithstanding any waiver or forum-selection clause, and it declared that any waiver of its protections is void as "against public policy" and is a limitation "of the *highest* importance and interest to this state." Tex. Civ. Prac. & Rem. Code §§ 143A.003(a)-(b), 143A.0035 (emphasis added).

HB 20 represents a strong public policy directed at precisely the contractual provisions Petitioners seek to enforce. The district court correctly concluded that enforcing Petitioners' forum-selection clauses would directly contravene this strong Texas state policy and would be unreasonable under federal law. *Def. Distributed v. YouTube LLC*, No. 1:25-CV-01095-ADA, 2025 WL 3610601, at *4 (W.D. Tex. Nov. 13, 2025); *Haynsworth*, 121 F.3d at 963.

> [Texas's] public policies are undoubtedly strong. Texas made clear that it wants Chapter 143A actions litigated within its borders and that it does not tolerate contracts that waive the chapter's protections. *See* [Tex. Civ. Prac. & Rem. Code] §§ 143A.003, 0035. Texas felt so strongly that it declared the

waiver prohibition is "of the highest importance and interest to this state." *Id.* § 143A.003. Because enforcing the forum-selection clauses would contravene a strong public policy of the forum state, the Court finds that the clauses are unreasonable and will not enforce them. *See Haynsworth*, 121 F.3d at 963

*Def. Distributed*, 2025 WL 3610601, at *3.

Under the *Atlantic Marine* framework, the modified transfer analysis applies only when the parties' contract "contains a valid forum-selection clause." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62–66 (2013). The district court therefore properly declined to apply the modified *Atlantic Marine* analysis and instead evaluated the transfer motion under traditional § 1404(a) standards. Its conclusion that the case should remain in Texas was well within its discretion, so this Court should deny mandamus relief.

## Conclusion and Prayer

For these reasons, the petition for mandamus should be denied.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

William R. Peterson
Solicitor General

Brent Webster
First Assistant Attorney General

/s/ Nathaniel A. Plemons
Nathaniel A. Plemons
Assistant Solicitor General

*Counsel for amicus curiae the State of Texas*

## Certificate of Compliance

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(4) and because it contains 2,986 words, excluding the parts of the brief exempted by Rule 32(f) and Fifth Circuit Rule 32.2, according to the word count of Microsoft Word. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Equity font.

/s/ Nathaniel A. Plemons
Nathaniel A. Plemons